UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **AMBER QUITNO, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**GENERAL MOTORS, LLC,**<br><br>**Defendant.** | **JURY TRIAL DEMANDED**<br><br>Case No.  18-cv-7598 |

## CLASS ACTION COMPLAINT

Plaintiff Amber Quitno (hereinafter "Plaintiff" or "Plaintiff Quitno"), individually and on behalf of all others similarly situated, brings this action against Defendant General Motors, LLC ("GM" or "Defendant") to obtain damages, restitution, and/or injunctive relief for herself and on behalf of the proposed Class as defined herein.  Plaintiff makes the following allegations upon information and belief, except as to her own respective actions, the investigation of her counsel, and the facts that are a matter of public record.

## INTRODUCTION

1.      This action is brought to remedy violations of applicable law in connection with Defendant's design, manufacture, sale, and/or servicing of vehicles throughout Illinois and the United States that include defective braking systems.  The defective braking systems at issue were installed in all model year 2015 to present Cadillac Escalades, 2014 to present Chevrolet Silverados, 2015 to present Chevrolet Suburbans, 2015 to present Chevrolet Tahoes, 2014 to present GMC Sierras, and 2015 to present GMC Yukon/Yukon XLs ("Class Vehicles") and sold or leased to consumers, including Plaintiff, in Illinois and the rest of the United States.

1

2.     The braking systems common to all of the Class Vehicles are plagued by a design defect that causes a dangerous safety hazard to consumers, in that the Class Vehicles are prone to sudden and unexpected loss of vacuum in the brake booster, requiring replacement of the brake booster and/or the system's vacuum pump (the "Brake Defect"). When Class Vehicles suddenly and unexpectedly lose vacuum, the resulting brake booster failure makes Class Vehicles difficult to stop: the brake pedal becomes hard, much more force is required from the driver to slow the vehicle, and stopping distance is severely and suddenly compromised. Despite its longstanding knowledge of the defective braking system, Defendant has failed to disclose the Brake Defect to any member of the Class prior to purchase. Reasonable efforts undertaken by the Class to remedy this defect with or through GM have been unsuccessful.

3.     Since at least 2014, GM has had actual knowledge of the Brake Defect and the dangers it posed to consumers at large.  Nevertheless, Defendant chose not to disclose these problems to Plaintiff and the Class, so that it could continue to profit from the sale and lease of the Class Vehicles.

**PARTIES**

4.     Plaintiff Amber Quitno is a citizen of the state of Illinois, residing in the city of Sycamore.  Plaintiff purchased a new 2015 model year Chevrolet Tahoe on or about September 21, 2015 at Alan Browne Chevrolet, located in Genoa, Illinois.

5.     Defendant is a Delaware LLC with its principal place of business in Michigan. On information and belief, none of GM's members have citizenship in Illinois. GM manufactured, distributed, sold, serviced and/or warranted thousands of Class Vehicles, directly or indirectly, to Plaintiff and Class Members with the understanding and expectation that Class Vehicles would be sold, operated, and fit for their intended purpose in Illinois.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § l332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class Members and Defendant are citizens of different states.

7.      This Court has general and specific jurisdiction over Defendant because GM has sufficient minimum contacts with Illinois and within the Northern District of Illinois to establish its presence in Illinois, and certain material acts upon which this suit is based occurred in the Northern District of Illinois, including but not limited to the sale of Defendant's defective product to Plaintiff.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant does substantial business throughout this District. Venue is also proper, because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### Plaintiff Purchased a Defective Class Vehicle

9.      Plaintiff purchased a new 2015 model year Chevrolet Tahoe on or about September 21, 2015 at Alan Browne Chevrolet, located in Genoa, Illinois. Plaintiff executed all sales documents in Genoa, Illinois.

10.     During the Summer of 2018, Plaintiff's Chevy Tahoe first experienced the Brake Defect, although Plaintiff did not realize it at that time. Plaintiff was backing the vehicle out of her driveway at a maximum speed of 4-5 miles per hour. When Plaintiff attempted to apply the brakes while the wheel was turned, the brakes were hard and wouldn't slow the vehicle. As a result, Plaintiff's vehicle hit a 1990s red SUV that was parked on the side of the road behind

Plaintiff's driveway.

11.     Plaintiff paid the owner of the vehicle she hit $50.  Her own car sustained damage of a broken tail light to the rear, as well as a bent side fender and bumper.

12.     Plaintiff did not realize at the time of the fender bender that the vehicle was experiencing the Brake Defect because when she put her Chevy Tahoe in drive, the brakes worked.    Several months later, after the brakes on her Class Vehicle failed two more times, Plaintiff realized that her vehicle had malfunctioned because of the Brake Defect.

13.     On or about September 25, 2018, Plaintiff's Chevy Tahoe experienced the Brake Defect. Plaintiff had driven the Chevy Tahoe to the parking lot of a Sprint store near her home. As she was leaving the store, and began to back out of her parking space, without warning, her brakes failed:  as she pressed the brake pedal to try to bring the vehicle to stop, it depressed nearly to the floor, and appeared to become frozen.  Plaintiff was only able to stop the vehicle from ramming into other vehicles in the parking lot by essentially standing on the brake with all of her body weight.

14.     Upon stopping, Plaintiff put the car in park, turned the engine off, restarted the vehicle, put the vehicle in drive and pulled forward, back into her original parking spot.  The brakes appeared to function properly as the vehicle moved forward into the parking spot.  At that point, she again put the car in park, and waited.  Attempting to the leave the parking lot a second time, Plaintiff again put the car in reverse and began to back out of the parking space.  Once again, Plaintiff experienced the Brake Defect, again having to put her full body weight on the brake pedal to bring the vehicle to a stop.

15.     Putting the car in drive at that point, Plaintiff tested the breaks moving forward, and they appeared to function properly.   At that point, Plaintiff drove from the Sprint store

parking lot to her home, parking the vehicle in her driveway.

16.     On September 26, 2018, Plaintiff attempted to take the vehicle into her local dealership for service.  Backing out of her driveway, Plaintiff experienced the Brake Defect for a third time, again having to put her full body weight on the brake pedal to bring the vehicle to a stop. Plaintiff then called the dealership, and was informed that her warranty period had expired four days earlier.  Plaintiff also contacted Defendant GM, but was told that there was no known safety issue with the vehicle.  Defendant GM also denied responsibility for the defects associated with the braking system in Plaintiff's vehicle.  Plaintiff did not drive the vehicle for several days.

17.     Eventually, an employee of the local dealership, Alan Browne Chevrolet, came to Plaintiff's home and picked up the vehicle for a diagnostic check.  From what Plaintiff observed, the dealership employee did not experience the Brake Defect while backing out of her driveway. Plaintiff was informed that the diagnostic check performed by the dealership did not yield any deficits.  Thereafter, on October 16, 2018, she instructed the dealership to check the brake vacuum.  According to the verification sheet, the brake pressure is -9 sitting and -3 on.  The dealership advised Plaintiff that the brake pressure should be -13.

18.     The dealership ordered a replacement part and installed it at a cost of approximately $400, but Plaintiff remains concerned that this has not rectified the Brake Defect or the dangers associated with it.  Plaintiff remains concerned for the safety of those who travel in the vehicle and those who may come in contact with it on the road.

### GM Knowingly Sold The Defective Class Vehicles

19.     Since the release of the Class Vehicles (the earliest of which was Spring  2013), Defendant GM has received numerous warranty returns, customer complaints, and National Highway Traffic Safety Administration ("NHTSA") Vehicle Owner Questionnaires

relating to the Brake Defect.

20. GM has issued service bulletins to its dealers (but not to its customers) regarding the Brake Defect, for the following Class Vehicles and year models: 2015-2016 Cadillac Escalade; 2014-2016 Chevrolet Silverado 1500; 2015-2016 Chevrolet Suburban; 2015-2016 Chevrolet Tahoe; 2014-2016 GMC Sierra 1500; and 2015-2016 Yukon. (*See* Exhibit A.)

21. In February of 2015, GM issued service bulletin #PIT5361B to all of its franchised dealerships. This bulletin affected the Class Vehicles produced to date at the time: 2015 Cadillac Escalade; 2014-2015 Chevrolet Silverado 1500; 2015 Chevrolet Suburban; 2015 Chevrolet Tahoe; 2014- 2015 GMC Sierra 1500; and 2015 Yukon.

22. The service bulletin states that it is "intended for use by professional technicians … written to inform these technicians of conditions that may occur on some vehicles", and specifically advises technicians that "a customer may comment on a hard brake pedal or that increased effort is needed to depress the brake pedal." Defendant notified its dealers: "While performing normal diagnostics, fluid may be found in the brake booster and/or the booster vacuum line." The service bulletin requires extensive repairs including the replacement of the vacuum pump, vacuum line between the booster and the pump, brake booster, and the master cylinder.

23. GM knew the Class Vehicles are plagued by the Brake Defect well before Plaintiff purchased her 2015 Chevrolet Tahoe, but GM concealed the Brake Defect from consumers like Plaintiff, who unknowingly purchased Class Vehicles with a hidden and dangerous defect.

24. Defendant issued service bulletins to its dealers, but has failed to take any action at all to alert Plaintiff or the Class of the Brake Defect in the Class Vehicles, either prior to

6

or after their purchase.

25.     As of February 10, 2016, GM had verified at least some 19 affected vehicle models where the "CUSTOMER WILL NEED INCREASED EFFORT TO DEPRESS THE BRAKE PEDAL. TECHNICIAN MAY FIND FLUID IN THE BRAKE BOOSTER AND/OR THE BOOSTER LINE. TECHNICIAN     WILL NEED        TO       REPLACE VACUUM PUMP,    BRAKE BOOSTER, MASTER CYLINDER, VACUUM PUMP BELT AND VACUUM LINE BETWEEN THE BOOSTER AND THE PUMP." (*See* Exhibit B.) The 19 affected vehicle models are the Class Vehicles GM continued to sell without disclosure of the Brake Defect to the Class Members even after this admission.

**Consumers Have Extensively Reported the Safety Hazard to GM**

26.     Numerous Class Members have filed complaints with the NHTSA relating to the Brake Defect. NHTSA in turn provides these consumer complaints to the vehicle manufacturers directly, including GM.

27.     Since at least 2014, GM has received complaints of braking defects and safety concerns related to the loss of vacuum boost in the Class Vehicles through NHTSA, as well as through internet forums, GM's franchised dealerships, and directly by owners of Class Vehicles.

28.     The following constitutes a sampling of complaints concerning consumers' experiences with the Class Vehicles on the internet, including, but not limited to, postings appearing in on-line forums regarding the Brake Defect in the Class Vehicles:

29.     A consumer report dated July 28th, 2018 states the following regarding his 2014 GMC Sierra:

> On July 16th 2018, I dropped my truck off at the dealership to be serviced for the air condenser, due to the AC no longer cooling properly. While being serviced, the power

lock actuator was replaced on my rear driver side door because the automatic lock was no longer operable.

While my truck was in the shop, I received a phone call about my rear brakes needing to be serviced due to the pads being low. Prior to being serviced, my brakes were fine. I didn't have any issues with them at all. I recently had the oil changed at another dealership, and they never mentioned the brakes needing attention.

After picking up my truck on July 19th, I began noticing issues when attempting to brake. Slowing down wasn't an issue until going downhill. The brakes began to make a grinding noise and pulsing while at a slow speed. I had all of the brakes replaced due to this issue, but after replacing them all the brakes were fine. This did not fix the problem.

At this point, this is a safety hazard. My wife was leaving the house one day and while descending down the driveway, she couldn't stop. She almost hit a car, not to any fault of her own but due to the faulty brake system. Now it seems like I'll have to take it back to the shop after getting it serviced 8 days ago. The extended warranty is very much needed, but unfortunately my time is being wasted on issue after issue.

(https://www.carcomplaints.com/GMC/Sierra_1500/2014/brakes/brakes_failed.shtml)

(last visited 10/31/18).

30.     A consumer report dated October 15, 2018 states the following regarding his/her

2015 GMC Yukon:

Brake vacuum pump failing on 2015 Yukon/Silverado becoming very common. The new replacement vacuum pump does not look anything like the old defective one. GMC knows there is a problem and is making a different vacuum pump to replace the defective ones but will not replace at their expense.

(https://www.carcomplaints.com/GMC/Yukon/2015/brakes/brakes_failed.shtml)     (last     visited

10/31/18).

31.     A consumer report dated July 8, 2018 states the following regarding his/her 2014

Chevrolet Silverado:

Twice in the last three days the brakes on my truck have failed at low speed while parking. After only 3-4 times of lightly pumping the brakes they completely go hard and the peddle will not move. No matter what amount of pressure is applied the truck will not stop. Seems to happen when in reverse the most. Brake pads, fluids, etc are all perfect. Problem doesn't happen at all when driving at speed. Only occurred at low speed. Dealership says that's probably the vacuum failing... have found that there are hundreds

of complains describing the exact same problem on trucks with less than 50,000 miles on average.

(https://www.carcomplaints.com/Chevrolet/Silverado_1500/2014/brakes/service_brakes.shtml)

(last visited 10/31/18).

32.     A consumer report dated June 27, 2018 states the following regarding his/her

2015 Chevrolet Suburban:

> There are numerous reports of 2015 Chevrolet Suburban's suffering brake lose. The reports are vacuum pump failure which leads to a stiff or unmovable brake pedal while driving. The brakes are completely inoperable and can obviously lead to a collision. While my vehicle has not experienced this yet, we have a friend who suffered the brake failure described above. In doing some research online, we've discovered this to be a common problem. The complainants describe the problem of a stiff or unmovable brake pedal and total brake lose. Our friend has a 2015 Suburban and was nearly involved in a collision on 6/27/2018. Our research has also shown there are numerous complaints regarding this issue and that GM is aware of the problem. If true, we believe, in the interest of safety, GM should recall these vehicles and rectify the problem immediately.

(https://www.carcomplaints.com/Chevrolet/Suburban/2015/brakes/service_brakes.shtml)     (last

visited 10/31/18).

33.     A consumer report dated June 9, 2018 states the following regarding his 2015

Chevrolet Tahoe:

> Inadequate braking for the vehicle. My wife was traveling down a city street and could not stop the vehicle causing her to pull over for fear of her safety. The vehicle has 75000 miles on it and is out of the 60,000 mile bumper to bumper warranty. My wife all most wrecked because the brake pedal was hard and caused the vehicle to become difficult to stop. Chevy would not pay for diagnostic fee even though this is a known issue. Very unsafe to operate. Should be a full-blown recall to go along with the technician service bulletin that was issued regarding the vacuum pump booster and master cylinder and other braking system components. $1400 repair estimate if the dealership follows the tsb recommendation on repair. Chevy does not care about customer safety. Unacceptable!!!

(https://www.carcomplaints.com/Chevrolet/Tahoe/2015/brakes/service_brakes.shtml)     (last

visited 10/31/18).

34.     A consumer complaint to NHTSA dated July 13, 2017 states the following

9

regarding his/her 2015 GMC Sierra:

> TL* THE CONTACT OWNS A 2015 GMC SIERRA 2500. WHILE THE VEHICLE WAS BEING REVERSED WITH A TRAILER ATTACHED, THE BRAKE PEDAL WAS DEPRESSED, BUT FAILED TO OPERATE. THE CONTACT STATED THAT THE TRAILER CRASHED INTO THE AWNING OF THE RESIDENCE. THERE WERE NO INJURIES. UPON INSPECTING THE VEHICLE, THE CONTACT NOTICED EVIDENCE OF BRAKE FLUID LEAKING FROM THE BRAKE BOOSTER, WHICH ALLOWED BRAKE FLUID TO ENTER THE CABIN OF THE VEHICLE. THE VEHICLE WAS TAKEN TO PERFORMANCE CHEVROLET (LOCATED AT 3222 BEVERLY PIKE, ELKINS, WV 26241, TEL: (304) 591-1077) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE BRAKE BOOSTER WAS LEAKING AND WAS 1,000 MILES OUT OF WARRANTY. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT CONTACTED OR NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 37,023.

(https://www.nhtsa.gov/vehicle/2015/GMC/SIERRA%2525202500/PU%25252FCC/4WD#complaints)

(last visited 10/31/18).

35.     A consumer report dated October 15, 2018, states the following regarding his/her

2015 Chevrolet Tahoes:

> TL* THE CONTACT OWNS A 2015 CHEVROLET TAHOE. WHILE DRIVING 5 MPH, THE BRAKE PEDAL WAS APPLIED, BUT WAS DIFFICULT TO DEPRESS. THE VEHICLE FAILED TO STOP. THE CONTACT HAD TO PUMP THE BRAKE PEDAL IN ORDER FOR THE VEHICLE TO STOP. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER (ED BOZARTH CHEVROLET, 8351 PARKWAY DR, LONE TREE, CO 80124, (720) 279-0119). THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 35,000.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/TAHOE/SUV/4WD#complaints) (last

visited 10/31/18).

36.     As evidenced by the multitude of complaints submitted to NHTSA and elsewhere,

Defendant has been aware of the Brake Defect since at least 2014, that it poses a serious safety

risk to Class Members and the public at large, and the associated costly repair charges to the

Class Vehicles.

37.     These complaints illustrate the need for increased effort to depress t h e brake

10

pedal, high occurrences in stop and go traffic, high occurrences of failure   at   lower speeds, brake booster issues, replacements of   brake boosters and master cylinders and the existence of a serious safety issue.

38.     Nevertheless, GM knowingly, intentionally, and/or recklessly continued and continues to manufacture and sell the Class Vehicles without disclosing that their braking systems are defective and dangerous and without remedying the Brake Defect.

39.     To this day, Defendant continues to conceal material information concerning the Brake Defect in the Class Vehicles from users, consumers, and the public.  As a result, consumers continue to operate Class Vehicles and continue to experience dangerous failures of the defective braking system, and are at obvious increased risk for crashes and bodily harm.

40.     In light of Defendant's knowledge of the problems associated with, and the serious nature of the Brake Defect at issue, Defendant knew, or should have known, that it was selling the Class Vehicles to consumers with a value that was substantially diminished.

41.     Plaintiff and Class reasonably expected that the Class Vehicles would not contain a Brake Defect that would substantially impair the Class Vehicles' performance and use. Plaintiff and Class Members also reasonably expected that the Class Vehicles would not require extensive and/or expensive repairs as a result of the Brake Defect (or Defects), which Defects were known to GM at the time of sale.

42.     If Defendant had not misrepresented and concealed material information regarding the defective nature of the Class Vehicles, Plaintiff and other members of the Class would not have purchased the Class Vehicles at prices and on the terms offered.

## TOLLING OF STATUTES OF LIMITATIONS

43.     Defendant was and remains under a continuing duty to disclose to Plaintiff and

members of the Class the true character, quality and nature of the Class Vehicles, that the Brake

Defect is based on a poor design and/or substandard materials, and that it will require costly

repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.

44.     As a result of this active concealment by Defendant, any and all applicable

statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Rule 23(2) and (b)(3) of

the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All consumers in the United States who purchased or leased a 2015 or newer
> Cadillac Escalade, 2014 or newer Chevrolet Silverado, 2015 or newer Chevrolet
> Suburban, 2015 or newer Chevrolet Tahoe, 2014 or newer GMC Sierra, or 2015
> or newer GMC Yukon/Yukon XL.

> (Collectively referred to herein as the "Class")

46.     Alternatively, Plaintiff brings this action as a class action on behalf of the

following Illinois-only class:

> All consumers who purchased or leased in Illinois a 2015 or newer Cadillac Escalade,
> 2014 or newer Chevrolet Silverado, 2015 or newer Chevrolet Suburban, 2015 or newer
> Chevrolet Tahoe, 2014 or newer GMC Sierra, or 2015 or newer GMC Yukon/Yukon XL.

> (Collectively refereed to herein as the "Illinois Class").

47.     Numerosity—Fed. R. Civ. P. 23(a)(1).  The Class is comprised of thousands of

individuals who were Defendant's customers, the joinder of which in one action would be

impracticable.  The exact number or identification of the Class Members is presently unknown.

The identity of the Class Members is ascertainable and can be determined based on Defendant's

records.

48.     Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3).  The

questions of law and fact common to the Class predominate over questions affecting only

individual Class Members, and include, but are not limited to, the following:

(a)     Whether the Class Vehicles have the Brake Defect;

(b)     Whether the Defendant has engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

(c)     Whether Defendant engage in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

(d)     Whether Defendant knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Class;

(e)     Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

(f)     Whether Defendant breached its duties to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

(g)     Whether Defendant breached its duties to Plaintiff and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

(h)     Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

(i)     Whether Defendant's Class Vehicles fail to perform as advertised or warranted;

(j)     Whether Defendant breached its implied warranties to Plaintiff and the Class by advertising, marketing, and selling Class Vehicles not of merchantable quality, or unfit for their intended purpose, and then refusing to cover the full costs associated with repairing, removing, and/or replacing the defective Class Vehicles;

(k)     Whether Plaintiff and the Class are entitled to compensatory and/or actual damages, including but not limited to the cost to repair the Class Vehicles, remove and replace the Defective Brakes, as well as damages from the diminution of value of Class Members' Class Vehicles;

(l)     Whether Defendant concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the Brake Defect in the Class Vehicles;

(m)     Whether, as a result of Defendant's conduct, Plaintiff and the Class have suffered damages and, if so, the appropriate amount thereof; and

(n)     Whether Plaintiff and the Class are entitled to treble damages and/or punitive damages or other relief.

49.     Typicality—Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of the Class in that Plaintiff, like all Class Members, purchased a Class Vehicle and is subject to losses resulting from the failure of the Class Vehicles.  Plaintiff has experienced problems with her Class Vehicle consistent with those experienced by Class Members.  Plaintiff has suffered damages in the form of costs to replace and repair the Class Vehicles, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class Members.

50.     Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff is an adequate representative of the Class because she fits within the class definition and her interests do not conflict with the interests of the Members of the Class she seeks to represent.  Plaintiff is represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

51.     Superiority—Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class have suffered irreparable harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class Members' claims, no Class Members could afford to seek legal redress for

the wrongs identified in this Complaint. Without the class action vehicle, the Class would have

no reasonable remedy and would continue to suffer losses, as Defendant continue to engage in

the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and

Defendant would be permitted to retain the proceeds of its violations of law. Further, individual

litigation has the potential to result in inconsistent or contradictory judgments. A class action in

this case presents fewer management problems and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court.

52.      Plaintiff and the Class do not anticipate any difficulty in the management of this

litigation.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, ET SEQ.) AND OTHER STATES' DECEPTIVE TRADE PRACTICES STATUTES
### (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

53.      Plaintiff repeats, realleges, and incorporates by reference each of the foregoing

and succeeding paragraphs of this Complaint as if fully set forth herein.

54.      At all times relevant hereto, there was in full force and effect the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA").

Section 2 of the ICFA provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including
> but not limited to the use of or employment of any deceptive, fraud, false
> pretense, false promise, misrepresentation or the concealment, suppression or
> omission of any material fact, with intent that others rely upon the concealment,
> suppression or omission of such material fact, or the use of employment of any
> practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,"
> approved August 5, 1965, in the conduct of any trade or commerce are hereby
> declared unlawful whether any person has in fact been misled, deceived or
> damaged thereby, In construing this section consideration shall be given to the
> interpretations of the Federal Trade Commission and the federal courts relating to
> Section 5(a) of the Federal Trade Commission Act.

815    ILCS 505/2 (footnotes omitted).

55.    Section 2 of the ICFA, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce…"

56.    Plaintiff Quitno and the Class are "consumers" within the meaning of the various state statutes prohibiting unfair and deceptive acts and practices. Plaintiff and members of the Class purchased the goods and/or services for personal or household purposes.

57.    Defendant's conduct alleged herein constitutes "trade" or "commerce" within the meaning of the various state statutes prohibiting unfair and deceptive acts and practices.

58.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act, which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

59.    Defendant knew and has known that the Class Vehicles, all of which contain the Defective Brakes, are hazardous and dangerous to consumers.  Defendant knew and has known that if it disclosed true facts concerning the dangers associated with the Defective Brakes, consumers would not purchase the Class Vehicles.

60.    Defendant had a duty to disclose this material information because reasonable consumers expect that the brakes in their vehicles will slow down their vehicles with consistent brake pedal feedback and at consistently safe stopping distances.  Choosing to disregard this duty, Defendant altogether failed to disclose this Brake Defect and its associated safety hazards to consumers including Class Members.

16

61.     Through omission and concealment, Defendant has (a) mispresented that the Class Vehicles have characteristics and benefits that they do not have; (b) mispresented that the Class Vehicles are of a particular standard, quality, or grade when they are of another; (c) advertised the Class Vehicles with intent not to sell them as advertised; (d) engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding; and/or (e) failed to disclose the material fact that the Class Vehicles have a Brake Defect which constitutes a serious safety hazard and requires costly repairs.

62.     Defendant intended that Plaintiff Quitno and the Class would rely on the company's misrepresentations, acts, concealments and omissions, in an effort to maximize its sale of the Class Vehicles.

63.     Plaintiff Quitno and the Class did in fact justifiably rely on Defendant's omissions to their detriment by purchasing the Class Vehicles.  Plaintiff Quitno and the Class expended money to purchase or lease a Class Vehicles, but would not have done so had they known of the material safety omissions alleged herein.  Were it not for Defendant's wrongful conduct, reasonable consumers including Plaintiff and the Class would not have purchased the Class Vehicles.  Rather, they would have purchased safe and reliable vehicles with braking systems fit for their safe and only intended purpose.  Further, to the extent applicable, reliance can be presumed under the circumstances.

64.     As a direct and proximate result of the foregoing, Plaintiff Quitno and the Class have been damaged in an amount to be determined at trial, including compensatory damages, the cost to repair, remove, and/or replace the Defective Brakes in the Class Vehicles, the diminution of value of Class Members' Class Vehicles, other miscellaneous incidental and consequential damages.

65.     Notwithstanding the multitude of complaints concerning the Brake Defect made to NHTSA and GM directly, which put Defendant on notice of the dangers associated with the Class Vehicles, Defendant has continued to advertise, market and sell the Class Vehicles.  In so doing, Defendant has ignored and continues to recklessly and intentionally ignore the safety hazards caused by the Brake Defect present in the Class Vehicles, prioritizing its own profits over the safety and well-being of consumers who bought or leased the Class Vehicles.

66.     The conduct described through this Complaint offends public policy, causes substantial injury to consumers, and constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices.

67.     Defendant's actions violate the deceptive trade practices acts of the various states, as follows: Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 *et seq*.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 *et seq*.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 *et seq*.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 *et seq*.); California: the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, et seq.), the California Unfair Business Practices Act (California Business & Professions Code §17200, *et seq*.), and the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq*.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 *et seq*.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a *et seq*.); Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 *et seq*.

(West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 *et seq*. (West));

Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 *et seq*.); the Fair

Business Practices Act (Ga. Code Ann. §10-1-390 *et seq*.); and the False Advertising Statute

(Ga. Code Ann. §10-1-420 *et seq*.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii

Rev. Stat. §480 *et seq*.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A

*et seq*.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 *et seq*.); Indiana: the

Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 *et seq*. (Burns)); Iowa: the Iowa

Consumer Fraud Act (Iowa Code Ann. §714.16, *et seq*. (West)); Kansas: the Kansas Consumer

Protection Act (Kan. Stat. Ann. §50-623 *et seq*.); Kentucky: the Consumer Protection Act (Ky.

Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection

Law (La. Rev. Stat. Ann. §51:1401, *et seq*. (West)); Maine: the Maine Unfair Trade Practices

Act (Me. Rev. Stat. Ann. Tit. 5 §206 *et seq*.) and the Uniform Deceptive Trade Practices Act

(Me. Rev. Stat. Ann. Tit. 10 §1211 *et seq*.); Maryland: the Maryland Consumer Protection Act

(Md. Com. Law Code Ann. §§13-101 *et seq*., 14-101 et seq.); Massachusetts: the Consumer

Protection Act (Mass. Gen. Laws Ann. Ch. 93A, *et seq*.); Michigan: the Michigan Consumer

Protection Act (Mich. Comp. Laws Ann. §445.901 *et seq*.) and the Michigan Pricing and

Advertising Act (Mich. Comp. Laws Ann. §445.351 *et seq*.); Minnesota: the Consumer Fraud

Act (Minn. Stat. Ann. §325 F. 69, *et seq*.); the False Statement in Advertisement Statute (Minn.

Stat. Ann. §325 F. 67. *et seq*.); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann.

§325D.44, *et seq*.); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13, *et seq*.);

Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 *et seq*.) and the False

Advertising Statutes (Miss. Code Ann. §97-23-3, *et seq*.); Missouri: the Missouri Merchandising

Practices Act (Mo. Rev. Stat. §407.010 *et seq*.); Montana: the Montana Unfair Trade Practices

and Consumer Protection Act (Mont. Code Ann. §30-14-*101 et seq*.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712, *et seq*.); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 *et seq*.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 *et seq*.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 *et seq*., 41.600 *et seq*.);  New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 *et seq*.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 *et seq*. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 *et seq*.); New York: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350, *et seq*. (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 *et seq*.); North Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 *et. seq.);* Ohio:  Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 *et seq*. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 *et seq*. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 *et seq*. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 *et seq*.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 *et seq*.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 *et seq*. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 *et seq*.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 *et seq*.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 *et seq*. (Vernon)); Utah:  Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 *et seq*.) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 *et seq*.); Vermont: Vermont

Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 *et seq*.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 *et seq*.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 *et seq*.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 *et seq*.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 *et seq*. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 *et seq*.).

68.    In addition to actual damages, Plaintiff Quitno and the Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to the various state statutes prohibiting unfair and deceptive acts and practices.

69.    Plaintiff Quitno and the Class seek damages, together with appropriate punitive damages, attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)**

70.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

71.    The Class Vehicles all contain the Defective Brakes which do not allow the Class Vehicles to slow down with consistent brake pedal feedback and at consistently safe stopping distances.

72.    Defendant sold the defective Class Vehicles as described herein to Plaintiff and the Class.

73.    Defendant impliedly warranted that its Class Vehicles are merchantable, reasonably fit for their ordinary purpose, and safe.

74.    Defendant breached the implied warranty of merchantability by selling Class Vehicles that are defective and not reasonably fit for their ordinary purpose; that is, the Class Vehicles cause a dangerous safety hazard to consumers because they do not contain braking systems that allow the Class Vehicles to slow down with consistent brake pedal feedback and at consistently safe stopping distances.

75.    As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have suffered and continue to suffer actual and consequential damages.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT
### 15 U.S.C. 2301, ET SEQ.
### (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

76.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

77.    The Class Vehicles constitute "consumer products," as defined in 15 U.S.C. §2301.

78.    Plaintiff and the other Class Members are "consumers," as defined in 15 U.S.C. §2301.

79.    Defendant is a "supplier" of the Class Vehicles as defined in 15 U.S.C. §2301.

80.    Defendant is a "warrantor" as defined in 15 U.S.C. §2301.

81.    As a supplier and warrantor and in connection with the sale of the Class Vehicles, Defendant made "implied warranties" arising under State law regarding the Class Vehicles, as defined in 15 U.S.C. §2301(7).

82.    The warranties made by Defendant pertained to consumer products costing the consumer more than five dollars, *see* 15 U.S.C. §2302(e).

83.    Plaintiff invokes federal jurisdiction for the claims stated under this Count

22

pursuant to the Class Action Fairness Act.

84.     Defendant violated the Magnuson-Moss Federal Warranty Act by its failure to comply with the implied warranties it made to Plaintiff and other Class Members.  *See*, 15 U.S.C. §2301, *et seq*.

85.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

86.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

87.     Plaintiff, and the other Class Members, sustained injuries and damages as a proximate result of Defendant's violation of its written and/or implied warranties, and are entitled to legal and equitable relief against Defendant, including economic damages, rescission or other relief as appropriate.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)**

88.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

89.     Plaintiff and the Class purchased the Class Vehicles with the justified expectation that the Class Vehicles were safe for their intended use.  Plaintiff and the Class did not expect that the Class Vehicles would contain a Brake Defect that prevents the Class Vehicles from slowing down with consistent brake pedal feedback and at consistently safe stopping distances the Class Vehicles, thereby rendering the Class Vehicles hazardous and dangerous to consumers.

90.     Plaintiff and the Class paid for the Class Vehicles and fulfilled their obligations under the sales contract.

91.     Despite the full performance by Plaintiff and the Class, Defendant did not, in fact, provide Plaintiff or the Class with the benefits for which they had given consideration to receive, namely, a safe and functioning vehicle.

92.     As a direct and proximate result of Defendant's actions as described throughout this Complaint, Plaintiff and the Class have suffered, and continue to suffer, injury in fact and have lost time and money as a result of Defendant's breach.

93.     Plaintiff and the Class did not receive the benefit of their bargain.

94.     By reason of the foregoing, Defendant has breached its contracts with Plaintiff and the Class, resulting in damages to Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(ALTERNATIVE COUNT TO BREACH OF CONTRACT)**
**(ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)**

95.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

96.     A party is unjustly enriched when it retains a benefit to the detriment of another party against fundamental principles of justice, equity, and good conscience.

97.     Defendant sold Class Vehicles to Plaintiff and the Class knowing that they believed that the Class Vehicles were safe, with a functional brake system.

98.     Defendant has altogether failed to disclose to Plaintiff and the Class that the Class Vehicles all contain a Brake Defect which prevents the Class Vehicles from slowing down with consistent brake pedal feedback and at consistently safe stopping distances the Class Vehicles, thereby rendering the Class Vehicles hazardous and dangerous to consumers

24

99.     Defendant engaged in this misconduct in order to increase the sales of its products.

100.    Defendant has reaped millions of dollars in profits as a result of its collection of money from consumers based on its failure to disclose material information concerning the safety of the Class Vehicles, notwithstanding its knowledge of the Brake Defect.  That Defendant amassed such earnings, and retains such benefit to the detriment of Plaintiff and the Class, and violates the fundamental principles of justice, equity, and good conscience.

101.    Defendant has been and continues to be unjustly enriched through its above-described conduct.

102.    Defendant should be required to disgorge the monies it has unjustly obtained to the detriment of Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant granting the following relief:

a.      An order certifying this case as a class action and appointing Plaintiff's counsel to represent the Class and Plaintiff as representatives of the Class;

b.      All recoverable compensatory and other damages sustained by Plaintiff and the Class;

c.      Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

d.      An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from continuing to conceal material information about the Brake Defect of the Class Vehicles; and (3) requiring Defendant to refund to Plaintiff and all

members of the Class the funds paid to Defendant for the Brake Defective Class Vehicles, and/or repairs resulting from the Brake Defect;

      e.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

      f.      Such other relief as the Court may deem just and proper.

<strong>DEMAND FOR JURY TRIAL</strong>

Plaintiff demands a trial by jury on all causes of action so triable.


Dated:  November 16, 2018                Respectfully submitted,

                                    */s/ Ryan F. Stephan*
                                    Ryan F. Stephan
                                    James B. Zouras
                                    STEPHAN ZOURAS, LLP
                                    100 North Riverside Plaza, Ste 2150
                                    Chicago, IL 60606
                                    Telephone: (312) 233-1550
                                    Fax: (312) 233-1560
                                    rstephan@stephanzouras.com
                                    jzouras@stephanzouras.com

                                    Michael J. Flannery
                                    CUNEO, GILBERT & LADUCA, LLP
                                    7733 Forsyth Boulevard, Suite 1675
                                    St. Louis, Missouri 63105
                                    Telephone: (202) 789-3960
                                    Fax: (202) 789-1813
                                    Email: mflannery@cuneolaw.com

                                    ***ATTORNEYS FOR PLAINTIFF***
                                    ***AND THE PROPOSED CLASSES***

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on November 16, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.


  _/s/ Ryan F. Stephan_