**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| AMBER QUITNO, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:18-cv-07598 |
| v. | Judge John Robert Blakey |
| GENERAL MOTORS, LLC, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Amber Quitno brings a putative class action against Defendant General Motors, LLC, alleging she purchased a 2015 Chevrolet Tahoe that suffered from a defective brake system (the Brake Defect), of which Defendant was aware and actively concealed. She now brings claims for: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA); (2) breach of implied warranty; (3) breach of implied warranty under the Magnuson-Moss Federal Warranty Act; and (4) unjust enrichment. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As set forth below, this Court grants Defendant's motion.

## I.     The Complaint's Allegations

On September 21, 2015, Plaintiff purchased a new 2015 Chevrolet Tahoe from Alan Browne Chevrolet in Genoa, Illinois. [33] ¶ 9. Concerned about safety, before purchasing this vehicle, Plaintiff researched several options. *Id.* ¶¶ 10, 12. To that end, Plaintiff specifically researched the Chevrolet Tahoe and read information on

Defendant's website touting the Chevrolet Tahoe's safety and durability. *Id.* ¶ 12. Indeed, Defendant's website stated that "GM had implemented procedures to prevent known defects from being hidden from consumers." *Id.* Additionally, she also spent around twenty minutes "speaking to the sales representative specifically about the allegation made against GM concerning its concealment" of a "steering defect." *Id.* ¶ 13. That employee reassured her that the Chevrolet Tahoe was safe, and that Defendant would disclose any safety-related defect to consumers. *Id.* Plaintiff subsequently purchased her new 2015 Chevrolet Tahoe, which came with a "New Vehicle Limited Warranty" (the Limited Warranty), providing coverage for three years or 36,000 miles. *Id.* ¶¶ 9, 14–15.

Despite purchasing what Plaintiff felt constituted a safe car, in the summer of 2018, she began experiencing brake problems. *Id.* ¶¶ 20, 22. The first incident occurred when she attempted to apply the brakes as the wheel was turned while backing out of her driveway. *Id* ¶ 20. The brakes felt "hard and wouldn't slow the vehicle." *Id.* Because she could not brake, she hit another car parked near her driveway. *Id.* She paid the owner of the other car fifty dollars and her car sustained some damage, including a broken rear taillight, a bent bumper, and a bent side fender. *Id.* ¶ 21.

A few months later, Plaintiff again experienced brake failure. *Id.* ¶ 23. As she began to reverse out of a parking space, her brakes stopped working, and Plaintiff only managed to stop the car by standing on the brake with her full weight. *Id.* Plaintiff then put the car in park, turned off the engine, and restarted it. *Id.* ¶ 24.

At this point her brakes functioned normally. *Id.* After waiting, she then put the car in reverse and again began to back out. *Id.* Yet the brakes again malfunctioned, forcing her to use her body weight to stop it. *Id.* She later put the car in drive, testing the brakes as she moved forward, and, after finding they worked, drove home and parked her vehicle in her driveway. *Id.* ¶ 25.

The next day, Plaintiff decided to take her car to the dealership for service. *Id.* ¶ 26. But when she backed out of her driveway, she again experienced the alleged brake defect. *Id.* Plaintiff subsequently called the dealership, who informed her that her warranty period expired four days ago. *Id.* A dealership employee did, however, pick up Plaintiff's vehicle for a diagnostic check. *Id.* ¶ 28. Although that check did not reveal any problems, Plaintiff asked the dealership to check the brake vacuum. *Id.* That separate test did reveal a brake pressure problem: the dealership stated that brake pressure should be -13, but the brake pressure on plaintiff's car was -9 sitting and -3 on depression. *Id.* The dealership subsequently ordered and installed a replacement, costing around four hundred dollars. *Id.*

Plaintiff claims Defendant knew of the Brake Defect before her purchase of her 2015 Chevrolet Tahoe and failed to disclose the issue to her and other similarly situated consumers. *Id.* ¶ 16. She believes this to be true because of Defendant's service bulletins as well as customer complaints sent to dealerships, Defendant, and the National Highway Traffic Safety Administration ("NHTSA") complaining of brake failure issues in the purported class vehicles. *Id.* ¶¶ 29, 30.

## II.    Legal Standard

### A.    Rule 12(b)(6) Standard

To survive a 12(b)(6) motion, a complaint must include a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), and so that the Defendant has "fair notice" of the claim and "the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere conclusory statements "do not suffice," nor do "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(6), this Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable references in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). This Court need not, however, accept conclusory assertions and statements of law as true. *Id.*; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Finally, this Court is also limited to considering only the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### B.    Rule 9(b) Standard

Courts analyze ICFA claims "under the heightened standard set forth in Federal Rule of Civil Procedure 9(b)." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).  Rule 9(b) requires a plaintiff averring fraud or mistake to state "with particularity" the circumstances constituting the fraud.  *Id.* at 737.  The Seventh Circuit has construed "particularity" to require that a plaintiff "describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotations omitted).   Rule 9(b)'s particularity requirement, however, is not inflexible and the "precise details that must be included in a complaint 'may vary on the facts of a given case.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *Pirelli*, 631 F.3d at 442).  Nevertheless, plaintiffs still must insert "precision and some measure of substantiation into their allegations of fraud." *Presser*, 836 F.3d at 776 (citations omitted).

## III.    Analysis

### A.    Count I: Plaintiff's ICFA Claim

Defendant seeks to dismiss Plaintiff's IFCA claim arguing Plaintiff fails to sufficiently plead a claim based upon either deceptive conduct or an unfair practice. The ICFA prohibits both unfair practices and deceptive conduct, 815 ILL. COMP. STAT. 505/2, and Plaintiff alleges both here, [33] ¶¶ 72–86.

To state a claim for either under the ICFA, a Plaintiff must allege: (1) a

deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act. *Philadelphia Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). Additionally, fraud claims based upon deception, whether based upon a misrepresentation or omission, must meet the heightened pleading standard of Rule 9(b), which requires plaintiffs to allege the who, what, when, where, and how of the deception. *Haywood v. Massage Envy Franchising LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (explaining that the plaintiff must provide "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff'") (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)).

1.   Deceptive Conduct

Beginning with Plaintiff's deceptive conduct claim, Defendant argues Plaintiff fails to satisfy Rule 9(b)'s particularity requirement. [40] at 4–7. Plaintiff alleges Defendant deceived her by omitting to tell her about the Brake Defect. [33] ¶¶ 79–83. To support her claim, Plaintiff first points to her pre-sale research on the Chevrolet Tahoe, during which she "read information on Defendant's website that the vehicle was safe and durable." *Id.* ¶ 12. But in making this allegation, she provides only the identity of the entity making the misrepresentation (Defendant), the method

by which she received it (their website), and some information as to the substance (that she read online descriptions of the vehicle as "safe and durable" and that GM implemented procedures to alert consumers to defects). Yet the substance she provides about Defendant's alleged misrepresentation remains vague and generalized; and she does not disclose when she encountered these statements other than implying that she read them at some time before purchasing her car. Given this paucity in information, this allegation fails to meet 9(b)'s particularity requirement. *See Bankers Tr. Co.*, 959 F.2d at 683. Plaintiff also generically mentions Defendant's promotional materials, advertisements, and marketing. *See, e.g.,* [33] ¶¶ 14, 83. But such generalized allegations are again far too vague to provide Defendant notice of the exact statements at issue. *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805–06 (N.D. Ill. 2013) (dismissing fraud claims under Rule 9(b) when the plaintiffs needed to "provide greater details about the circumstances surrounding the omissions").

Additionally, Plaintiff alleges Defendant's Limited Warranty fraudulently concealed the Brake Defect. [33] ¶ 14. Yet she fails to set forth or otherwise explain the precise language within the Limited Warranty that allegedly deceived her. *Id*. This failure remains unsurprising where the Limited Warranty actually acknowledges potential defects by specifically stating that its purpose is to cover "repairs to correct" any vehicle defect. [33] (Ex. 1) at 4.

As a final response to Defendant's specificity challenge, Plaintiff points to an Alan Browne Chevrolet employee's assurance that the Chevrolet Tahoe was "safe"

and that "GM had implemented procedures that would ensure that known safety related defects would have been disclosed." [33] ¶ 13. While this alleged misrepresentation might provide adequate detail as to the particulars of the fraud, including the who (the sales agent), what (the safety of the vehicle and procedure to disclose known safety defects), when (at the time of her initial vehicle purchase on September 21, 2015), and where (at Alan Browne Chevrolet), she nevertheless fails to allege any facts showing an agency relationship between Alan Browne Chevrolet and Defendant.

This Court finds this failure dispositive because Defendant cannot be held liable for an Alan Brown Chevrolet employee's statement unless Defendant made that employee its agent. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592 (Ill. 1996) (noting that fraudulent statements made by Suzuki dealers can only support a fraud claim against Suzuki if the plaintiffs adequately alleged the dealers were Suzuki's agents). Because Plaintiff fails to plead any facts indicating an agency relationship between Alan Browne Chevrolet and Defendant, the sales agent's statements cannot support a fraud claim against Defendant. *See, e.g., Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996) ("To plead the existence of an agency relationship, the plaintiff must allege some factual predicate . . . to create the inference of agency.") (citation omitted).

Because Plaintiff fails to plead with particularity a misrepresentation attributable to Defendant, her ICFA deception claim fails.

## 2. Unfair Practices

Defendant next challenges Plaintiff's allegation that Defendant violated the ICFA's "unfair practices" prohibition, which need not satisfy Rule 9(b)'s particularity requirement. *Pirelli*, 631 F.3d at 446. An unfair practice claim hinges upon a defendant's allegedly "unfair or unscrupulous" behavior rather than deceptive behavior. *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 7190809, at *3 (N.D. Ill. Dec. 17, 2014). Plaintiffs cannot, however, use the "unfair practices" prong of the ICFA to avoid meeting Rule 9(b)'s particularity requirements if the claim remains "entirely grounded" in a fraud claim. *See, e.g.*, *Camasta*, 761 F.3d at 737; *Stravropoulos*, 2014 WL 7190809, at *3.

In this case, Plaintiff's sole unfair practice allegation states that the "conduct described through this Complaint offends public policy, causes substantial injury to consumers, and constitutes unfair or deceptive trade practices predominately and substantially affecting the conduct of trade." [33] ¶ 84; [49] at 7. But the "conduct described" throughout the complaint remains limited to the alleged deceptive conduct whereby Defendant omitted information about the Brake Defect. Because Plaintiff predicates her unfair practice allegation entirely upon Defendant's allegedly deceptive statements, merely citing the "unfair practices" prong of the ICFA cannot transform her claim. *Stavropoulos*, 2014 WL 7190809, at *3 (rejecting the plaintiff's characterization of his claims as an unfair practice because the complaint was "plainly based on allegedly deceptive, rather than unfair or unscrupulous, conduct"); *see also Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551,

at *2 (N.D. Ill. May 16, 2013) (holding that "concealment cases . . . are evaluated under the deception prong of the ICFA").

Because this Court holds that Plaintiff fails to state either a deceptive conduct or an unfair practice cause of action under the ICFA, this Court grants without prejudice Defendant's motion to dismiss these claims.

### B. Count II: Breach of State Law Implied Warranty

Defendant argues that this Court should dismiss Count II for lack of privity. [40] at 9–10. Under Illinois law, to recover under a breach of implied warranty claim, plaintiffs must demonstrate privity of contract between themselves and the defendant. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988)). Plaintiff's allegations show, and her brief concedes, that she is not in privity with Defendant. *See* [33] ¶ 9; [49] at 10–12. To save her state law implied warranty claim then, Plaintiff argues that her claim falls under the "direct dealing" privity exception, [49] at 11, which provides an exception when the manufacturer "directly deals" with a remote customer even though that customer purchased the product from a third-party. *In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.,* 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016).

This exception, however, is inapplicable here. To begin, Plaintiff fails to plead any facts alleging direct dealings with Defendant's agents, as the plaintiffs alleged in *Rust-Oleum* and other successful direct dealing cases. *See Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016) (collecting cases). Plaintiff also

fails to plead any facts suggesting Defendant manufactured her car specifically to her specifications or that she maintained a unique relationship with Defendant. *Manley v. Hain Celestial Grp.*, No. 18 C 7101, 2019 WL 4750273, at *8 (N.D. Ill. Sept. 30, 2019) (dismissing similar consumer allegations for failure to show direct marketing that would excuse the privity requirement). Given Plaintiff's failure to plead factual allegations establishing that Defendant directly dealt with her, Count II fails for lack of privity, and this Court grants Defendant's motion to dismiss without prejudice.

### C.  Count III: Breach of Implied Warranty under the Magnuson-Moss Federal Warranty Act

Defendant also seeks to dismiss Plaintiff's MMWA implied warranty claim. The MMWA allows consumers to bring federal claims for a breach of "an implied warranty arising under State law."  15 U.S.C. § 2301(7).  Yet the MMWA does not create a cause of action on its own but rather "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir. 2004).  Even though Plaintiff's MMWA claim depends upon the viability of her state law implied warranty claim, which fails for a lack of privity, she claims her MMWA claim survives based upon a privity exception for implied warranty claims alleged pursuant to the MMWA. [49] at 10–12.

To support this argument, Plaintiff notes that Illinois courts have held that when plaintiffs bring implied warranty claims under the MMWA, courts may relax the privity requirement when: "(1) the manufacturer extended a written warranty with the product and (2) a consumer subsequently brought an action against a

manufacturer pursuant to the Act." *Mydlach v. DaimlerChrysler Corp.*, 846 N.E.2d 126, 153 (Ill. App. Ct. 2005). Plaintiff asserts that this exception applies here.

But federal courts need not follow state courts' interpretation of federal law. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275–76 (7th Cir. 1997) (citation omitted). Indeed, numerous courts in this district have declined to adopt this interpretation. *See, e.g.*, *Zaro v. Maserati N. Am., Inc.*, No. 07 C 3565, 2007 WL 4335431, at *3 (N.D. Ill. Dec. 6, 2007) ("While this Court is obligated to follow Illinois Supreme Court interpretations of Illinois law in regards to privity, this Court does not have to follow Illinois' interpretation and application of the Magnuson-Moss Act," which is a federal statute.) (citation omitted); *Kutzler v. Thor Indus., Inc.*, No. 03 C 2389, 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003) ("The overwhelming weight of authority in this district . . . has held that privity is required under the Act.") (citations omitted) (citing cases). Instead these courts interpreted the MMWA as requiring privity for Illinois implied warranty claims "except where modified in Sections 2308 and 2304(a)." *Zaro*, 2007 WL 4335431, at *4. These sections "preclude warrantors from disclaiming or modifying existing warranties; they do not create new obligations" and are not relevant here. *Id.*

For these reasons, Plaintiff's MMWA implied warranty claim fails because she does not plead privity and no exceptions apply. Accordingly, this Court grants without prejudice Defendant's motion to dismiss Plaintiff's MMWA claim.

### D.    Count IV: Unjust Enrichment

Finally, this Court considers Plaintiff's unjust enrichment claim.  In order to successfully establish an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).  Plaintiffs may pursue a claim for unjust enrichment alongside a claim for tort, contract, or statute so long as they based that claim upon a theory that the defendant engaged in unlawful or improper conduct rather than an implied or quasi contract theory.  *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017).

Here, Plaintiff's unjust enrichment theory is that Defendant unjustly retained a benefit by deceptively selling Plaintiff the 2015 Chevrolet Tahoe.  [33] ¶¶ 109–112 (explaining that Defendant sold the 2015 Chevrolet Tahoe to Plaintiff knowing that she believed the car was "safe, with a functional brake system," because Defendant failed to disclose the Brake Defect).  Thus, her unjust enrichment claim remains based solely upon the same allegedly deceptive conduct as her ICFA claim.  In this scenario, where her "unjust enrichment claim is predicated on the same conduct as another claim, 'then the unjust enrichment claim will be tied to this related claim— and, of course, unjust enrichment will stand or fall with the related claim.'"  *Muir*, 2017 WL 4310650, at *6 (quoting *Cleary v. Phillip Morris*, 656 F.3d 511, 517 (7th Cir.

2011)).  Because this Court dismissed Plaintiff's ICFA claim, her unjust enrichment claim also fails.  For this reason, this Court grants without prejudice Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

## IV.    Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss [40] without prejudice, and gives Plaintiff leave to file an amended complaint to the degree she can do so consistent with her obligations under Rule 11.  This case remains set for a status conference before Magistrate Judge Lisa A. Jensen. Any proposed revisions to the case management order may be addressed at that time.


Dated: February 18, 2020


Entered:

John Robert Blakey
United States District Judge