# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| AMBER QUITNO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>Case No. 1:18-CV-07598<br><br>Judge John Robert Blakey<br><br>Magistrate Judge Lisa A. Jensen |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiff Amber Quitno (hereinafter "Plaintiff" or "Plaintiff Quitno"), individually and on behalf of all others similarly situated, brings this action against Defendant General Motors, LLC ("GM" or "Defendant") to obtain damages, restitution, and/or injunctive relief for herself and on behalf of the proposed Class as defined herein. Plaintiff makes the following allegations upon information and belief, except as to her own respective actions, the investigation of her counsel, and the facts that are a matter of public record.

## INTRODUCTION

1.      This action is brought to remedy violations of applicable law in connection with Defendant's design, manufacture, sale, and/or servicing of vehicles throughout Illinois that include defective braking systems. The defective braking systems at issue were installed in all model year 2015 to present Cadillac Escalades, 2014 to present Chevrolet Silverados, 2015 to present Chevrolet Suburbans, 2015 to present Chevrolet Tahoes, 2014 to present GMC Sierras, and 2015 to present GMC Yukon/Yukon XLs ("Class Vehicles") and sold or leased to

1

consumers, including Plaintiff, in Illinois.

2.     The braking systems common to all of the Class Vehicles are plagued by a design defect that causes a dangerous safety hazard to consumers, in that the Class Vehicles are prone to sudden and unexpected loss of vacuum in the brake booster, requiring replacement of the brake booster and/or the system's vacuum pump (the "Brake Defect").

3.     Specifically, the Class Vehicles' hydraulic brake system is assisted by a mechanical vacuum assist pump. The vacuum assist pump is mounted to the engine, is spun by a belt driven pulley, and lubricated by circulating engine oil. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ When Class Vehicles suddenly and unexpectedly lose pump output, the resulting brake system failure makes Class Vehicles difficult to stop: the brake pedal becomes hard, requiring multiple times force from the driver to slow the vehicle, and stopping distance is severely and suddenly compromised. This defective braking system common to all Class Vehicles is a clear safety hazard that was never disclosed to any member of the class prior to purchase. Failure of the vacuum pump as a result of the Brake Defect requires

replacement of the vacuum pump to restore brake boost to the driver. Occasionally, vacuum pump failure also leads to the presence of engine oil in the vacuum line connected to the brake booster, or in the brake booster itself; in these instances, replacement of the brake booster is required in addition to replacement of the vacuum pump.

4.      Despite its longstanding knowledge of the defective braking system, Defendant omitted what it knew about the Brake defect from all advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase. Reasonable efforts undertaken by the Class to remedy this defect with or through GM have been unsuccessful.

5.      Failure of the vacuum pump as a result of the Brake Defect requires replacement of the vacuum pump to restore brake assistance to the driver.

6.      The defective braking system common to all Class Vehicles is a clear safety hazard that was never disclosed to any member of the class prior to purchase, despite GM's knowledge.

7.      Since at least 2014, GM has had actual knowledge of the Brake Defect and the dangers it posed to consumers at large.  Nevertheless, Defendant chose to omit information about the Brake Defect and not to disclose these problems to Plaintiff and the Class, so that it could continue to profit from the sale and lease of the Class Vehicles.

8.      GM should not have sold, leased, or marketed the Class Vehicles without a full and complete disclosure of the Class Vehicles' safety defect, and should have voluntarily recalled the Class Vehicles long ago.

9.      It was not until September 2019 that GM publicly admitted in the United States to the existence of the Brake Defect. In Safety Recall 19V645000 ("Recall") GM stated:

> [GM] has decided that a defect which related to motor vehicle
> safety exists in [Class Vehicles]. In some circumstances these

vehicles may have a condition in which the engine-mounted mechanical vacuum pump output may decrease overtime, decreasing the amount of vacuum/power brake assist. (*See* Exhibit "B").

10.     Yet the Recall did nothing to cure the Brake Defect. As originally manufactured, the Class Vehicles' hydraulic brake system is assisted by a mechanical vacuum assist pump. The vacuum assist pump is mounted to the engine, is spun by a belt driven pulley, and lubricated by circulating engine oil. Accordingly, the pump requires a steady supply of engine oil to function safely and properly. However, the Class Vehicles' vacuum pumps have an oil inlet filter screen that is prone to clog with engine and oil debris. Oil starvation causes aggressive internal wear and rapid internal failure, resulting in a dangerous loss of vacuum assist. When Class Vehicles lose vacuum assist pump output, the brake booster failure makes Class Vehicles difficult to stop by causing the brake pedal to become hard and requiring multiple times force from the driver to slow the vehicle, severely and suddenly compromising stopping distance.

11.     Rather than replacing the admittedly defective vacuum assist pump, the Recall involves the installation of a software update that allegedly improves how the system utilizes the hydraulic brake boost function. The software update recalibrates Electronic Brake Control Module ("EBCM") operation, which allegedly engages the hydraulic brake assist function earlier to compensate for the lack of vacuum pump output when the Brake Defect results in vacuum pump failure. However, the early engagement of the hydraulic brake assist function occurs only after the defective vacuum pump has failed and the vehicle's braking ability has already been compromised.

12.     The Recall repair does not remedy the abnormally hard brake pedal or the increased stopping distances caused by the Brake Defect. (*See* Exhibit C). In fact, the Recall repair has exacerbated the problem for many who have received the repair.

13.     Moreover, the Recall failed to notify Plaintiff of the true nature of the Brake

Defect. In 2014, GM was notified that engineering tests revealed and documented the Brake

Defect, but GM never disclosed this Brake Defect information to Plaintiff or the public. GM's

knowledge of the Brake Defect at the start of the Class period is evidenced by (1) a July 2014

test of failed vacuum pumps, (2) a July 2014 Class Vehicle collision report, (3) a September

2014 Class Vehicle collision report, (4) a November 2014 Class Vehicle near-collision report,

(5) a September 2014 Class Vehicle collision, and (6) its self-generated service bulletin that

identifies the Brake Defect and its cause and instructs GM dealership technicians how to

diagnose and repair it. GM's prior knowledge highlights the continuation of its unlawful

practices, which manifests in its fatal flaws of its Recall because GM continues to fail to notify

Plaintiff and the public of the true nature of the Brake Defect. Rather than informing consumers

that the only way to remedy the Brake Defect is to replace the vacuum pump with an improved

one, GM implemented a band-aid fix that fails to mitigate or eliminate the Brake Defect. As a

result, Plaintiff must pay out-of-pocket to receive an effective and complete remedy for the

Brake Defect. (*See* Exhibits C-E).

14.     Plaintiff brings this action on behalf of herself and all those similarly situated

("Class," "Class Members," "Consumers," "Owners") for GM's deceptive trade practices in

violation of the consumer protection laws of Illinois. Plaintiff seeks damages, attorney's fees and

costs, punitive damages, and the repair of, replacement of, or refund of money paid to own or

lease all Class Vehicles in Illinois, and any other legal relief available for her claims. Should

Plaintiff's demanded legal relief be unavailable or prove insufficient, Plaintiff seeks appropriate

equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

**PARTIES**

15.     Plaintiff Amber Quitno is a citizen of the state of Illinois, residing in the city of Sycamore.  Plaintiff purchased a dealer demo 2015 model year Chevrolet Tahoe with about 200 miles on it on or about September 21, 2015 at Alan Browne Chevrolet, located in Genoa, Illinois.

16.     Defendant is a Delaware LLC with its principal place of business in Michigan. On information and belief, none of GM's members have citizenship in Illinois. GM manufactured, distributed, sold, serviced and/or warranted thousands of Class Vehicles, directly or indirectly, to Plaintiff and Class Members with the understanding and expectation that Class Vehicles would be sold, operated, and fit for their intended purpose in Illinois.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § l332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class Members and Defendant are citizens of different states.

18.     This Court has general and specific jurisdiction over Defendant because GM has sufficient minimum contacts with Illinois and within the Northern District of Illinois to establish its presence in Illinois, and certain material acts upon which this suit is based occurred in the Northern District of Illinois, including but not limited to the sale of Defendant's defective product to Plaintiff.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant does substantial business throughout this District. Venue is also proper, because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### Plaintiff Purchased a Defective Class Vehicle

20.    Plaintiff purchased a new 2015 model year Chevrolet Tahoe ("Plaintiff's Vehicle") on or about September 21, 2015 at Alan Browne Chevrolet, located in Genoa, Illinois. Plaintiff executed all sales documents in Genoa, Illinois.

21.    Through its dealer agreements and other methods, GM has control over the documentation and disclosures provided to consumers, such as window stickers and other legally required notices. As a certified GM dealer, Plaintiff's dealership acted as Defendant General Motors' agent regarding the disclosures and other representations made to consumers about the characteristics of their vehicles, including Plaintiff's Vehicle and the Class Vehicles.

22.    Safety and durability were among the most important factors in Plaintiff's purchase of a vehicle.  Plaintiff researched the Chevrolet Tahoe online and read information on GM's website that the vehicle was safe and durable.  Plaintiff also read that GM had implemented procedures to prevent known defects from being hidden from consumers.

23.    Plaintiff researched several vehicles before deciding to purchase Plaintiff's Vehicle.  She had always owned GM or Ford cars and wanted to continue purchasing from GM.

24.    For example, during the three days immediately preceding her purchase of her Class Vehicle, Plaintiff viewed an ad stating that: "The all-new Chevrolet Tahoe and Suburban have been designed to be more functional and refined, while offering more safety features and a greater range of advanced technologies for today's connected customers. Both the Tahoe and Suburban offer first-class comfort, unmatched capability and innovative technologies with new standard content." See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/suburban/2015.detail.html/content/Pages/news/us/en/2014/mar/0224-2015-tahoe-specs1.html

25.    During the same time frame, she reviewed an ad stating that the 2015 Chevy

Tahoe safety rating was "#2 out of 6 in 2015 Affordable Large SUVs." See https://cars.usnews.com/cars-trucks/chevrolet/tahoe/2015/safety

26.     Yet another ad Plaintiff viewed during that same time frame states: "Designed to keep you and your family safe, the improved 2015 Chevrolet Tahoe has an array of advanced safety technology, features include a rearview backup camera, antilock disc brakes, traction and stability controls, full-length side curtain airbags, and OnStar service with automatic crash notification, remote door unlocking, turn-by-turn navigation, and 24/7 roadside assistance." See https://www.midwaychevy.com/chevrolet-reviews/2015-tahoe.htm

27.     Yet in all the ads she viewed, GM omitted the fact that the Class Vehicles suffer from the Brake Defect which could result in decreased braking abilities.  As a result of Defendant's omissions in the ads she viewed, Plaintiff understood that the 2015 Chevrolet Tahoe was a safe and durable vehicle.

28.     Around the time that Plaintiff sought to purchase a vehicle, GM had been in the news because a young woman had died in a GM vehicle and allegations had been made that GM had known of (but failed to disclose) a steering defect in the vehicles at issue.

29.     When Plaintiff went to GM certified dealer Alan Browne Chevrolet on or about September 21, 2015, she spent about 20 minutes speaking to the sales representative specifically about the allegations made against GM concerning its concealment of the steering defect. Plaintiff sought and received assurances from the sales agent that the Chevrolet Tahoe was safe and that GM had implemented procedures that would ensure that known safety related defects would have been disclosed.  Yet during her encounter with the sales representative, GM omitted the fact that the Class Vehicles suffer from the Brake Defect which could result in decreased braking abilities.

30.     Prior to purchase, Plaintiff reviewed all paperwork provided by GM and the dealer, including a window sticker displayed on the vehicle, warranty materials, and advertising and promotional materials. However, prior to the sale and despite GM's knowledge of the defect, GM did not disclose the defect in a Monroney Sticker (i.e. window sticker), permanent warning on the vehicle in some manner, decal, owner's manual, or other original sale communications which would remain with the vehicle and as further described in this Complaint. Further, even after the sale, GM had not directed its dealers to provide notice or issue warnings to known or potential buyers of the information it was aware of about the defect as evidenced by its service bulletins.  Further, prior to Plaintiff's purchase, GM had not issued a recall for the defect. None of the information provided to Plaintiff informed her of the presence of the Brake Defect, including the vehicle's dangerous propensity to experience increased stopping distance without warning, or require excessive force to slow the vehicle without warning. Because of GM's omissions, at the time of purchase, Plaintiff was not aware and was not informed that Plaintiff's Vehicle suffered from the Brake Defect.

31.     Defendant's New Vehicle Limited Warranty purports to provide bumper to bumper coverage for the first 3 years or 36,000 miles, whichever comes first, and states that any implied warranty of merchantability is limited in duration to the duration of the written New Vehicle Limited Warranty.  (Exhibit F at pg. 4 and 13).

32.     Defendant acted in bad faith because GM knew, at the time that it designed, tested, validated, marketed, sold and provided written warranties for the Class Vehicles to consumers that the Class Vehicles have the Brake Defect.  Notwithstanding that knowledge, Defendant purposefully concealed and omitted the existence of the Brake Defect within the written warranties and elsewhere. Thus, the 3-year durational limit in the New Vehicle Limited

Warranty is unconscionable and unenforceable.

33.     Plaintiff relied on the materials referenced above, and the omissions of GM's agents, in that she reasonably expected that Defendant would disclose the existence of a dangerous defect like the Brake Defect to consumers.

34.     At no point prior to Plaintiff's purchase of Plaintiff's Vehicle did Defendant disclose that her 2015 Chevrolet Tahoe, or any Class Vehicle, suffered from the Brake Defect. GM should have disclosed that the Class Vehicles, including Plaintiff's Vehicle, were dangerous because they were prone to sudden and unexpected loss of vacuum brake assistance in their advertisements and promotional materials.

35.     Had Plaintiff or any other reasonable person known that the 2015 Chevrolet Tahoe (or any other Class Vehicle) suffered from the Brake Defect, they would not have purchased a Class Vehicle or would have paid less to do so.

36.     During the Summer of 2018, Plaintiff's Vehicle first experienced the Brake Defect, although Plaintiff did not realize it at that time.  Plaintiff was backing the vehicle out of her driveway at a maximum speed of 4-5 miles per hour.  When Plaintiff attempted to apply the brakes while the wheel was turned, the brakes were hard and wouldn't slow the vehicle. As a result, Plaintiff's Vehicle hit a 1990s red SUV that was parked on the side of the road behind Plaintiff's driveway.

37.     Plaintiff paid the owner of the vehicle she hit $50.  Her own car sustained damage of a broken taillight to the rear, as well as a bent side fender and bumper.

38.     Plaintiff did not realize at the time of the collision that Plaintiff's Vehicle was experiencing the Brake Defect because when she put her vehicle in drive, the brakes worked. Several months later, after the brakes on Plaintiff's Vehicle failed two more times, Plaintiff

realized that her vehicle had malfunctioned because of the Brake Defect.

39.     On or about September 25, 2018, Plaintiff's Vehicle experienced the Brake Defect again. Plaintiff had driven Plaintiff's Vehicle to the parking lot of a Sprint store near her home.  As she was leaving the store and began to back out of her parking space (which was at an incline), without warning, her brakes failed:  as she pressed the brake pedal to try to bring the vehicle to stop.  Plaintiff was only able to stop the vehicle from ramming into other vehicles in the parking lot by essentially standing on the brake with all of her body weight.  Plaintiff's Vehicle finally came to a rolling stop just centimeters from hitting a parked car.

40.     Upon stopping, Plaintiff put the car in park, turned the engine off, restarted the vehicle, put the vehicle in drive and pulled forward, back into her original parking spot.  The brakes appeared to function properly as the vehicle moved forward into the parking spot.  At that point, she again put the car in park, and waited.  Attempting to the leave the parking lot a second time, Plaintiff again put the car in reverse and began to back out of the parking space.  Once again, Plaintiff experienced the Brake Defect, again having to put her full body weight on the brake pedal to bring the vehicle to a stop.

41.     Putting the car in drive at that point, Plaintiff tested the breaks moving forward, and they appeared to function properly.  At that point, Plaintiff drove from the Sprint store parking lot to her home, parking the vehicle in her driveway.

42.     On September 26, 2018, Plaintiff attempted to take Plaintiff's Vehicle into her local dealership for service.  Backing out of her driveway, Plaintiff experienced the Brake Defect for a third time, again having to put her full body weight on the brake pedal to bring the vehicle to a stop. Plaintiff then called the dealership, and was informed that her warranty period had expired four days earlier.

43.    Thereafter, Plaintiff went online to try to determine what could be causing the sudden, random, and unexpected brake failure to occur so randomly.  She found multiple posts online about the known issues describing the exact scenario she had been experiencing and found out that the dealerships had received "Service Bulletins" concerning the issue.  She read from multiple online posters that the standard diagnosis would not detect this issue and the vacuum booster must be tested independent of the vehicles diagnostic test.  Plaintiff also contacted GM, but was told that there was no known safety issue with the 2015 Chevrolet Tahoe.  Defendant also denied responsibility for the defects associated with the braking system in Plaintiff's Vehicle.  Plaintiff did not drive the vehicle for several days.

44.    Eventually, an employee of the local dealership, Alan Browne Chevrolet, came to Plaintiff's home and picked up Plaintiff's Vehicle for a diagnostic check.  From what Plaintiff observed, the dealership employee did not experience the Brake Defect while backing out of her driveway.  Plaintiff was informed that the diagnostic check performed by the dealership did not yield any deficits.  Thereafter, on October 16, 2018, she instructed the dealership to check the brake vacuum.  According to the verification sheet, the brake pressure is -9 sitting and -3 on depression.  The dealership advised Plaintiff that the brake pressure should be -13.  The dealership ordered a replacement part and installed it at a cost of approximately $400, but Plaintiff remains concerned that this has not rectified the Brake Defect or the dangers associated with it based on reading about other individuals who have experienced the same issue and, despite having had their vehicle's brake vacuum replaced, later experienced unexpected and complete brake failure again.  Plaintiff remains concerned for the safety of those who travel in the vehicle and those who may come in contact with it on the road.

**GM Knowingly Sold The Defective Class Vehicles**

45. Since the release of the Class Vehicles (the earliest of which was Spring 2013), Defendant GM has received numerous warranty returns, customer complaints, and National Highway Traffic Safety Administration Vehicle Owner Questionnaires relating to the Brake Defect.

46. GM knew of the Brake Defect at the start of the Class period. Specifically, documents produced by GM reveal its 2014 knowledge of the Brake Defect. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

47. GM also learned of at least one wreck and one near-wreck associated with the Brake Defect prior to the original purchase of Plaintiff's Class Vehicle, further demonstrating its Class-wide, presale knowledge. ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

48. Following a September 2014 Class Vehicle collision caused by the Brake Defect, GM opened a root cause investigation. Completed in November 2014, the investigation revealed to GM that the Brake Defect results in total loss of vacuum supply to the brake booster, resulting in a hard brake pedal, very little brake pedal travel, and extended stopping distances.

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

50.     GM has issued service bulletins to its dealers (but not to its customers) regarding the Brake Defect, for the following Class Vehicles and year models: 2015-2016 Cadillac Escalade; 2014-2016 Chevrolet Silverado 1500; 2015-2016 Chevrolet Suburban; 2015-2016 Chevrolet Tahoe; 2014-2016 GMC Sierra 1500; and 2015-2016 Yukon.

51.     In February of 2015—before Plaintiff purchased Plaintiff's Vehicle—GM issued service bulletin #PIT5361B to all of its franchised dealerships. This bulletin affected the Class Vehicles produced to date at the time: 2015 Cadillac Escalade; 2014-2015 Chevrolet Silverado 1500; 2015 Chevrolet Suburban; 2015 Chevrolet Tahoe; 2014- 2015 GMC Sierra 1500; and 2015 Yukon. (*See* Exhibit J.)

52.     The service bulletin states that it is "intended for use by professional technicians … written to inform these technicians of conditions that may occur on some vehicles", and GM admitted the existence of the Brake Defect by specifically advising technicians that "*a customer may comment on a hard brake pedal or that increased effort is needed to depress the brake pedal*." (emphasis added). Not only did GM admit the existence of the Brake Defect, but it went one step further by notifying its certified dealers, such as the one Plaintiff purchased her Class Vehicle from, how to diagnose and repair the Brake Defect. Specifically, GM stated: "While performing normal diagnostics, fluid may be found in the brake booster and/or the booster vacuum line," Which is a consequence of the Brake Defect. The service

bulletin requires extensive repairs including the replacement of the vacuum pump, vacuum line between the booster and the pump, brake booster, and the master cylinder. Despite knowing of the Brake Defect, GM failed to notify Class Members as the service bulletin was "intended for use by professional technicians … written to inform these technicians of conditions that may occur on some vehicles." The service bulletin was not, however, written or intended for the consuming public, including Plaintiff and any Class Members, nor was it distributed to them.

53.    As a result, GM investigated the defect, developed a countermeasure (attempted fix), and then released the countermeasure to its certified dealerships (such as the one from which Plaintiff purchased), via a service bulletin effective February 2015. The service bulletin required replacement of the Vacuum Assist Pump, Vacuum Line connecting the pump to the Brake Booster, Brake Booster, and Master Cylinder. (*See* Exhibit J).

54.    The service campaign drafting process does not happen overnight, especially for a repair as extensive as the February 2015 service campaign; instead it takes many months to identify the problem, devise a fix, test the fix, and implement the fix in the field.

55.    As a result, GM had presale, Class-wide knowledge of the Brake Defect in at the beginning of the Class period, as evidenced by (1) the July 2014 test report, (2) the July 2014 Class Vehicle collision report, (3) the September 2014 Class Vehicle collision report, (4) the November 2014 Class Vehicle near-collision report (5) the September 2014 Class Vehicle collision, and (6) its self-generated  service bulletin that identifies the Brake Defect and its cause and instructs GM dealership technicians how to diagnose and repair it.

56.    Despite its knowledge, GM took no action to alert Plaintiff or the Class Members of the Brake Defect in the Class Vehicles prior to or after their purchase. GM declined to provide notice of the Brake Defect through point of sale communications, OnStar alerts, direct

communications which identified Plaintiff and Class members by state vehicle registry databases, or through print or electronic media. Instead, GM omitted mention of and/or concealed the Brake Defect from unwitting consumers who unknowingly purchased the affected Class Vehicles.

57. GM's knowledge of the Brake Defect runs deeper than described above, however. Since the release of the Class Vehicles (the earliest of which was Spring 2013), Defendant GM has received numerous warranty returns, customer complaints, and National Highway Traffic Safety Administration "Vehicle Owner Questionnaires" ("NHTSA VOQs") relating to the defect (as described in more detail below.)

58. Ultimately, Defendant GM issued a series of service bulletins only to its dealers regarding the Brake Defect, including bulletins for the following Class Vehicles and year models: 2015-2016 Cadillac Escalade; 2014-2016 Chevrolet Silverado 1500; 2015-2016 Chevrolet Suburban; 2015-2016 Chevrolet Tahoe; 2014-2016 GMC Sierra 1500; and 2015-2016 Yukon. (*See* Exhibit J) As part of GM's overall strategy to engage in material omission and deception upon Plaintiff and the Class Members, these bulletins omit material information about the potential for curing the defects because the purported repairs do not fix the defect and the statements are designed to mislead dealers and technicians who repair Class Vehicles. For instance, GM's bulletins continue to downplay the severity and risk of the Brake Defect, categorizing a loss of braking ability as a "rare situation[]" when in fact General Motors is aware through its warranty rates and consumer complaints (including NHTSA VOQs) that manifestations of the Brake Defect are both much more prevalent *and* much more dangerous than other defects in its vehicles.

59.     GM knew the Class Vehicles are plagued by the Brake Defect before Plaintiff purchased her 2015 Chevrolet Tahoe, but GM concealed the Brake Defect from consumers like Plaintiff, who unknowingly purchased Class Vehicles with a hidden and dangerous defect.

60.     Defendant issued service bulletins to its dealers, but has failed to take any action at all to alert Plaintiff or the Class of the Brake Defect in the Class Vehicles, either prior to or after their purchase.

61.     As of February 10, 2016, GM had verified at least some 19 affected vehicle models where the "CUSTOMER WILL NEED INCREASED EFFORT TO DEPRESS THE BRAKE PEDAL. TECHNICIAN MAY FIND FLUID IN THE BRAKE BOOSTER AND/OR THE BOOSTER LINE. TECHNICIAN WILL NEED TO REPLACE VACUUM PUMP, BRAKE BOOSTER, MASTER CYLINDER, VACUUM PUMP BELT AND VACUUM LINE BETWEEN THE BOOSTER AND THE PUMP." (*See* Exhibit K) (emphasis in original.) The 19 affected vehicle models are the Class Vehicles GM continued to sell without disclosure of the Brake Defect to the Class Members even after this admission.

62.     Disturbingly, the number of customer complaints echoed what GM already knew about its defective brake system: the need for increased effort to depress brake pedal, high occurrences in stop and go traffic, high occurrences of failure at lower speeds, brake booster issue, replacement of brake booster, replacement of master cylinder, safety issue, etc. (*See* Exhibit L.)

63.     Further, Defendant GM knowingly sold thousands of Class Vehicles to unsuspecting Class Members to whom GM said nothing about the braking defect after its knowledge of the Brake Defect.

64.     In March of 2017, GM became aware that a Class Vehicle in Arkansas had been involved in an accident caused by a brake failure almost identical to the failure experienced by Plaintiff. In GM's investigation of that crash, GM confirmed that the collision was the result of a brake failure caused by a loss of vacuum in the brake booster. (*See* Exhibit M.) Still, Defendant provided no notification of the defect or any other warning to Plaintiff or Class Members.

65.     Similarly, GM was fully aware of another crash occurring in April of 2018 in California involving the same braking system in a GM vehicle, and wherein GM's dealership confirmed the crash was caused by the Brake Defect as described in GM's service bulletins to dealers. Still, GM failed to provide any notification of the defect or other warning to Plaintiff or the Class.

66.     On September 13, 2018, GM released a new version of the PIT5361 TSB, revision "D." *See* https://static.nhtsa.gov/odi/tsbs/2018/MC-10145479-9999.pdf. (*See* Exhibit N.) The newest version of the vacuum pump TSB supersedes earlier versions issued to dealerships, and extends the same diagnosis of Class Vehicles through model years 2017, 2018, and 2019 vehicles. This late-2018 version of the TSB still describes the same conditions of a hard brake pedal, increased effort to stop a vehicle, and a failed vacuum pump and brake booster. As evidenced by PIT5361 Revision D, all Class Vehicles share the same Brake Defect.

67.     NHTSA has now opened its own investigation of the defect. Investigation "PE 18-012" was opened on November 20, 2018 and confirms that the "Office of Defects Investigation (ODI) has received 111 reports of hard brake pedal effort accompanied by extended stopping distance in model years (MY) 2014 to 2016 General Motors (GM) light trucks based on the K2XX platform," all of which are Class Vehicles. *See* https://static.nhtsa.gov/odi/inv/2018/INOA-PE18012-2065.PDF. (*See* Exhibit O.) "These

conditions are attributed to deterioration of the engine-driven brake assist vacuum pump. Nine of these incidents included vehicles incurring damage as a result colliding with another vehicle or fixed object at low speeds." *Id.*

68.     On February 7, 2019, NHTSA requested documents from GM in support of its investigation to be produced by March 27, 2019, and noted that the ODI has received "487 reports of brake vacuum assist pump failures" in Class Vehicles. *See* https://static.nhtsa.gov/odi/inv/2018/INIM-PE18012-74378.pdf. (*See* Exhibit P.)

69.     Following a similar investigation by Transport Canada, GM recently **issued a recall** of over 300,000 2014 to 2017 model year F2XX platform trucks and SUVs sold in Canada as a result of the Brake Defect.

70.     In September 2019, nearly a year after Plaintiff initiated this action, GM issued its Recall to address the Brake Defect. (*See* Exhibit B). In Safety Recall 19V645000 GM stated:

> [GM] has decided that a defect which related to motor vehicle safety exists in [Class Vehicles]. In some circumstances these vehicles may have a condition in which the engine-mounted mechanical vacuum pump output may decrease overtime, decreasing the amount of vacuum/power brake assist.

The Recall applies to approximately 3.46 million U.S. vehicles, including all Class Vehicles identified in this action.

71.     In a letter to NHTSA regarding the Brake Defect, GM identified 20,333 warranty claims, 118 collisions, 19 confirmed injuries, and 78 incidents of property damage associated with the Brake Defect, as of March 2019. These numbers are substantially greater now.

72.     GM, on its own, initiated the Recall. GM, on its own, implemented the remedy. However, GM's Recall (1) failed to notify Class Members of the true nature and repair (*i.e.,* a

new vacuum pump) for the Brake Defect, and (2) failed to mitigate or eliminate the Brake Defect. (*See* Exhibit B).

73.     GM knowingly sold millions of vehicles with defectively designed brake vacuum assist pumps for years, never disclosed this fact to Class Members, and will continue, despite the Recall, to let Class Members experience the resulting vacuum pump failures.

74.     Plaintiff's vehicle has undergone repair work, yet remains defective.

75.     As evidence of the Recall's inadequacy, scores of Class Members who received the Recall repair have complained to NHTSA that they still experience the Brake Defect, and others complain the "repair" made braking response worse. Below is a sampling of the many complaints Class Members submitted to NHTSA. For example, the owner of a 2016 Chevrolet Silverado stated:

> TL* THE CONTACT OWNS A 2016 CHEVROLET SILVERADO 1500. THE CONTACT STATED THAT THE BRAKES SEIZED INTERMITTENTLY. ON SEPTEMBER 5, 2019, THE VEHICLE WAS TAKEN TO HIGH PLAINS MOTORS INC (331 FRONT ST, WOLF POINTE, MT 59201) FOR DIAGNOSTIC TESTING. THE CONTACT WAS INFORMED THAT NHTSA CAMPAIGN NUMBER: 19V645000 (SERVICE BRAKES) APPLIED TO THE FAILURE. THE SOFTWARE UPDATE WAS PERFORMED; HOWEVER, THE FAILURE WAS BECOMING WORSE. ON SEPTEMBER 9, 2019), THE VEHICLE WAS BROUGHT BACK TO THE SAME DEALER AND THE CONTACT THAT THE CONTACT WOULD BE RESPONSIBLE FOR THE REPAIRS SINCE THE RECALL REPAIRS WERE PERFORMED ALREADY. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 82,000.

76.     The owner of a 2014 Chevrolet Silverado stated:

> TL* THE CONTACT OWNS A 2014 CHEVROLET SILVERADO 1500. WHILE DRIVING APPROXIMATELY 5 MPH, THE BRAKE PEDAL BECAME HARD TO DEPRESS, THE CONTACT HAD TO APPLY EXCESSIVE PRESSURE TO STOP THE VEHICLE. THE CONTACT ALSO MENTIONED RECEIVING AN UNKNOWN TECHNICAL SERVICE BULLETIN (TSB) SIX MONTHS AGO IN REFERENCE TO THE BRAKES, WHICH TURNED INTO NHTSA CAMPAIGN NUMBER: 19V645000

(SERVICE BRAKES, HYDRAULIC). THE VEHICLE WAS NOT TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING. WHEN THE TSB WAS RECEIVED, THE CONTACT CALLED CLIFF ANSCHUETZ CHEVROLET (1074 US 23 N, ALPENA MI, 49707) AND WAS INFORMED THAT THE VEHICLE EXCEEDED THE MILEAGE TO BE REPAIRED PER THE RECALL. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 114,000.

77.    The owner of a 2016 GMC Yukon stated:

I HAD THE RECALL (N192268490) APPLIED TO MY YUKON ON 12 SEP. I ONLY EXPERIENCED THE PROBLEM DESCRIBED IN THE RECALL 2X PRIOR TO THE RECALL. SINCE THE RECALL I HAVE HAD MULTIPLE INCIDENTS MUCH WORSE THAN THAN THE ORIGINAL PROBLEM. TONIGHT THE BRAKES WERE SO BAD I OVER SHOT MY PARKING SPOT AND DROVE INTO SOME BUSHES. IF A HARD STRUCTURE WAS THERE I WOULD HAVE DAMAGED THE CAR. THIS PROBLEM IS REPEATABLE. NO WARNING LIGHTS COME ON BUT THE "GRADE BREAKING ON" LIGHT WILL COME ON. THE BREAK PEDAL WAS VERY SOFT AND SHUTTERED. I EMPHASIZE THIS IS NEW SINCE THE RECALL WAS IMPLEMENTED.

78.    The owner of a 2015 Chevrolet Suburban stated:

TL* THE CONTACT OWNS A 2015 CHEVROLET SUBURBAN 1500. WHILE DRIVING, THE CONTACT HAD TO APPLY EXCESSIVE PRESSURE TO THE BRAKE PEDAL TO STOP THE VEHICLE. THE VEHICLE WAS TAKEN TO BECK CHEVROLET (561 CENTRAL PARK AVENUE, YONKERS, NY 10704, (914) 965-2400) TO BE REPAIRED PER NHTSA CAMPAIGN NUMBER: 19V645000 (SERVICE BRAKES, HYDRAULIC). THE DEALER REPROGRAMMED THE BRAKE CONTROL MODULE; HOWEVER, THE REPAIR DID NOT CORRECT THE FAILURE. THE MANUFACTURER WAS CONTACTED AND STATED THAT THE REPAIR WOULD ONLY REPROGRAM THE MODULE AND THE VACUUM PUMP WOULD NOT BE REPLACED. AN INDEPENDENT MECHANIC ALSO STATED THAT THE BRAKE VACUUM PUMP NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 138,746.

79.    The owner of a 2015 GMCC Sierra stated:

TL* THE CONTACT OWNS A 2015 GMC SIERRA 1500. WHILE DRIVING AT LOW SPEEDS, THE BRAKE PEDAL WAS DEPRESSED, BUT THE VEHICLE FAILED TO STOP. THE CONTACT STATED THAT EXTRA

FORCE WAS NEEDED TO DEPRESS THE BRAKE PEDAL AND STOP THE VEHICLE. THE VEHICLE WAS TAKEN TO TUSTIN BUICK GMC (1 AUTO CENTER DR, TUSTIN, CA, (714) 460-9877) WHERE IT WAS REPAIRED PER NHTSA CAMPAIGN NUMBER: 19V645000 (SERVICE BRAKES, HYDRAULIC); HOWEVER, THE REMEDY FAILED TO REPAIR THE VEHICLE. THE CONTACT MENTIONED THAT THE FAILURE STILL OCCURRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 107,000.

80.     The owner of a 2015 Chevrolet Tahoe stated:

MY BRAKES FAILED IN HEAVY HIGHWAY TRAFFIC WHEN TRYING TO MERGE OVER. THE VEHICLE WAS STOPPED THEN COASTING AND BRAKES WOULD NOT WORK.  GOT TOWED TO DEALER FOR GM RECALL N192268490.  RECALL WAS PERFORMED.  BRAKES FAILED 45 MILES LATER WHEN SLOWLY BACKING INTO DRIVEWAY. THE FAULTY PROGRAM THAT HAS BEEN RECALLED IS KNOWN TO DAMAGE THE VACUUM PUMP YET CHEVROLET HAS ONLY RECALLED THE PROGRAM AND NOT THE VACUUM PUMP.  I FILED A CASE WITH CHEVROLET MONDAY 10/14/19 AND WAS TOLD I WOULD RECEIVE A CALL IN 1 TO 2 BUSINESS DAYS.  I HAVE NOT RECEIVED A CALL BACK.  I SPOKE WITH SOMEONE TODAY WHO SAID THE SENIOR SERVICE ADVISOR IS SCHEDULED TO CALL ME AT 9PM FRIDAY 9/18/19.  MY GRANDSON AND I WAITED OVER 3 HOURS FOR OUR ONSTAR TOW AND HE IS ABSOLUTELY DEVASTATED BY THE FEAR HE EXPERIENCED.  *TR

81.     The owner of a 2014 Chevrolet Silverado stated:

TL* THE CONTACT OWNS A 2014 CHEVROLET SILVERADO 1500. THE CONTACT RECEIVED A RECALL NOTIFICATION FOR NHTSA CAMPAIGN NUMBER: 19V645000 (SERVICE BRAKES, HYDRAULIC). THE CONTACT TOOK THE VEHICLE TO BONIFACE HIERS CHEVROLET (800 S HARBOR CITY BLVD, MELBOURNE, FL 32901, (321) 723-3611) WHERE THE VEHICLE WAS REPAIRED; HOWEVER, THE FAILURE RECURRED. THE CONTACT STATED THAT EACH TIME WHEN DRIVING, MAKING A TURN, AND DEPRESSING THE BRAKE PEDAL, THE VEHICLE STALLED AND THE STEERING WHEEL FAILED TO TURN. THE CONTACT PLACED THE GEAR INTO NEUTRAL TO RESTART THE ENGINE. THE VEHICLE WAS RESTARTED AND WAS ABLE TO DRIVE NORMALLY. THE KEY HAD TO BE USED MANUALLY TO START THE VEHICLE WHEN THE FAILURE OCCURRED AND AN UNKNOWN WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS NOT TAKEN TO A DEALER OR AN INDEPENDENT MECHANIC FOR

DIAGNOSTIC TESTING. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 99,000.

82.     The owner of a 2017 GMC Sierra stated:

MY 2017 GMC SIERRA DENALI HAD ALREADY BEEN THE SUBJECT OF THE RECALL RELATING TO THE BRAKE ISSUE. SHORTLY AFTER THEY PERFORMED THIS RECALL WORK THE BRAKES BEGAN FAILING AT LOW SPEED.  WHEN DRIVING BELOW 5 MPH, THE PEDAL WHICH SUDDENLY FALL AND THE ABS WOULD TRIGGER. DURING THIS TIME, THE CAR WOULD CONTINUE MOVING WITH THE ABS FULLY VIBRATING. THANKFULLY, MY TRAILER HITCH ABSORB THE REAR IMPACT AGAINST A WALL. THE PROBLEM CONTINUED. I THEN TOOK THE TRUCK IN FOR SERVICE AND THEY REPORTED THAT THERE HAS BEEN A SIGNIFICANT FAILURE RATE OF THE VACUUM ASSIST.  THE DEALER REPLACE THE VACUUM PUMP AND VACUUM LINES. I᠊M EXTREMELY CONCERNED THAT THIS WOULD HAPPEN TO SOMEONE ELSE NEAR AN INTERSECTION, NOT JUST SLOWLY BACKING INTO PARKING SPACES.  I HAVE CONTACTED GMC BY EMAIL BUT STILL HAVE RECEIVED NO RESPONSE OR ACKNOWLEDGMENT OF MY COMMUNICATIONS.

83.     The owner of a 2017 Chevrolet Silverado stated:

HAD RECALL PERFORMED TO ADDRESS HARD BREAKING AT SLOW SPEEDS.  NOW THE TRUCK IS HARDER TO STOP AT SLOW SPEEDS AND GM WILL NOT FIX THE PROBLEM. THEY KNOW IT'S THE VACUUM PUMP AND BOOSTER AND EXPECT ME TO PAY FOR IT.

84.     GM's Recall failed to remove the Brake Defect free of charge to Plaintiff and Class Members who received the Recall repair. Thus, Plaintiff and Class Members continue to be damaged by the ongoing devaluation of their vehicle and the out-of-pocket expenses paid to adequately repair the Brake Defect. Moreover, because the Class Vehicles remain defective and the Recall falsely conveys a belief that the purported fix will provide safe braking, Plaintiff and the Class face more than a sufficient likelihood that they will suffer future harm.

85.     Since 2014, Defendant GM knowingly sold thousands of Class Vehicles to unsuspecting Class Members to whom GM said nothing about the braking defect despite having

knowledge of the Brake Defect. Five years on, GM has not issued an actual fix or adequately warned Plaintiff and Class Members of the Brake Defect; rather GM continued to sell millions of Class Vehicles without disclosure of the danger.

**Consumers Have Extensively Reported the Safety Hazard to GM**

86.    The National Highway Traffic Safety Administration ("NHTSA") provides a system for motor vehicle owners to report complaints relating to safety defects that pose a risk of accidents in vehicles manufactured or imported in the United States, including safety defects relating to brake malfunctions. The safety defect complaints are entered into the NHTSA consumer complaint automated database, which is accessible to manufacturers and are routinely reviewed by GM soon after the submission of each complaint. NHTSA also provides these consumer complaints to the vehicle manufacturers directly, including GM. Given the vast majority of owners of Class Vehicles are not aware of NHTSA and/or its reporting system, complaints received by NHTSA form an extremely small minority of the overall number of complaints which have been made to GM directly and/or through its authorized dealerships, including through the form of warranty repairs.

87.    Numerous Class Members have filed complaints with the NHTSA relating to the Brake Defect.  NHTSA in turn provides these consumer complaints to the vehicle manufacturers directly, including GM.

88.    Since at least 2014, GM has received complaints of braking defects and safety concerns related to the loss of vacuum boost in the Class Vehicles through NHTSA, as well as through internet forums, GM's franchised dealerships, and directly by owners of Class Vehicles.

89.     Despite Defendant GM's wealth of knowledge relating to the Brake Defect in the Class Vehicle's defective braking system and its clear safety implications, GM has and continues to suppress and conceal this knowledge and has failed to disclose that its Class Vehicles' braking systems are defective and dangerous. Consumers continue to operate Class Vehicles and continue to experience dangerous failures of the defective braking system, and are at increased risk for crashes.

90.     Consumers have submitted individual NHTSA complaints regarding Class Vehicles consistent with a loss of brake boost as described in GM's TSBs. These consumer complaints filed with the NHTSA, and delivered to GM, often highlight the safety risk caused by the defect, including ***reports of collisions and near-misses***, as well as expressions of concern for drivers' families—without concern and resolution by GM. GM received and were aware of these consumer complaints.

91.     Federal law requires automakers like GM to be in close contact with NHTSA regarding potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, GM should (and does) monitor NHTSA databases for consumer complaints regarding their automobiles as part of their obligation to identify potential defects in their vehicles, such as the Brake Defect.

92.     From its monitoring of the NHTSA databases, GM knew or should have known of the many Brake Defect complaints lodged, such as those quoted below. However, GM failed to act on that knowledge by warning Class members. Below is a mere sampling of Class member complaints lodge with NHTSA regarding the Brake Defect.

93.     The following constitutes a sampling of complaints concerning consumers' experiences with the Class Vehicles on the internet, including, but not limited to, postings

appearing in on-line forums regarding the Brake Defect in the Class Vehicles:

94.     A consumer complaint dated 10/9/2014 and submitted to NHTSA states the following regarding a Class Vehicle:

**2014 Chevrolet Silverado 2500 – NHTSA ID No. 10652894**

THE ABS ENGAGES AT SLOW SPEEDS INCLUDING DRY CONDITIONS, LEADING TO TOTAL LOSS OF BRAKING AND INCREASED STOPPING DISTANCES. *TR.

(https://www.nhtsa.gov/vehicle/2014/CHEVROLET/SILVERADO%2525202500/PU%25252FC C/4WD%252520Later%252520Release) (last visited 2/22/2019).

95.     A consumer complaint dated 1/15/2015 and submitted to NHTSA states the following regarding a 2015 Chevrolet Tahoe:

**2015 Chevrolet Tahoe – NHTSA ID No. 10716274**

TL* THE CONTACT OWNS A 2015 CHEVROLET TAHOE. WHILE DRIVING AT 45 MPH, THE SERVICE BRAKE ASSIST WAS DISPLAYED ACROSS THE MESSAGE BOARD. IN ADDITION, THE CONTACT STATED THAT THE BRAKE PEDAL WAS DEPRESSED AND IT TOOK A GREATER AMOUNT OF TIME FOR THE VEHICLE TO COME TO A COMPLETE STOP. THE FAILURE RECURRED ON NUMEROUS OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 16,562. UPDATED 6/18/15*CN UPDATED 10/12/2017*CN.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/TAHOE/SUV/4WD) (last visited 2/22/2019).

96.     A consumer complaint dated 11/13/2015 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Cadillac Escalade ESV – NHTSA ID No. 10852756**

THE VEHICLE HAD VIRTUALLY NO BRAKES TO STOP IT AND 11,215 MILES. GENERAL MOTORS ALREADY HAD SERVICE WARNINGS OUT TO DEALERS DATED 7/17/2015, GM DOCUMENT ID #4242788. THEY SAY THEY REPLACED PADS AND ROTORS. AT 23,589 MILES THE VEHICLE NEEDED BRAKES AGAIN. SERVICE MANAGER TELLS US THAT THIS IS A KNOWN PROBLEM AT GENERAL MOTORS. THEY HAVE EVEN ISSUED A NEW WARNING FOR

2016 MODELS. I CONSIDER THE VEHICLE TO BE UNSAFE TO DRIVE IN THAT THE BRAKES CAN GO OUT WITHOUT ANY WARNING.

(https://www.nhtsa.gov/vehicle/2015/CADILLAC/ESCALADE%252520ESV/SUV/AWD) (last visited 2/22/2019)

97.     A consumer complaint dated 2/10/2016 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 GMC Yukon Denali XL 2500 – NHTSA ID No. 10919906**

TL* THE CONTACT OWNS A 2015 GMC YUKON. WHILE DRIVING VARIOUS SPEEDS, THE BRAKE PEDAL WAS APPLIED AND THE VEHICLE FAILED TO STOP. THE BRAKE PEDAL HAD TO BE PUMPED SEVERAL TIMES TO STOP THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER WERE IT WAS DIAGNOSED THAT THE BRAKE BOOSTER NEEDED TO BE ADJUSTED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE THE BRAKE FAILURE WAS DUPLICATED AND DIAGNOSED THAT THE BRAKE BOOSTERS NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 35,000.

(https://www.nhtsa.gov/vehicle/2015/GMC/YUKON%252520DENALI%252520XL%2525201500/SUV/4WD) (last visited 2/22/2019).

98.     A consumer complaint dated 7/4/2016 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Chevrolet Suburban 1500 – NHTSA ID No. 10904757**

TRAILER BRAKE ASSIST MALFUNCTION DURING TRIP WHILE DRIVING WITH TRAILER CONNECTED ON HIGHWAY NO PROBLEM AFTER ENDING TRIP AND DISCONNECTING TRAILER BRAKE ASSIST WARNING LIGHT APPEARED AND 1ST GLANCE BRAKES SEEMED FINE BUT FINAL PEDAL PRESSURE IS VERY STIFF ALMOST CAN'T STOP SUV.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/SUBURBAN%2525201500/SUV/RWD) (last visited 2/22/2019)

99.     A consumer complaint dated 8/2/2016 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Cadillac Escalade ESV – NHTSA ID No. 10896962**

BRAKES COMPLETELY FAILED. I PULLED INTO TRAIN PARKING SPOT AND THE CARS WOULD NOT STOP. I HAD TO KEEP PUMPING THE BRAKES AND EVENTUALLY IT JUST STOPPED. I TRIED IT GAIN AND THE BRAKES WERE HARD AND COULDN'T PUSH THEM DOWN. I AM SO LUCKY THAT I WAS NOT ON A HIGHWAY GOING FAST WITH MY KIDS IN THE CAR. CADILLAC SAID I NEEDED THE HYDRO BOOST REPLACED.

(https://www.nhtsa.gov/vehicle/2015/CADILLAC/ESCALADE%252520ESV/SUV/AWD) (last visited 2/22/2019)

100.    A consumer complaint dated 9/7/2016 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Chevrolet Suburban 1500 – NHTSA ID No. 10904757**

I AM WRITING ABOUT MY 2015 CHEVY SUBURBAN. I OWN A LIMOUSINE SERVICE AND USE THE SUBURBAN IN MY FLEET. YESTERDAY A DRIVER, WITH PASSENGERS, HAD A TOTAL FAILURE OF THE POWER BRAKING SYSTEM. IT IS AT A LOCAL REPAIR SHOP NOW, AND I AM BEING TOLD THE AIR PUMP HAD BROKEN APART, INSIDE, SNAPPED THE FAN BELT RESULTING IN NO VACUUM GETTING TO THE POWER BRAKE SYSTEM. MY DRIVER WAS BARELY ABLE TO STOP THE VEHICLE BEFORE REAR ENDING ANOTHER CAR ON THE HIGHWAY. THE VEHICLE HAS 54,000 MILES AND I AM BEING TOLD IS OUT OF THE BUMPER TO BUMPER WARRANTY. THERE ARE ALSO NO OPEN RECALLS. I AM REPORTING THIS ISSUE TO THE NHTSA AND THE MASSACHUSETTS ATTORNEY GENERAL'S OFFICE, AS I BELIEVE THIS IS AN IMMEDIATE DANGER TO THE GENERAL MOTORING PUBLIC. I JUST CONTACTED CHEVROLET BY PHONE AND EMAIL. THE REPRESENTATIVE ON THE PHONE SAID ALL SHE COULD TELL ME IS THAT IT'S OUT OF WARRANTY, THERE WERE NO RECALLS, AND I AM BASICALLY ON MY OWN TO REPAIR. I HOPE YOU ARE ABLE TO INVESTIGATE THIS SITUATION, IDENTIFY THE CAUSE OF THIS FAILURE, AND COME UP WITH A REMEDY FOR THE SAFETY OF EVERYONE.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/SUBURBAN%2525201500/SUV/RWD) (last visited 2/22/2019).

101.    A consumer complaint dated 10/14/2016 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Chevrolet Suburban 1500 – NHTSA ID No. 10995134**

BRAKES STOPPED WORKING.  FIRST TIME IT HAPPENED I THOUGHT IT WAS MY IMAGINATION AS I WAS IN A PARKING LOT GOING EXTREMELY SLOW. NEXT DAY IT HAPPENED WHEN BACKING OUT OF MY DRIVEWAY. HAD TO PRESS BRAKES EXTREMELY HARD AND IT ROLLED TO A STOP AS IT HIT CURB ON OTHER SIDE OF ROAD. TOOK IT TO DEALER AND THEY REPLACE THE VACUUM BOOSTER WHICH HAD FAILED AT APROX. 50,000 MILES. NOT COVERED UNDER WARRANTY. EVERY OTHER PART OF BRAKES BESIDES NORMAL WEAR AND TEAR IS COVERED. I WAS LUCKY IT HAPPENED IN MY DRIVEWAY AND NOT WHILE DRIVING AT HIGHER SPEEDS IN TRAFFIC. I HAVE ADDITIONAL COMPLAINTS ABOUT THIS VEHICHLE. THE CLIPS HOLDING DRIVERS SEAT HAD TO BE REPLACED AT 40,000 MILES BECAUSE SEAT WAS SLIDING FROM SIDE TO SIDE. THEY ARE ALL READY LOOSE AGAIN AT 60,000 MILES ALTHOUGH NOT AS BAD AS FIRST TIME. MY AC CONDENSER WENT OUT AT 62,000 MILES. IT HAS BEEN ON NATIONAL BACKORDER FOR 7 WEEKS AND I AM STILL WAITING. THE CAR SHAKES ON THE INTERSTATE AT APROX 70 -75 MILES PER HOUR. THE DEALERSHIP HAS BALANCED THE TIRES AND THIS HAS NOT FIXED PROBLEM. AFTER DRIVING ON INTERSTATE AT HIGH SPEEDS FOR EXTENDED PERIOD OF TIME, WHEN STOPPING THE CAR IDLES VERY ROUGH AND HAS EVEN CUT OFF. THE DEALERSHIP RAN A FUEL INDUCTION SERVICE. WILL SEE IF IT WORKS WHEN I GET IT BACK AFTER THEY REPLACE AC CONDENSER. THE CAR SHIFTS HORRIBLY, ESPECIALLY WHEN GOING SLOW. WAS TOLD THAT IS A PROBLEM WITH THE FUEL EFFICIENT SHIFTING AND THERE IS NO REPAIR...JUST TO MANUALLY SHIFT. ALSO, THE HOOD OF THE CAR HAS TINY RUST SPOTS COMING THROUGH THE PAINT ALL OVER IT.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/SUBURBAN%2525201500/SUV/RWD) (last visited 2/22/2019)

102.    A consumer complaint dated 11/28/16 and submitted to NHTSA states the following regarding a Class Vehicle:

**2015 Chevrolet Suburban 1500 – NHTSA ID No. 10928435**

I HAVE A 2015 CHEVY. SUBURBAN LT THE BRAKE PEDAL IS HARD TO PRESS AND THE CAR CONTINUE TO ROLL EVEN AFTER I APPLY THE BRAKE DESPITE THE ROTOR AND ALL THE PADS HAVE BEEN REPLACED...THIS IS VERY DANGEROUS.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/SUBURBAN%2525201500/SUV/RWD) (last visited 2/22/2019).

103.    A consumer complaint dated 7/13/2017 and submitted to NHTSA states the following regarding a 2015 GMC Sierra:

**2015 GMC Sierra 2500 – NHTSA ID No. 11005111**

TL* THE CONTACT OWNS A 2015 GMC SIERRA 2500. WHILE THE VEHICLE WAS BEING REVERSED WITH A TRAILER ATTACHED, THE BRAKE PEDAL WAS DEPRESSED, BUT FAILED TO OPERATE. THE CONTACT STATED THAT THE TRAILER CRASHED INTO THE AWNING OF THE RESIDENCE. THERE WERE NO INJURIES. UPON INSPECTING THE VEHICLE, THE CONTACT NOTICED EVIDENCE OF BRAKE FLUID LEAKING FROM THE BRAKE BOOSTER, WHICH ALLOWED BRAKE FLUID TO ENTER THE CABIN OF THE VEHICLE. THE VEHICLE WAS TAKEN TO PERFORMANCE CHEVROLET (LOCATED AT 3222 BEVERLY PIKE, ELKINS, WV 26241, TEL: (304) 591-1077) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE BRAKE BOOSTER WAS LEAKING AND WAS 1,000 MILES OUT OF WARRANTY. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT CONTACTED OR NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 37,023.

(https://www.nhtsa.gov/vehicle/2015/GMC/SIERRA%2525202500/PU%25252FCC/4WD#complaints) (last visited 10/31/18).

104.    A consumer report dated 10/15/ 2018 and submitted to NHTSA states the following regarding a 2015 Chevrolet Tahoe:

**2015 Chevrolet Tahoe – NHTSA ID No. 11140321**

TL* THE CONTACT OWNS A 2015 CHEVROLET TAHOE. WHILE DRIVING 5 MPH, THE BRAKE PEDAL WAS APPLIED, BUT WAS DIFFICULT TO DEPRESS. THE VEHICLE FAILED TO STOP. THE CONTACT HAD TO PUMP THE BRAKE PEDAL IN ORDER FOR THE VEHICLE TO STOP. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER (ED BOZARTH CHEVROLET, 8351 PARKWAY DR, LONE TREE, CO 80124, (720) 279-0119). THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 35,000.

(https://www.nhtsa.gov/vehicle/2015/CHEVROLET/TAHOE/SUV/4WD#complaints)        (last visited 10/31/18).

105.    A consumer report dated 7/28/2018 states the following regarding a 2014 GMC Sierra:

On July 16th 2018, I dropped my truck off at the dealership to be serviced for the air condenser, due to the AC no longer cooling properly. While being serviced, the power lock actuator was replaced on my rear driver side door because the automatic lock was no longer operable.

While my truck was in the shop, I received a phone call about my rear brakes needing to be serviced due to the pads being low. Prior to being serviced, my brakes were fine. I didn't have any issues with them at all. I recently had the oil changed at another dealership, and they never mentioned the brakes needing attention.

After picking up my truck on July 19th, I began noticing issues when attempting to brake. Slowing down wasn't an issue until going downhill. The brakes began to make a grinding noise and pulsing while at a slow speed. I had all of the brakes replaced due to this issue, but after replacing them all the brakes were fine. This did not fix the problem.

At this point, this is a safety hazard. My wife was leaving the house one day and while descending down the driveway, she couldn't stop. She almost hit a car, not to any fault of her own but due to the faulty brake system. Now it seems like I'll have to take it back to the shop after getting it serviced 8 days ago. The extended warranty is very much needed, but unfortunately my time is being wasted on issue after issue.

([https://www.carcomplaints.com/GMC/Sierra_1500/2014/brakes/brakes_failed.shtml](https://www.carcomplaints.com/GMC/Sierra_1500/2014/brakes/brakes_failed.shtml))
(last visited 10/31/18).

106.    A consumer report dated 10/15/2018 states the following regarding a 2015 GMC

Yukon:

Brake vacuum pump failing on 2015 Yukon/Silverado becoming very common. The new replacement vacuum pump does not look anything like the old defective one. GMC knows there is a problem and is making a different vacuum pump to replace the defective ones but will not replace at their expense.

([https://www.carcomplaints.com/GMC/Yukon/2015/brakes/brakes_failed.shtml](https://www.carcomplaints.com/GMC/Yukon/2015/brakes/brakes_failed.shtml))    (last    visited 10/31/18).

107.    A consumer report dated 7/8/2018 states the following regarding a 2014

Chevrolet Silverado:

Twice in the last three days the brakes on my truck have failed at low speed while parking. After only 3-4 times of lightly pumping the brakes they completely go hard and the peddle will not move. No matter what amount of pressure is applied the truck will not stop. Seems to happen when in reverse the most. Brake pads, fluids, etc are all perfect. Problem doesn't happen at all when driving at speed. Only occurred at low speed. Dealership says that's probably the vacuum failing... have found that there are hundreds

of complains describing the exact same problem on trucks with less than 50,000 miles on average.

(https://www.carcomplaints.com/Chevrolet/Silverado_1500/2014/brakes/service_brakes.shtml) (last visited 10/31/18).

108. A consumer report dated 6/27/2018 states the following regarding a 2015

Chevrolet Suburban:

> There are numerous reports of 2015 Chevrolet Suburban's suffering brake lose. The reports are vacuum pump failure which leads to a stiff or unmovable brake pedal while driving. The brakes are completely inoperable and can obviously lead to a collision. While my vehicle has not experienced this yet, we have a friend who suffered the brake failure described above. In doing some research online, we've discovered this to be a common problem. The complainants describe the problem of a stiff or unmovable brake pedal and total brake lose. Our friend has a 2015 Suburban and was nearly involved in a collision on 6/27/2018. Our research has also shown there are numerous complaints regarding this issue and that GM is aware of the problem. If true, we believe, in the interest of safety, GM should recall these vehicles and rectify the problem immediately.

(https://www.carcomplaints.com/Chevrolet/Suburban/2015/brakes/service_brakes.shtml)      (last visited 10/31/18).

109. A consumer report dated 6/9/2018 states the following regarding a 2015

Chevrolet Tahoe:

> Inadequate braking for the vehicle. My wife was traveling down a city street and could not stop the vehicle causing her to pull over for fear of her safety. The vehicle has 75000 miles on it and is out of the 60,000 mile bumper to bumper warranty. My wife all most wrecked because the brake pedal was hard and caused the vehicle to become difficult to stop. Chevy would not pay for diagnostic fee even though this is a known issue. Very unsafe to operate. Should be a full-blown recall to go along with the technician service bulletin that was issued regarding the vacuum pump booster and master cylinder and other braking system components. $1400 repair estimate if the dealership follows the tsb recommendation on repair. Chevy does not care about customer safety. Unacceptable!!!

(https://www.carcomplaints.com/Chevrolet/Tahoe/2015/brakes/service_brakes.shtml)      (last visited 10/31/18).

110. As evidenced by the multitude of complaints submitted to NHTSA and elsewhere,

Defendant has been aware of the Brake Defect since at least 2014, that it poses a serious safety

risk to Class Members and the public at large, and the associated costly repair charges to the Class Vehicles.

111. These complaints illustrate the need for increased effort to depress the brake pedal, high occurrences in stop and go traffic, high occurrences of failure at lower speeds, brake booster issues, replacements of brake boosters and master cylinders and the existence of a serious safety issue.

112. Nevertheless, GM knowingly, intentionally, and/or recklessly continued and continues to manufacture and sell the Class Vehicles while omitting that their braking systems are defective and dangerous and without remedying the Brake Defect.

**GM Could Have Disclosed the Brake Defect**

113. GM knew of the Brake Defect but did not disclose it to purchasers/lessees either before or after their transaction. Had GM disclosed the Brake Defect, Plaintiff and Class members could have incorporated the information in their purchase/lease decision.

114. GM could have, and should have, disclosed the Brake Defect in its various communications at the point of sale. For example:

    a. GM could have disclosed the Brake Defect on the Monroney Sticker (*i.e.,* the window sticker), which federal law requires be attached to each vehicle sold (*See* 15 U.S.C. §§ 1231-1233);

    b. GM could have disclosed the Brake Defect on a visible, attention-grabbing, and permanent warning on the vehicle that is visible and conspicuous to the consumer, such as on the dashboard;

    c. GM could have disclosed the Brake Defect in the owner's manual;

     d.     GM could have disclosed the Brake Defect in its various sales brochures and packets related to the Class Vehicles;

     e.     GM could have disclosed the Brake Defect in required, written disclosures at the point of sale to purchasers at its franchised dealers;

     f.     GM educates its sales representatives in various ways about the products (Class Vehicles) they sell. GM could have informed the sales representatives to disclose the Brake Defect before the Class member purchased her Class Vehicle.

115.     GM also had other means to notify those Class members who purchased a Class Vehicle. For example:

     a.     GM could have adequately disclosed the Brake Defect in the Recall;

     b.     GM could have disclosed the Brake Defect via a press release on its website, the same way it announced the Recall;

     c.     GM could have disclosed the Brake Defect via OnStar alerts or notifications, which is a standard feature in Class Vehicles;

     d.     GM could have disclosed the Brake Defect when Class members presented their vehicles to certified GM dealerships for repairs or other service;

     e.     GM could have disclosed the Brake Defect by direct communication to all Class Members via state vehicle registration systems, the same way it contacted Class members of the Recall, and the same way it contacts other members of various classes when class actions are resolved.

     f.     GM could have disclosed the Brake Defect through print, radio and electronic media, the same way it advertised the purported safety and

> reliability of Class Vehicles in its daily efforts to attract purchasers/lessees.

116. Despite its superior knowledge and many ways to disclose the Brake Defect, GM has not, at any point, disclosed the true nature of the Brake Defect to Plaintiff or other members of the Class to this day.

117. The language and delivery methods available to GM are not novel. GM's own service bulletins exemplify the type of language that could and should have been provided to Plaintiff and the Class notifying them of the existence of the defect, how the defect presents itself to the consumer, the cause of the defect, and GM's purported repairs to fix the defect. Such detailed information is the very type of information that Plaintiff contends amounts to a material omission and should have been disclosed to Plaintiff and the Class members prior to or at the time of the initial sale of each vehicle. Accordingly, the author (GM) and contents of the service bulletin attached as Exhibit N evidence the who, what, when, where, and why of GM's omissions and how such statements could have been provided to each Class Member prior to their purchase of a Class Vehicle.

118. Furthermore, the summary of the Brake Defect contained in the NHTSA ODI RESUME at Exhibit Q was derived from information provided by GM or otherwise equally available to GM; this summary further evidences the kind of disclosure that should have been made to Plaintiff and consumers prior to purchase:

> The brake assist vacuum pump is driven by an accessory belt on the engine and serves as the source of power brake vacuum in the subject vehicles. Over time, the pump's capacity to generate vacuum may deteriorate. The subject vehicles receive supplemental hydraulic brake assist from the ABS system, albeit at lower levels than the vacuum powered primary system. If the brake assist vacuum pump fails to operate as intended, the amount of brake power assist supplied to the driver can be significantly reduced, extending the subject vehicle stopping distance.

119. Through its agents—certified GM dealerships subject to its Dealer Agreements, such as Plaintiff's dealership—General Motors had a duty to make such a disclosure and inform Plaintiff and the Class about the safety hazard posed by the Brake Defect. General Motors could deliver this information in a number of ways prior to a consumer's purchase, such as a notice included with the sale or lease paperwork, or on the vehicle's window sticker where other important and legally-mandated disclosures about Class Vehicles are made. Instead, General Motors continues its omission of an adequate disclosure in *all* of its communications with consumers at the point of sale.

120. General Motors had a duty to make such a disclosure and inform Plaintiff and the Class about the safety hazard posed by the Brake Defect, whether through its agents (certified GM dealerships subject to its Dealer Agreements, such as Plaintiff's dealership), through various communications available at the point of sale, or other means available.

**121.** Because GM did not warn Plaintiff or Class members of the Brake Defect described herein Class Members purchased/leased their Class Vehicle unaware of the Brake Defect. Had they known of the Brake Defect, they would not have purchased their Class Vehicles, or certainly would have paid less for them.

**122.** In the alternative to providing the permanent warnings of the hazard posed by the Brake Defect described herein, GM should have refrained from selling/leasing the Class Vehicles with the Brake Defect.

123. To this day, Defendant continues to omit material information concerning the Brake Defect in the Class Vehicles from users, consumers, and the public. As a result, consumers continue to operate Class Vehicles and continue to experience dangerous failures of the defective braking system, and are at obvious increased risk for crashes and bodily harm.

124.    In light of Defendant's knowledge of the problems associated with, and the serious nature of the Brake Defect at issue, Defendant knew, or should have known, that it was selling the Class Vehicles to consumers with a value that was substantially diminished.

125.    Plaintiff and Class reasonably expected that the Class Vehicles would not contain a Brake Defect that would substantially impair the Class Vehicles' performance and use. Plaintiff and Class Members also reasonably expected that the Class Vehicles would not require extensive and/or expensive repairs as a result of the Brake Defect (or Defects), which Defects were known to GM at the time of sale.

126.    If Defendant had not omitted material information regarding the defective nature of the Class Vehicles, Plaintiff and other members of the Class would not have purchased the Class Vehicles at prices and on the terms offered.

## FRAUDULENT OMISSION ALLEGATIONS

**127.**    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at GM responsible for disseminating unfair, deceptive, and misleading marketing materials regarding the Class Vehicles. GM necessarily is in possession of all of this information. Plaintiff's claims arise out of GM's fraudulent omission of the Brake Defect.

**128.**    Plaintiff alleges that at all relevant times, including specifically at the time she and Class members purchased their Class Vehicle, GM knew, should have known, or was reckless in not knowing of the Brake Defect; GM had a duty disclose information material to a consumer, such as the Brake Defect, based upon its exclusive knowledge; but GM never disclosed the Brake Defect to Plaintiff, Class members, or the general public other than its halfhearted, inadequate recall of some Class Vehicles.

129.    Plaintiff makes the following allegations as specific as reasonably possible:

   a.    **Who:** *GM* actively omitted the Brake Defect from Plaintiff and Class members at the point of sale or thereafter.  GM's agents should have and could have disclosed the Brake Defect.  As to Plaintiff herself, GM and its certified dealer Alan Browne Chevrolet should have and could have disclosed the Brake Defect at the time she purchased her vehicle or thereafter.

   b.    **What:** GM knew, should have known, or was reckless in not knowing, that the Class Vehicles contain the Brake Defect.  Despite its knowledge, GM *failed to disclosed the Brake Defect* at the point of sale or thereafter.

   c.    **When:** GM's omissions began *from the start of the Class period and continue to this day*.  GM has never taken any action to inform Plaintiff, Class members, or the general public of the true nature of the Brake Defect.  As to Plaintiff herself, GM's has continually omitted the true nature of the Brake Defect for the entirety of the relevant time period, including at the point of sale on September 21, 2015.

   d.    **Where:** GM's omissions occurred *in every commun*ication it had with Plaintiff, Class members, and the general public.  In fact, GM's omissions continue to this day. As to Plaintiff herself, GM's omissions occurred in every communication it had with her about her Vehicle, including all communications that happened before, at the point of and after her purchase of the Vehicle at Alan Browne Chevrolet in September of 2015.

e.    **How:** GM *omitted and failed to disclose* the Brake Defect to Plaintiff, Class members, or the general public at the point of sale or thereafter via a press release, permanent warnings affixed to the vehicles, direct mail campaign, OnStar warning protocol, or otherwise.  As to Plaintiff herself, GM omitted and failed to disclose the Brake Defect on a Monroney Sticker or any other communication or point of sale document.

f.    **Why:** Due to corporate greed, GM omitted the Brake Defect in order to deceive Plaintiff, Class members, and the general public into buying Class Vehicles for a premium value to *maximize its profits*.  Furthering its goal to maximize profits, GM failed to notify Class members of the true nature of the Brake Defect to avoid an avalanche of warranty claims and expenses related to replacing every vacuum pump in every Class Vehicle. As to Plaintiff herself, GM omitted the Brake Defect in order to deceive her into purchasing a vehicle at a premium price, thereby maximizing GM's profits, and avoiding the cost of replacing the defective vacuum pump in her vehicle.

g.    **Causation:** Because GM never disclosed the Brake Defect, despite its extensive knowledge, Plaintiff and Class members purchased/leased a vehicle that did not or will not safely perform and as such is worth less than one that does safely perform. Had GM disclosed the Brake Defect, *Plaintiff and other Class members would not have purchased/leased their Class Vehicle, or certainly would have paid less for it.*  GM's omission

further *devalues* Plaintiff and Class members' Class Vehicle and causes them to pay *out-of-pocket* for a true and complete fix for the Brake Defect.

## TOLLING OF STATUTES OF LIMITATIONS

130.  Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, that the Brake Defect is based on a poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.

131.  As a result of this active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

132.  Plaintiff brings this action as a class action pursuant to Rule 23(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All consumers in Illinois who purchased or leased a 2015 or newer Cadillac Escalade, 2014 or newer Chevrolet Silverado, 2015 or newer Chevrolet Suburban, 2015 or newer Chevrolet Tahoe, 2014 or newer GMC Sierra, or 2015 or newer GMC Yukon/Yukon XL.

(Collectively referred to herein as the "Class")

133.  <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.  The Class is comprised of thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendant's records.

134.  <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  The questions of law and fact common to the Class predominate over questions affecting only

individual Class Members, and include, but are not limited to, the following:

(a)  Whether the Class Vehicles have the Brake Defect;

(b)  Whether the Defendant has engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

(c)  Whether Defendant engage in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

(d)  Whether Defendant knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Class;

(e)  Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

(f)  Whether Defendant breached its duties to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

(g)  Whether Defendant breached its duties to Plaintiff and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

(h)  Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

(i)  Whether Defendant's Class Vehicles fail to perform as advertised or warranted;

(j)  Whether Plaintiff and the Class are entitled to compensatory and/or actual damages, including but not limited to the cost to repair the Class Vehicles, remove and replace the Defective Brakes, as well as damages from the diminution of value of Class Members' Class Vehicles;

(k)  Whether Defendant concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the Brake Defect in the Class Vehicles;

(l)  Whether, as a result of Defendant's conduct, Plaintiff and the Class have suffered damages and, if so, the appropriate amount thereof; and

(m) Whether Plaintiff and the Class are entitled to treble damages and/or punitive damages or other relief.

135.    <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff's claims are typical of those of the Class in that Plaintiff, like all Class Members, purchased a Class Vehicle and is subject to losses resulting from the failure of the Class Vehicles.  Plaintiff has experienced problems with her Class Vehicle consistent with those experienced by Class Members.  Plaintiff has suffered damages in the form of costs to replace and repair the Class Vehicles, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class Members.

136.    <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.    Plaintiff is an adequate representative of the Class because she fits within the class definition and her interests do not conflict with the interests of the Members of the Class she seeks to represent.  Plaintiff is represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

137.    <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class have suffered irreparable harm as a result of Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class Members' claims, no Class Members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendant continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and

Defendant would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

138. Plaintiff and the Class do not anticipate any difficulty in the management of this litigation.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.*)
## (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

139. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

140. At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA"). Section 2 of the ICFA provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).

141. Section 2 of the ICFA, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in

the conduct of any trade or commerce…"

142.     Plaintiff Quitno and the Class are "consumers" within the meaning of the various state statutes prohibiting unfair and deceptive acts and practices. Plaintiff and members of the Class purchased the goods and/or services for personal or household purposes.

143.     Defendant's conduct alleged herein constitutes "trade" or "commerce" within the meaning of the various state statutes prohibiting unfair and deceptive acts and practices.

144.     Defendant has designed, manufactured, marketed, sold, and placed into the stream of commerce the Class Vehicles sold across Illinois.

145.     Defendant knew and has known that the Class Vehicles, all of which contain the Defective Brakes, are hazardous and dangerous to consumers.  Defendant knew and has known that if it disclosed true facts concerning the dangers associated with the Brake Defect, consumers would not purchase the Class Vehicles.

146.     At the time of sale, Defendant knowingly and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose the existence of the Brake Defect and the dangers associated with the Brake Defect to Plaintiff and Class Members. Plaintiff incorporates the previous paragraphs as particularized evidence of the pattern of misrepresentation by omission perpetrated by Defendant against Plaintiff and the Class.

147.     Thereafter, Defendant failed to disclose the existence of the Brake Defect to Plaintiff and the Class Members, either through warnings or notices, and/or actively concealed the Brake Defect from them, even though Defendant knew of the Brake Defect at the time of manufacture, since at least 2014. Based on these and other internal studies and investigations, Defendant knew of the Brake Defect and its associated dangers with certainty.

148.     None of the information provided by Defendant to consumers discloses the

hazard.

149.    Through omission and concealment, Defendant has (a) misrepresented that the Class Vehicles have characteristics and benefits that they do not have; (b) misrepresented that the Class Vehicles are of a particular standard, quality, or grade when they are of another; (c) advertised the Class Vehicles with intent not to sell them as advertised; (d) engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding; and/or (e) failed to disclose the material fact that the Class Vehicles have a Brake Defect which constitutes a serious safety hazard and requires costly repairs.

150.    Defendant has omitted and concealed the serious safety hazard posed by the design of Class Vehicles' braking system, which as a result of known design defects causes the Class Vehicles to suffer from the Brake Defect by losing brake boost without warning, severely and suddenly compromising both pedal feedback (controllability) and actual stopping distances.

151.    Defendant had a duty to disclose this material safety hazard because reasonable consumers expect braking systems to perform their only intended and reasonably expected function and purpose of slowing their vehicles with consistent brake pedal feedback and consistently safe stopping distances.  Choosing to disregard this duty, Defendant altogether failed to disclose this Brake Defect and its associated safety hazards to consumers including Class Members. In failing to adequately disclose this critical safety hazard, known to Defendant but not to reasonable consumers like Plaintiff and Class Members, Defendant has violated Section 2 of the ICFA.

152.    Notwithstanding its knowledge of the Brake Defect, Defendant forced Plaintiff and Class Members to expend money at its dealerships to diagnose and ineffectively repair Class Vehicles, despite Defendant's prior knowledge of the Brake Defect at the time of purchase.

153.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the Class Vehicles would not perform as intended, represented, and warranted and that the above described Brake Defect would cause purchasers to incur significant out-of-pocket costs and expenses.

154.     Were it not for Defendant's wrongful conduct, reasonable consumers including Plaintiff and the Class would not have purchased Class Vehicles. Instead, they would have purchased safe and reliable vehicles with braking systems that are fit and safe for their only intended purpose.

155.     In light of the defectively designed braking system common to each Class Vehicle, Defendant knew and has known of the hazard and dangerous condition caused by consumers' use of and reliance upon the Class Vehicles. Defendant's conduct in this regard is unfair because knew and has known that if it disclosed the true facts about the danger posed by their braking systems, consumers would not purchase Class Vehicles, and Defendant would not be able to market and sell them. Defendant continues to produce and sell Class Vehicles despite their known defective condition that risks the lives of consumers and the public at large. Defendant has and continues to recklessly and intentionally ignore public hazard caused by its omission and concealment of the hazard posed by the defective braking systems present in Class Vehicles.

156.     Defendant's conduct is unfair because in marketing and selling the Class Vehicles, and in otherwise causing the Class Vehicles to be placed into the stream of commerce for use by consumers in the United States with defective braking systems, and in continuing to

conceal this critical safety information regarding the dangers associated with the use of the Class Vehicles, Defendant made available for consumer use a dangerous and patently unsafe product which is not safely useable for its intended purpose. Defendant was and remains obligated to disclose the hazard associated with the Class Vehicles because of the public's reasonable expectation that the Class Vehicles would not under normal and expected use suddenly and unexpectedly lose effective braking power. In failing to disclose this critical safety issue which was known and readily apparent to Defendant but not to reasonable consumers, including Plaintiff and the Class, Defendant engaged in unfair and fraudulent conduct.

157.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; (3) cause substantial injury to consumers far in excess of any conceivable benefit; and (4) are injuries of a nature that they could not have been reasonably avoided by consumers. The alleged consumer injury is substantial, creating an unreasonable risk of catastrophic physical injury or death to any persons coming into contact with Class Vehicles. There is no countervailing benefit to having or continuing to conduct itself in the wrongful manner averred to herein.

158.    Defendant's acts and omissions are deceptive in that Defendant has, through knowing, intentional, material omissions, concealed the true defective nature of the Class Vehicles.  In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

159.    The following acts and practices of Defendant constitute unfair and deceptive practices:

a.      The sale or lease of Class Vehicles with knowledge of the Brake Defect

therein;

b. The manufacture and sale of Class Vehicles without a permanent, visible disclosure of the Brake Defect as described herein;

c. Failing to require that the sale, lease and resale of both new and used Class Vehicles at its certified dealerships be accompanied with a written notice of the Brake Defect at the point of sale, or other means of communication;

d.  Refusing to perform an adequate notice campaign of the safety hazard to all new and used purchasers and lessees of Class Vehicles despite its awareness of the Brake Defect; and

e. Distributing inadequate disclosures and "recall" notices to Plaintiff and Class Members that intentionally minimize and obscure the known safety hazard posed by the Brake Defect.

160. Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries. But for Defendant's deception, Plaintiff and the Class would not have bought or leased the defective Class Vehicles, or would have paid less for them.

161. The members of the Class have suffered injury in fact and lost money as a direct result of Defendant's wrongful conduct. Each has expended money to purchase a Class Vehicle, and would not have done so had they been aware of the material safety omission alleged in this Complaint. Each will need to expend money to repair or replace their Class Vehicle with safe braking systems adequately designed to perform their only intended and expected function of consistently and safely slowing their vehicle.

162.    Defendant intended that Plaintiff Quitno and the Class would rely on the company's misrepresentations, acts, concealments and omissions, in an effort to maximize its sale of the Class Vehicles.

163.    Plaintiff Quitno and the Class did in fact justifiably rely on Defendant's omissions to their detriment by purchasing the Class Vehicles.  Plaintiff Quitno and the Class expended money to purchase or lease a Class Vehicles, but would not have done so had they known of the material safety omissions alleged herein.  Were it not for Defendant's wrongful conduct, reasonable consumers including Plaintiff and the Class would not have purchased the Class Vehicles.  Rather, they would have purchased safe and reliable vehicles with braking systems fit for their safe and only intended purpose.  Further, to the extent applicable, reliance can be presumed under the circumstances.

164.    As a direct and proximate result of the foregoing, Plaintiff Quitno and the Class have been damaged in an amount to be determined at trial, including compensatory damages, the cost to repair, remove, and/or replace the Defective Brakes in the Class Vehicles, the diminution of value of Class Members' Class Vehicles, other miscellaneous incidental and consequential damages.

165.    Notwithstanding the multitude of complaints concerning the Brake Defect made by consumers to NHTSA, to various complaint boards, and to GM directly, which put Defendant on notice of the dangers associated with the Class Vehicles, Defendant has omitted the existence of the Brake Defect and instead continued to advertise, market and sell the Class Vehicles without adequate warnings and disclosures.  In so doing, Defendant has ignored and continues to recklessly and intentionally ignore the safety hazards caused by the Brake Defect present in the Class Vehicles, prioritizing its own profits over the safety and well-being of consumers who

bought or leased the Class Vehicles.

166.     The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

167.     The conduct described through this Complaint offends public policy, causes substantial injury to consumers, and constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade.

168.     In addition to actual damages, Plaintiff Quitno and the Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to the various state statutes prohibiting unfair and deceptive acts and practices.

169.     Plaintiff Quitno and the Class seek damages, together with appropriate punitive damages, attorneys' fees, and costs of suit.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(ALLEGED IN THE ABSENCE OF A CONTRACT)**
**(ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)**

170.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

171.     Based on the facts alleged herein, Defendant's New Vehicle Limited Warranty is unconscionable and unenforceable.

172.     A party is unjustly enriched when it retains a benefit to the detriment of another party against fundamental principles of justice, equity, and good conscience.

173.     Defendant sold Class Vehicles to Plaintiff and the Class knowing that they believed that the Class Vehicles were safe, with a functional brake system.

174.    Defendant has altogether failed to disclose to Plaintiff and the Class that the Class Vehicles all contain a Brake Defect which prevents the Class Vehicles from slowing down with consistent brake pedal feedback and at consistently safe stopping distances the Class Vehicles, thereby rendering the Class Vehicles hazardous and dangerous to consumers

175.    Defendant engaged in this misconduct in order to increase the sales of its products.

176.    Defendant has reaped millions of dollars in profits as a result of its collection of money from consumers based on its failure to disclose material information concerning the safety of the Class Vehicles, notwithstanding its knowledge of the Brake Defect.  That Defendant amassed such earnings, and retains such benefit to the detriment of Plaintiff and the Class, and violates the fundamental principles of justice, equity, and good conscience.

177.    Defendant has been and continues to be unjustly enriched through its above-described conduct.

178.    Defendant should be required to disgorge the monies it has unjustly obtained to the detriment of Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### NEGLIGENT UNDERTAKING/RECALL
### (ASSERTED ON BEHALF OF PLAINTIFF AND THE CLASS)

179.    Plaintiff repeats, realleges, and incorporates by reference each of the foregoing and succeeding paragraphs of this Complaint as if fully set forth herein.

180.    Prior to the events made the basis of this action, GM designed, engineered, manufactured, marketed, and placed the Class Vehicles in the stream of commerce.

181.    In September 2019, GM initiated a voluntary recall of certain Class Vehicles. GM's recall was voluntary and not initiated by NHTSA.

182.    GM owed a duty to use reasonable care to Plaintiff and Class members based on its undertaking of the Recall.

183.    As described above, GM breached its duty by conducting the Recall negligently and/or wantonly by, among other things, failing to disclose the truth about the Brake Defect to Plaintiff and by implementing a remedy that falls short of timely and adequately repairing the Brake Defect. GM's failure to do so continues to expose Plaintiff and the Class to the risk of injury and death.

184.    For the reasons set for the above, GM knew, or should have known through the exercise of ordinary care, the Recall was not being performed in a reasonable manner.

185.    As a direct and proximate result, Plaintiff and the other Class members have been and continue to be damaged in an amount to be determine at trial.

WHEREFORE Plaintiff and the Class seek full compensatory damages allowable by law, attorney's fees, costs, appropriate equitable relief including injunctive relief, a declaratory judgment that Defendant's conduct is unlawful, a court order enjoining Defendant's wrongful acts and practices, and any other relief to which Plaintiff and the Class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiff's counsel to represent the Class and Plaintiff as representatives of the Class;

b.    All recoverable compensatory and other damages sustained by Plaintiff and the Class;

c.      Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

d.      An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from continuing to conceal material information about the Brake Defect of the Class Vehicles; and (3) requiring Defendant to refund to Plaintiff and all members of the Class the funds paid to Defendant for the Brake Defective Class Vehicles, and/or repairs resulting from the Brake Defect;

e.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

f.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  July 27, 2020                                         Respectfully submitted,

                                                            */s/ Michael J. Flannery*
                                                            Michael J. Flannery
                                                            CUNEO, GILBERT & LADUCA, LLP
                                                            500 North Broadway
                                                            Suite 1450
                                                            St. Louis, Missouri 63105
                                                            Telephone: (202) 789-3960
                                                            Fax: (202) 789-1813
                                                            Email: mflannery@cuneolaw.com

                                                            Ryan F. Stephan (admitted *Pro Hac Vice*)
                                                            Andrew C. Ficzko (admitted *Pro Hac Vice*)
                                                            STEPHAN ZOURAS LLP
                                                            100 N Riverside Plaza, Suite 2150
                                                            Chicago, IL 60606
                                                            Telephone: (312) 233-1550
                                                            Fax: (312) 233-1560
                                                            rstephan@stephanzouras.com
                                                            aficzko@stephanzouras.com

Adam W. Pittman (admitted *pro hac vice*)
F. Jerome Tapley (admitted *pro hac vice*)
Cory Watson (admitted *pro hac vice*)
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, Alabama 35205
Telephone: (205) 328-2200
Fax: (205) 324-7896
apittman@CoryWatson.com
jtapley@CoryWatson.com
rlutz@CoryWatson.com

Paul R. Kiesel (admitted *pro hac vice*)
Jeffrey A. Koncius (admitted *pro hac vice*)
Melanie Meneses Palmer (admitted *pro hac vice*)
Nicholas L. Brancolini (admitted *pro hac vice*)
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Telephone: (310) 854-4444
Fax: (310) 854-0812
kiesel@kiesel.law
koncius@kiesel.law
palmer@kiesel.law
brancolini@kiesel.law

James C. Wyly (admitted *pro hac vice*)
Sean F. Rommel (admitted *pro hac vice*)
WYLY-ROMMELL, PLLC
4004 Texas Boulevard
Texarkana, Texas 75503
Telephone: (903) 334-8646
jwyly@wylyrommel.com
srommel@wylyrommel.com

Clay Barnett (admitted *pro hac vice*))
BEASLEY ALLEN
4200 Northside Pkwy NW
Building One, Suite 100
Atlanta, GA 30327
Telephone: (334) 269-2343
Fax: (855) 674-1818

Clay.barnett@beaslyallen.com

***ATTORNEYS FOR PLAINTIFF***
***AND THE PROPOSED CLASSES***