**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| AMBER QUITNO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GENERAL MOTORS LLC, <br><br> Defendant. | Case No. 1:18-cv-07598 <br><br> Hon. Judge John Robert Blakey <br><br> Magistrate Judge Lisa A. Jensen |

**GENERAL MOTORS' MOTION TO DISMISS
THIRD AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

LEGAL STANDARDS ...................................................................................... 5

ARGUMENT ..................................................................................................... 7

I.  PLAINTIFF LACKS STANDING TO PURSUE HER CLAIMS. ................... 7

    A.  No Injury. ........................................................................................ 7

    B.  No Causation. .................................................................................. 7

II.  PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF ARE MOOT. ............. 9

III.  PLAINTIFF'S ICFA ALLEGATIONS STILL DO NOT SATISFY RULE 9(b). ........... 10

IV.  PLAINTIFF DOES NOT ALLEGE GM'S PRE-SALE KNOWLEDGE OF A
DEFECT. ................................................................................................ 13

    A.  NHTSA And GM Documents Do Not Establish Pre-Sale Knowledge. .............. 13

        1.  NHTSA Complaints ........................................................... 13

        2.  GM Documents .................................................................. 15

    B.  Service Bulletins Do Not Establish Pre-Sale Knowledge ..................... 15

V.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS ON MULTIPLE
GROUNDS. ............................................................................................ 16

VI.  PLAINTIFF'S RECALL-RELATED CLAIMS AND REQUESTS FOR
EQUITABLE RELIEF ARE PREEMPTED BY FEDERAL LAW .............................. 17

VII.  PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE DISMISSED UNDER
THE PRIMARY JURISDICTION DOCTRINE. ........................................... 19

VIII.  PLAINTIFF'S "NEGLIGENT UNDERTAKING/RECALL" CLAIM FAILS. ............. 19

CONCLUSION ................................................................................................ 20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Access Living of Metro. Chi., Inc. v. City of Chicago,*
    372 F. Supp. 3d 663 (N.D. Ill. 2019) .........................................................................5

*Apex Digital, Inc. v. Sears, Roebuck & Co.,*
    572 F.3d 440 (7th Cir. 2009) ....................................................................................5

*Appert v. Morgan Stanley Dean Witter, Inc.,*
    673 F.3d 609 (7th Cir. 2012) ....................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ...........................................................................................7

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    835 N.E.2d 801 (Ill. 2005) ......................................................................................10

*Beck v. FCA US LLC,*
    273 F. Supp. 3d 735 (E.D. Mich. 2017), *motion to amend denied,* 2018 WL
    3359100 (E.D. Mich. Jul. 10, 2018) .......................................................................13

*Blissard v. FCA US LLC,*
    No. LA CV18-02765 .........................................................................................14, 16

*Bushendorf v. Freightliner Corp.,*
    13 F.3d 1024 (7th Cir. 1993) ..................................................................................12

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) .................................................................................7, 8

*Ctr. for Biological Diversity v. Jewell,*
    No. 2:13-cv-364-FtM-38DNF, 2014 WL 12618081 (M.D. Fla. Jan. 9, 2014).........6

*Cheng v. BMW of N. Am., LLC,*
    No. CV 12-09262 GAF, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ...................9

*Ciszewski v. Denny's Corp.,*
    2010 WL 2220584 (N.D. Ill. June 2, 2010) ............................................................12

*Cohen v. Am. Sec. Ins. Co.,*
    735 F.3d 601 (7th Cir. 2013) ..................................................................................16

*Connick v. Suzuki Motor Co.,*
    675 N.E.2d 584 (Ill. 1996) ......................................................................................12

iii

*Connor v. Ford Motor Co.*,
No. 96 C 8343, 1997 WL 724528 (N.D. Ill. Nov. 12, 1997) .................................. 12

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................ 6, 17

*Darne v. Ford Motor Co.*,
No. 13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ............................... 11

*Davis v. Fed. Elec. Comm'n*,
554 U.S. 724 (2008) ..................................................................................................... 5

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) ......................................................................................... 10

*Demaria v. Nissan N. Am.*,
No. 15 C 3321, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ......................... 14, 15, 16

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ........................................................................................ 1

*In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*,
595 F. Supp. 2d 855 (N.D. Ill. 2009) .......................................................................... 20

*Flynn v. FCA US LLC*,
No. 15-cv-855-SMY, 2020 WL 1492687 (S.D. Ill. Mar. 27, 2020) ........................... 8

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ..................................................................................................... 5

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ................................................................................................... 17

*Goldberg v. Freedom Fed. Sav. Bank*,
No. 88 C 4787, 1989 WL 8503 (N.D. Ill. Jan. 31, 1989), aff'd sub
nom. Goldberg v. Household Bank, F.S.B., 890 F.2d 965 (7th Cir. 1989) .............. 12

*Gracia v. Volvo Europa Truck, N.V.*,
112 F.3d 291 (7th Cir. 1997) ................................................................................. 18, 19

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .......... 14

*Hadley v. Chrysler Grp., LLC*,
624 F. App'x 374 (6th Cir. 2015) ................................................................................. 8

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
607 N.E.2d 165 (Ill. 1992) ......................................................................................... 16

*Henson v. CSC Credit Services*,
  29 F.3d 280 (7th Cir. 1994) ................................................................................1

*Hickman v. Wells Fargo Bank N.A.*,
  683 F. Supp. 2d 779 (N.D. Ill. 2010) .................................................................16

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) ...............................................................19

*Hurley v. Motor Coach Indus., Inc.*,
  222 F.3d 377 (7th Cir. 2000) ..............................................................................18

*Ill. Bell Tel. Co. v. Glob. NAPs Ill., Inc.*,
  551 F.3d 587 (7th Cir. 2008) ...........................................................................6, 19

*IWOI, LLC v. Monaco Coach Corp.*,
  581 F. Supp. 2d 994 (N.D. Ill. 2008) .................................................................12

*Jett v. Warrantech Corp.*,
  436 F. Supp. 3d 1170 (S.D. Ill. 2020) ..................................................................8

*Kesse v. Ford Motor Co.*,
  No. 14 C 6265, 2015 WL 920960 (N.D. Ill. Mar. 2, 2015) ..........................11, 20

*Lilly v. Ford Motor Co.*,
  No. 00 C 7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ...........................17, 19

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..............................................................................................5

*McKee v. Gen. Motors LLC*,
  376 F. Supp. 3d 751 (E.D. Mich. 2019) ..............................................................14

*McMahan v. Deutsche Bank AG*,
  938 F. Supp. 2d 795 (N.D. Ill. 2013) ..................................................................11

*Moran v. Rush Prudential HMO, Inc.*,
  230 F.3d 959 (7th Cir. 2000) ................................................................................6

*Muir v. Nature's Bounty, Inc.*,
  No. 15 C 9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017) ............................16

*Padilla v. Hunter Douglas Window Coverings, Inc.*,
  No. 09 CV 1222, 2012 WL 3265002 (N.D. Ill. Aug. 8, 2012) ...........................20

*Peckerar v. General Motors, LLC*,
  No. 5:18-cv-02153 (C.D. Cal. Aug. 17, 2020) .................................................8, 18

v

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................................................................................7

*Progressive N. Ins. Co. of Ill. v. Ford Motor Co.*,
259 F. Supp. 3d 887 (S.D. Ill. 2017) ......................................................................20

*Schiesser v. Ford Motor Co.*,
16-cv-00730, 2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ..............................11, 18

*Schiesser v. Ford Motor Co.*,
No. 16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ...............................10, 18

*Schwebe v. AGC Flat Glass N. Am., Inc.*,
No. 12 C 9873, 2013 WL 2151551 (N.D. Ill. May 16, 2013) .................................13

*Silvas v. Gen. Motors, LLC*,
No. 2:14-CV-89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) ............................19

*Sloan v. General Motors*,
No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) .............13, 14

*Stewart v. Electrolux Home Prods., Inc.*,
1:17-cv-01213, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ...............................13

*Strama v. Toyota Motor Sales, U.S.A., Inc.*,
No. 15 C 9927, 2016 WL 561936 (N.D. Ill. Feb. 12, 2016) ...........................7, 8, 11

*Suarez v. Playtex Prod., Inc.*,
Nos. 08 C 2703, 08 C 3352, 2009 WL 2212315 (N.D. Ill. July 24, 2009) .............20

*Sugasawara v. Ford Motor Co.*,
No. 18-CV-06159, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ............7, 8, 9, 10

*Tylka v. Gerber Prod. Co.*,
No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) .....................................11

*White v. DaimlerChrysler Corp.*,
856 N.E.2d 542 (Ill. App. Ct. 2006) ......................................................................13

*Wiegel v. Stork Craft Mfg., Inc.*,
891 F. Supp. 2d 941 (N.D. Ill. 2012) ........................................................................9

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ................................................................................13

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
681 F.3d 1208 (10th Cir. 2012) ..........................................................................9, 10

*Wis. Right to Life State Pol. Action Comm. v. Barland,*
  664 F.3d 139 (7th Cir. 2011) ......................................................6

*Wozniak v. Ford Motor Co.,*
  No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ...........................................14

*Zarinebaf v. Champion Petfoods USA Inc.,*
  No. 18 C 6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019) .................................10

*Zaro v. Maserati N. Am., Inc.,*
  No. 07 C 3565, 2007 WL 4335431 (N.D. Ill. Dec. 6, 2007) ..................................12

**Statutes**

49 U.S.C. § 30118 ...................................................................5

49 U.S.C. § 30119 ...................................................................5

49 U.S.C. § 30120 ...................................................................5

49 U.S.C. § 301165 ..................................................................5

Illinois Consumer Fraud and Deceptive Business Practices Act ........................................... *passim*

U.S. National Traffic and Motor Vehicle Safety Act ....................................2, 5, 17, 18

**Rules**

49 C.F.R. 1.50 ......................................................................5

49 C.F.R. 577 ......................................................................17

Federal Rule of Civil Procedure 9(b) ................................................. *passim*

Federal Rule of Civil Procedure 12(b) ...............................................5, 7

**Other Authorities**

Product Safety Recall, N192268490 Increased Brake Pedal Effort (Sept. 2019),
  https://static.nhtsa.gov/odi/rcl/2019/RCSB-19V645-6988.pdf.................................................1

Special Coverage Adjustment, N182202780 Brake Assist Decreased Due to
  Vacuum Loss (Oct. 2019)
  https://static.nhtsa.gov/odi/tsbs/2019/MC-10167479-9999.pdf ................................................1

## INTRODUCTION

Plaintiff alleges that her 2015 Chevrolet Tahoe has a brake defect. In the fall of 2019, GM addressed the brake condition with a voluntary nationwide recall overseen by the National Highway Traffic Safety Administration ("NHTSA"),[1] and with a Special Coverage Adjustment[2] offering vehicle owners who experience the condition a free replacement of the vacuum pump and reimbursement of out-of-pocket repair costs for up to 10 years or 150,000 miles.

On May 1, 2019, GM moved to dismiss plaintiff's First Amended Complaint ("FAC") (ECF No. 40). On February 18, 2020, the Court granted GM's motion (ECF No. 90). The Court found that plaintiff failed to plead her claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") because her "generalized allegations" were "far too vague" to satisfy Rule 9(b), and because she "fail[ed] to plead any facts indicating an agency relationship" between GM and the dealership where she purchased her vehicle. *Id.* at 8. The Court also dismissed plaintiff's unjust enrichment claim because it was "based solely upon the same allegedly deceptive conduct" as her failed ICFA claim. *Id.* at 13.[3]

On March 6, 2020, plaintiff filed the Second Amended Complaint ("SAC") (ECF No. 96), making a third attempt at alleging her ICFA and unjust enrichment claims. On July 6, 2020, GM moved to dismiss the SAC (ECF No. 107). On July 27, 2020, rather than respond to GM's motion,

---

[1] Product Safety Recall, N192268490 Increased Brake Pedal Effort (Sept. 2019), https://static.nhtsa.gov/odi/rcl/2019/RCSB-19V645-6988.pdf (**Ex. A**). GM respectfully requests that the Court take judicial notice of this Recall Bulletin from NHTSA's official website. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (judicial notice of official government websites is appropriate); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court may take judicial notice of "'matters of public record'" without converting motion to dismiss into motion for summary judgment).

[2] Special Coverage Adjustment, N182202780 Brake Assist Decreased Due to Vacuum Loss (Oct. 2019), https://static.nhtsa.gov/odi/tsbs/2019/MC-10167479-9999.pdf (**Ex. B**).

[3] The Court also dismissed plaintiff's warranty claims for lack of privity with GM. *Id.* at 10-12.

1

plaintiff filed the Third Amended Complaint ("TAC") (ECF No. 112), again attempting to allege ICFA and unjust enrichment claims, and adding a new claim for "negligent undertaking/recall." These claims fall short yet again and should be dismissed for the following reasons.

First, given the availability of complete relief under GM's recall and special coverage programs, plaintiff fails to allege injury in fact or causation sufficient to establish standing under Article III, and her claims for equitable relief are moot.

Second, plaintiff still fails to plead her ICFA claim with particularity as Rule 9(b) requires, and she fails to plausibly allege that GM knew of the alleged defect at the time of her purchase.

Third, plaintiff's unjust enrichment claim fails because her ICFA claim is not viable; her relationship with GM is governed by an express contract (GM's Limited Warranty); and she did not confer any direct benefit on GM.

Fourth, plaintiff's recall-related claims are preempted by federal law because they conflict with the U.S. National Traffic and Motor Vehicle Safety Act ("Safety Act") and federal regulations governing NHTSA-supervised recalls. These claims also should be dismissed under the primary jurisdiction doctrine because they ask the Court to interfere with NHSTA's special competence.

Fifth, plaintiff fails to plead facts establishing injury to support her "negligent undertaking/recall" claim, which is also barred by the economic loss, or *Moorman*, doctrine.

## STATEMENT OF FACTS

In September 2015, plaintiff Amber Quitno purchased a "dealer demo" 2015 Chevrolet Tahoe "with about 200 miles on it" at Alan Browne Chevrolet in Genoa, Illinois. TAC ¶ 15. At the time of purchase, her vehicle was covered by GM's Limited Warranty (*id.* ¶ 31), which provides coverage for up to 3 years or 36,000 miles. TAC Ex. F at 4.

Before her purchase, plaintiff alleges that she reviewed unspecified "information on GM's

website" regarding the Tahoe's safety and durability (TAC ¶ 22); unspecified "paperwork provided by GM and the dealer," the window sticker, "warranty materials," and unspecified "advertising and promotional materials" (*id.* ¶ 30); and one GM advertisement containing only general references to the functionality, comfort, and safety of Tahoe and Suburban vehicles, but no references to braking (*id.* ¶ 24). Plaintiff also alleges that she read two third-party reviews posted on websites unaffiliated with GM, which she mischaracterizes as GM "ads." *Id.* ¶¶ 25-26.

Plaintiff does not allege that she experienced any problem with her vehicle for nearly three years after her September 2015 purchase. Starting in the "summer of 2018," plaintiff alleges three instances while operating her vehicle in reverse when she "attempted to apply the brakes" and found they "were hard and wouldn't slow the vehicle." TAC ¶¶ 36, 39, 40, 42. When plaintiff shifted her vehicle into drive, the brakes worked without any problem. *Id.* ¶¶ 38, 40-41.

Plaintiff alleges that the problem she experienced is not unique to her vehicle, but instead represents a "Brake Defect" across "19 affected vehicle models" from 2014 to present.[4] Plaintiff defines this alleged defect as a "design defect that causes a dangerous safety hazard to consumers, in that the Class Vehicles are prone to sudden and unexpected loss of vacuum in the brake booster, requiring replacement of the brake booster and/or the system's vacuum pump." *Id.* ¶ 2.

Plaintiff speculates that GM was aware of the alleged defect in all 2015 Tahoes at the time of her September 2015 purchase. *Id.* ¶ 59. In support, plaintiff cites 16 consumer complaints to NHTSA and posts on consumer report websites about brake issues in different GM makes and models between October 2014 and October 2018. *Id.* ¶¶ 94-104. Only two of these complaints

---

[4] The putative "Class Vehicles" include all 2015 to present Chevrolet Suburbans, Cadillac Escalades, Chevrolet Tahoes, and GMC Yukons/Yukon XLs, as well as all 2014 to present Chevrolet Silverados and GMC Sierras. *Id.* ¶¶ 1, 61.

predate plaintiff's purchase of her vehicle, and only one involves a 2015 Tahoe. *Id.* ¶¶ 94-95. *See* **Ex. C** (summarizing these complaints for the Court's convenience).

Plaintiff further speculates that GM was aware of a defect in all putative Class Vehicles at the time of her purchase because, between February 2015 and September 2018, GM issued Technical Service Bulletins ("TSBs") to dealerships addressing "rare situations" in which consumers experienced the need for "additional brake pedal effort." *See id*. ¶¶ 51-54, Ex. J. Only one of these TSBs is dated before plaintiff's September 2015 purchase, and none of the TSBs describes a specific condition involving insufficient brake pressure in the brake vacuum. *Id.* Instead, these TSBs address a specific condition involving the presence of "fluid . . . in the brake booster and/or the booster vacuum line." *Id.* ¶¶ 52-54, 58, 64, Ex. J.

On September 11, 2019, NHTSA and GM announced a voluntary, nationwide recall of nearly 3.5 million vehicles, including plaintiff's vehicle and the putative Class Vehicles, relating to "increased brake pedal effort." Ex. A. The recall notice describes that "in some circumstances," the "vacuum pump output may decrease over time, decreasing the amount of vacuum/power brake assist." *Id*. Under the recall's terms, any recalled vehicle's brake system will receive the recall remedy free of charge, regardless of mileage, vehicle age, or ownership. *Id.* at 1, 3. The recall, which is ongoing, is supervised by NHTSA and carried out pursuant to federal law. *Id.*

In addition, on October 11, 2019, GM instituted a Special Coverage Adjustment (expanding an earlier special coverage from April 2019) for the brake condition, which also applies to all putative Class Vehicles, including plaintiff's 2015 Tahoe. Ex. B at 1. Under the program, "[d]ealers are to replace the vacuum pump and vacuum pump belt" free of charge to customers who experience the brake condition for up to 10 years or 150,000 miles. *Id.* GM will also reimburse customers for previously paid repairs associated with the brake condition. *Id.* at 1, 3.

4

Under federal law, GM's ongoing, voluntary recall is subject to NHTSA oversight and regulation. *See* 49 U.S.C. §§ 30120(c)-(e), 30165(a); 49 C.F.R. 1.50(a). Under the Safety Act, GM is required to follow specific notice procedures for all relevant registered vehicle owners. 49 U.S.C. §§ 30118(c), 30119(d). GM is further obligated to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." *Id.* § 30120(a). If the condition is not "adequately" repaired "within a reasonable time," GM must "replace the vehicle or equipment without charge with an identical or reasonably equivalent vehicle or equipment" or "refund the purchase price, less a reasonable allowance for depreciation." *Id.* § 30120(a), (c).

## LEGAL STANDARDS

To have standing under Article III, a plaintiff must show an (1) "injury in fact" that is "concrete and particularized and [] actual or imminent, not conjectural or hypothetical," (2) that the injury is "fairly traceable" to the defendant; and (3) that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (internal quotation marks omitted) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

A dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Access Living of Metro. Chi., Inc. v. City of Chicago*, 372 F. Supp. 3d 663, 667 (N.D. Ill. 2019). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election. Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted)). No presumption of truthfulness attaches to a plaintiff's standing allegations. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (when evidence calls plaintiff's standing into question, "'[t]he presumption of correctness that we accord to a complaint's allegations falls away'" and

plaintiff "bears the burden of coming forward with competent proof that standing exists")).

Under the mootness doctrine, "[a] case must present a live controversy at the time of filing, contain a live dispute through all stages of litigation, and the parties must continue to have a personal stake in the outcome of the lawsuit throughout its duration." *Wis. Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011). The doctrine of prudential mootness may be applied to bar claims for equitable relief where a "controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Ctr. for Biological Diversity v. Jewell*, No. 2:13-cv-364-FtM-38DNF, 2014 WL 12618081, at *4 (M.D. Fla. Jan. 9, 2014).

Preemption occurs when a federal law expressly removes the subject matter from regulation by the states, "[w]hen Congress intends federal law to 'occupy the field,' or if state law conflicts with federal law, that is, "it is impossible for a private party to comply with both state and federal law . . . and where 'under the circumstances of [a] particular case, [the challenged law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citations omitted). Whether a federal law preempts a state law-based action is a question of law. *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir. 2000).

The doctrine of primary jurisdiction "'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.'" *Ill. Bell Tel. Co. v. Glob. NAPs Ill., Inc.*, 551 F.3d 587, 594 (7th Cir. 2008) (citation omitted).

6

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must set forth enough non-conclusory factual allegations to show that liability for the alleged conduct is plausible. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under Rule 9(b), claims arising from allegations of fraud, including fraudulent concealment and violations of consumer protection statutes addressing fraudulent or deceptive conduct like ICFA, must be pled with particularity. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) ("'[P]articularity" requires that a plaintiff "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'")). *Id.*

## ARGUMENT

## I. PLAINTIFF LACKS STANDING TO PURSUE HER CLAIMS.

### A. No Injury.

Plaintiff has no actual injury because GM's recall and Special Coverage programs offer complete relief for any defect she claims existed in her vehicle. *See Strama v. Toyota Motor Sales, U.S.A., Inc.*, No. 15 C 9927, 2016 WL 561936, at *2 (N.D. Ill. Feb. 12, 2016) (granting motion to dismiss ICFA claim where plaintiff failed to take advantage of a remedy program that "cover[ed] all of the past and future costs to Plaintiffs" and "fully reimbursed [Plaintiffs] for their costs"); *see also Sugasawara v. Ford Motor Co.*, No. 18-CV-06159, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (plaintiff could not establish standing without alleging that he "has availed himself of the recall remedy").

Plaintiff does not allege that she sought the remedies that GM has made available to her, so any allegation that these remedies are "inadequate" (TAC ¶ 128) is pure speculation.

7

*Sugasawara*, 2019 WL 3945105, at *5 (speculative allegations that a "proffered remedy is ineffectual" are insufficient to establish injury); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) ("The plaintiffs' assertion that the ORC Module repair may not be effective" evidences "a hypothetical possibility" rather than "an actual or imminent injury.")). Nor can plaintiff point to the alleged experiences of "other, unidentified members of the [putative] class" to establish standing, as named plaintiffs "must allege and show that they personally have been injured." *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1175 (S.D. Ill. 2020).

Plaintiff offers only conclusory allegations—unsupported by facts—that she "remains concerned" about the safety of her vehicle (TAC ¶ 44) and that the value of her vehicle has been "substantially diminished" (TAC ¶ 124). ICFA claims predicated on "hypothetical, speculative, or illusory" injuries, as opposed to "actual, concrete conflicts," are not ripe. *Strama*, 2016 WL 561936, at *2 (dismissing plaintiff's ICFA claim because "the fears that they premise their claims on in this case are the type of hypothetical and speculative concerns that are not ripe for adjudication in a court of law" (citation omitted)); *Camasta*, 761 F.3d at 736 (affirming dismissal of ICFA claim because plaintiff's allegations were "speculative and conclusory"); *Flynn v. FCA US LLC*, No. 15-cv-855-SMY, 2020 WL 1492687, at *4-5 (S.D. Ill. Mar. 27, 2020) ("conclusory and unsupported" allegations that "vehicles are worth substantially less than they would be without the alleged defect" are insufficient to confer standing).[5]

**B.      No Causation.**

---

[5] Unlike the plaintiffs in *Peckerar v. General Motors, LLC*, No. 5:18-cv-02153 (C.D. Cal. Aug. 17, 2020) (ECF No. 109) (**Ex. D**), where the court found standing based on "uncompensated or unrepaired property damage" (*id.* at 4) and the risk of future injury, plaintiff here does not allege any property damage, and she cannot demonstrate cognizable future injury simply because she "remains concerned" (TAC ¶ 44) about her vehicle's safety. *See Strama*, 2016 WL 561936, at *2.

8

Plaintiff also does not plead causation sufficient to establish Article III standing because any injury plaintiff alleges is attributable to her failure to take advantage of GM's remedy programs. *See Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 943 (N.D. Ill. 2012) (plaintiff lacked standing to assert ICFA and unjust enrichment claims where she failed to allege that she took advantage of recall program); *Sugasawara*, 2019 WL 3945105, at *6 (where plaintiff failed to take advantage of recall remedy, "[a]ny defect that persists in [his] truck is not fairly 'traceable' to Ford but rather to [himself]; causation would therefore be lacking").

## II.  PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF ARE MOOT.

In light of GM's recall and Special Coverage remedies, plaintiff's claims for equitable relief (TAC at 53) should be dismissed under the prudential mootness doctrine. In *Winzler v. Toyota Motor Sales U.S.A., Inc.*, the Tenth Circuit dismissed a vehicle defect class action as prudentially moot based on Toyota's announcement of a voluntary recall. 681 F.3d 1208 (10th Cir. 2012). Then-Judge Gorsuch explained why a recall warranted dismissal of the plaintiffs' lawsuit:

> By filing documents with NHTSA . . . Toyota set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process . . . . Toyota is now obliged by statute to notify all relevant registered owners of the defect . . . [and] to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." 49 U.S.C. § 30120(a). And Toyota has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA.

> Given all this, there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits. Congress and the Executive have committed to ensure Ms. Winzler precisely the relief she seeks. At best, we might duplicate their efforts . . . . At worst, we might invite inter-branch confusion and turf battles over the details of carrying out an agreed objective . . . .

*Id.* at 1211 (citations omitted); *see also Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF (SHx), 2013 WL 3940815, at *2, *4 (C.D. Cal. July 26, 2013) (applying *Winzler* to dismiss vehicle defect class action in light of recall and noting "it is unclear how Plaintiff can demonstrate injury

in light of BMW's offer to completely repair the roll away defect"); *Sugasawara*, 2019 WL 3945105, at \*6 (quoting *Winzler*, 681 F.3d at 1214, and holding that "Plaintiffs have not demonstrated 'a cognizable danger that the statutory recall process will fail'").[6]

## III. PLAINTIFF'S ICFA ALLEGATIONS STILL DO NOT SATISFY RULE 9(b).

In considering the FAC, the Court found that plaintiff's allegations were "far too vague to provide [GM] notice of the exact statements at issue," and thus failed to meet Rule 9(b)'s particularity requirement. ECF No. 90 at 7. Despite two more opportunities to re-plead, the TAC offers only "vague and generalized" allegations to support plaintiff's ICFA claim. *Id.*

Plaintiff does not identify a single specific, actionable GM communication.[7] The only GM communication the TAC cites is an advertisement containing generic marketing language. *See* TAC ¶ 24 (describing the Tahoe and Suburban as "functional and refined while offering more safety features and a greater range of advanced technologies for today's connected customers" and "offer[ing] first-class comfort, unmatched capability and innovative technologies with new standard content").[8] But "subjective descriptions relating to quality" are not actionable under the ICFA. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005); *see also Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2019 WL 3555383, at \*6 (N.D. Ill. July 30, 2019)

---

[6] In contrast to the *Peckerar* plaintiffs' allegations about the inadequacy of GM's Special Coverage (Ex. D, at 4), plaintiff here says nothing about the Special Coverage, and the relief she seeks mirrors the relief it provides—a free replacement vacuum pump for vehicle owners who experience brake pump issues. TAC ¶ 2 (alleged defect "require[es] replacement of the brake booster and/or the system's vacuum pump").

[7] Plaintiff's allegations that GM omitted a warning of the alleged defect from a window "decal" or the "owner's manual" cannot support her ICFA claim because she does not allege she viewed a decal or owner's manual. *Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at \*6 (N.D. Ill. Apr. 6, 2017).

[8] The other documents plaintiff mischaracterizes as GM "ads" are actually third-party vehicle reviews. TAC ¶¶ 25-26 (quoting U.S. News & World Report and "Midway Chevy," an independent dealership in Arizona). Neither can sustain an ICFA claim against GM. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]o maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant.").

("Under Illinois law, mere puffery or a statement of seller's opinion is not actionable under either a common law fraud or ICFA claim . . . ."); *Tylka v. Gerber Prod. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) (ICFA misrepresentation claim cannot be based on "vague, all encompassing, communications" regarding product characteristics).[9]

Plaintiff also cannot salvage her ICFA claim by including conclusory allegations that GM "omitted what it knew about the Brake defect from all advertising, promotion, or other contacts with Plaintiff" and that "omissions occurred in every communication [GM] had with Plaintiff." TAC ¶¶ 4, 127-29. *See Schiesser v. Ford Motor Co.*, 16-cv-00730, 2016 WL 6395457, at *5 (N.D. Ill. Oct. 28, 2016) (conclusory allegations that "advertisements and representations made by Ford contained [no] disclosure about the Defect . . . do not meet the Rule 9(b) specificity standard"); *Strama*, 2016 WL 561936, at *3 ("Plaintiffs' general statements that Toyota has been concealing information from consumers and making misstatements to consumers for years are not sufficient to plead with particularity the specific facts as to the alleged fraud . . . ."); *Kesse v. Ford Motor Co.*, No. 14 C 6265, 2015 WL 920960, at *4 (N.D. Ill. Mar. 2, 2015) (generic allegation that Ford "'withheld . . . relevant service information'" about vehicle are insufficient to satisfy Rule 9(b)); *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 805-06 (N.D. Ill. 2013) (dismissing fraud claims under Rule 9(b) because plaintiffs needed to "provide greater details about the circumstances surrounding the omissions").[10] Plaintiff's bare allegation that GM omitted

---

[9] Plaintiff again points to "warranty materials" (TAC ¶ 30) even though, as the Court pointed out, GM's Limited Warranty "actually acknowledges potential defects by specifically stating that its purpose is to cover 'repairs to correct' any vehicle defect." ECF No. 90 at 7; *see also Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *10 (N.D. Ill. Dec. 18, 2015) (express warranty not deceptive where it "expressly discloses that the engine may contain defects").

[10] Plaintiff's allegation that the "contents of the [September 2018] service bulletin . . . evidence the who, what, where, when, and why" of her claim (TAC ¶ 117) falls short of Illinois law, which requires her to state with specificity "'the identity of the person making the misrepresentation, the time, place, and content

11

information from a window sticker is also insufficient because she fails to allege the contents of the sticker she allegedly viewed. *See Ciszewski*, 2010 WL 2220584, at *2 (dismissing omission-based ICFA claim where plaintiff did "not allege with any specificity what information was in" alleged communications).[11]

Despite the Court's ruling that plaintiff could not state an ICFA claim without "any facts showing an agency relationship" between Alan Brown Chevrolet and GM (ECF No. 90, at 8), plaintiff fails to allege facts showing that the dealership is GM's agent. The TAC instead offers only new *conclusory* allegations that the dealership "acted as [GM's] agent" and that GM "has control" over its dealerships. TAC ¶¶ 21, 33, 119-20. But "bare allegations of an agency relationship between the manufacturer and dealer are insufficient." *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000 (N.D. Ill. 2008); ECF No. 90, at 8 (plaintiff must plead "*facts* showing an agency relationship" (emphasis added)). Because plaintiff has no such facts, her ICFA claim fails. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996) (ICFA claim cannot be "based on statements of local Suzuki dealers because the complaint did not adequately plead agency between Suzuki and the local dealers").[12]

---

of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Ciszewski v. Denny's Corp.*, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010). The September 2018 bulletin, which post-dates plaintiff's purchase by three years, contains no such allegations.

[11] Plaintiff's assertion that she cannot satisfy Rule 9(b)'s pleading requirements "[a]bsent discovery," TAC ¶ 127, does not save her ICFA claim. *See Goldberg v. Freedom Fed. Sav. Bank*, No. 88 C 4787, 1989 WL 8503, at *3 (N.D. Ill. Jan. 31, 1989), *aff'd sub nom. Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965 (7th Cir. 1989) (plaintiff "cannot resort to discovery to remedy the defects in [her] pleadings").

[12] The case law is clear that independent dealerships are not agents of car manufacturers. *See Connor v. Ford Motor Co.*, No. 96 C 8343, 1997 WL 724528, at *2 (N.D. Ill. Nov. 12, 1997) ("The relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers."); *Zaro v. Maserati N. Am., Inc.*, No. 07 C 3565, 2007 WL 4335431, at *4 (N.D. Ill. Dec. 6, 2007) ("'[A]n automobile dealer or other similar type of dealer, who . . . merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent.'") (quoting *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1026 (7th Cir. 1993)).

12

## IV.   PLAINTIFF DOES NOT ALLEGE GM'S PRE-SALE KNOWLEDGE OF A DEFECT.

Plaintiff also cannot state an ICFA claim because she does not plausibly allege that GM *knew* of a defect in her 2015 Tahoe at the time of sale. *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *4 (N.D. Ill. May 16, 2013) (ICFA plaintiff must "plead with particularity facts indicating [] knowledge" of defect prior to sale); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 549 (Ill. App. Ct. 2006) (defendant must "be aware of the existence of the material fact before the time of the sale to the plaintiff"). Plaintiff speculates that GM was aware of a defect in hundreds of thousands of putative Class Vehicles based on: (i) a couple of NHTSA customer complaints, (ii) one pre-sale GM service bulletin sent to dealerships, and (iii) various GM documents with vague discussions of pump- and brake-related matters. These allegations do not raise a plausible inference of GM's pre-sale knowledge.[13]

### A.   NHTSA And GM Documents Do Not Establish Pre-Sale Knowledge.

#### 1.   NHTSA Complaints

Plaintiff identifies only two pre-sale consumer complaints about brake issues in certain GM vehicles. TAC ¶¶ 94 -104. These complaints alone do not raise an inference of knowledge because only "an unusually high number of complaints" provide a manufacturer with notice of a defect. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (81

---

[13] Plaintiff also alleges that GM knew of a defect based on unidentified complaints made through "internet forums, GM's franchised dealerships, and directly by owners of Class Vehicles." TAC ¶ 88. These generic, conclusory allegations—devoid of specific facts—cannot plausibly show knowledge. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 735 (E.D. Mich. 2017) (collecting cases), *motion to amend denied*, 2018 WL 3359100 (E.D. Mich. July 10, 2018); *Stewart v. Electrolux Home Prods., Inc.*, 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018).

complaints over seven years not "unusually high number of complaints" and did not show GM's knowledge of defect); *Blissard v. FCA US LLC*, No. LA CV18-02765, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (complaint volume was not "'significant and beyond the norm'").[14]

In addition, only one of these documents references the 2015 Tahoe (TAC ¶ 95), and both reference only vague brake issues. *See id.* ¶ 94 ("the ABS engages at slow speeds . . . leading to total loss of braking . . ."); *id.* ¶ 95 ("It took a greater amount of time for the vehicle to come to a complete stop."). These vague complaints do not reference the specific "Brake Defect" alleged here—"[a] sudden and unexpected loss of vacuum in the brake booster, requiring replacement of the brake booster and/or the system's vacuum pump" (*id.* ¶ 2)—and they therefore do not support an inference of knowledge. *See Sloan*, 2017 WL 3283998, at *7 (because none of 81 NHTSA complaints "explicitly states that the cause of the excessive oil consumption was the Low-Tension Oil Ring Defect . . . these complaints would not establish that GM knew that the Low-Tension Oil Rings caused the excessive consumption").[15]

The remaining 14 complaints, submitted *after* plaintiff purchased her vehicle, cannot show knowledge of a defect at the time of sale. *See Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *12 (N.D. Ill. Feb. 1, 2016) (complaint does not show knowledge unless it "was on file as of the time" of purchase); *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142, 2013

---

[14] Even if *all* 16 complaints were filed before plaintiff's purchase, involved a 2015 Tahoe, and addressed plaintiff's specific alleged defect, 16 complaints out of "thousands" of vehicles (TAC ¶¶ 63, 85) is not the "unusually high" number of complaints necessary to impute knowledge to GM.

[15] Plaintiff's unsupported allegation that GM "should and (does monitor) NHTSA databases," TAC ¶¶ 91-92, is insufficient to establish GM's pre-sale knowledge of a defect in her vehicle. *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 762 n.13 (E.D. Mich. 2019) (noting that allegation that defendant "regularly monitor[ed] NHTSA complaints in order to meet its reporting requirement[] . . . was insufficient to prove . . . knowledge of the defect"); *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (plaintiff required to plead "*facts* that Defendant was . . . *aware of* the complaints" (emphases added)).

WL 690822 at *7 (C.D. Cal. Feb. 19, 2013) (no "plausible inference of knowledge based on []
allegation that Defendant received customer complaints *after* the sales of the vehicles in
question").[16]

### 2. GM Documents

The five GM documents (TAC ¶ 55) cannot plausibly show GM's knowledge of any defect
at the time of sale. Only three of the documents are dated *before* the sale of plaintiff's vehicle, and
those documents make only vague references to vacuum pumps and brake performance, which do
not match the hard brake pedal condition plaintiff alleges. *See* TAC ¶ 3 (report of debris in
engines); ¶ 46 (single test pump exhibiting reduced output due to debris); ¶ 47 (stating only
"'brakes on the 2014 [Silverado] are not as good as the 2010 or 2012'"; no mention of brake pump
issues); ¶ 49 (stating "'brake[s] keep randomly going out'"; no mention of pump- or vacuum-
related issues).

### B. Service Bulletins Do Not Establish Pre-Sale Knowledge.

Plaintiff also tries to establish knowledge based on TSBs that GM issued to dealerships
between February 2015 and September 2018 addressing "rare situations" in which consumers
experienced the need for "additional brake pedal effort." TAC ¶¶ 51, 64, 66, Ex. N. Only one of
these TSBs pre-dates plaintiff's vehicle purchase (¶ 51), and none addresses the specific brake
defect that plaintiff alleges. Instead, the TSBs address a different condition involving "fluid . . . in
the brake booster and/or the booster vacuum line." *Id.* ¶ 52. By contrast, plaintiff alleges loss of

---

[16] Plaintiff also makes conclusory allegations that GM received "numerous warranty returns [and] customer
complaints" (TAC ¶ 45), but alleges no facts in support. The Court should reject these allegations. *See
Demaria,* 2016 WL 374145, at *11 (rejecting conclusory allegations about "warranty claims and customer
complaints"). Nor can the Arkansas and California incidents allegedly involving brake failure or the
NHTSA and Transport Canada investigations plaintiff cites (TAC ¶¶ 64-65, 67) establish GM's pre-sale
knowledge of the alleged defect, because they occurred *after* plaintiff purchased her vehicle.

brake pressure in the vacuum pump (¶¶ 2, 51) affecting brake performance while driving in reverse (¶¶ 36-41). Because the only TSB that pre-dates the sale does not describe the same defect that plaintiff alleges, it cannot support an inference that GM had pre-sale knowledge of that defect. *See, e.g.*, *Blissard*, 2018 WL 6177295, at *13.

## V.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS ON MULTIPLE GROUNDS.

Plaintiff's unjust enrichment claim should be dismissed for several reasons.

First, because the claim "remains based solely upon the same allegedly deceptive conduct" as plaintiff's unsuccessful ICFA claim, it cannot stand independently. *See* ECF No. 90, at 13; *see also Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (the "'unjust enrichment [claim] will stand or fall with the related claim'").

Second, the existence of an express contract between plaintiff and GM in the form of a Limited Warranty bars an unjust enrichment claim. *See* TAC ¶ 31, Ex. F. "In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Because plaintiff does not dispute the warranty's existence, dismissal is appropriate. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) ("While a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned, if there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails.").

Third, plaintiff cannot state a claim for unjust enrichment because she did not directly purchase her vehicle from GM, and thus conferred no direct benefit on GM. *See*, *e.g.*, *Demaria*, 2016 WL 374145, at *13 (complaint did "not allege [] that [plaintiff] purchased her car from Nissan, and it is, therefore, not clear that Nissan was enriched at all by the relevant transaction").

16

## VI.    PLAINTIFF'S RECALL-RELATED CLAIMS AND REQUESTS FOR EQUITABLE RELIEF ARE PREEMPTED BY FEDERAL LAW.

Plaintiff's "negligent recall" claim (TAC ¶¶ 179-85), recall-related ICFA allegations (TAC ¶¶ 159, 183), and requests for equitable relief (TAC ¶ 185) are preempted because they conflict with federal laws and regulations governing NHTSA-supervised recalls. Preemption occurs when a federal law "expressly removes the subject matter from regulation by the states . . . or if state law conflicts with federal law, that is, 'it is impossible for a private party to comply with both state and federal law . . . and where 'under the circumstances of [a] particular case, [the challenged law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *4 (N.D. Ill. Jan. 22, 2002) (citing *Crosby*, 530 U.S. at 372-73 (2000)).

The Safety Act establishes a comprehensive federal regulatory scheme for NHTSA-supervised recalls. *See* 49 U.S.C. § 30119, 49 U.S.C. § 30120, 49 C.F.R. § 577 *et seq*. This regulatory framework dictates clear standards for recall procedures, including appropriate forms of remedy for recalled vehicles, timing for performing repairs, and appropriate notice procedures for manufacturers to follow. *See* 49 U.S.C. § 30120 (setting appropriate forms of remedy and timeliness of repairs); 49 U.S.C. § 30119(d)(1), 49 C.F.R. § 577.10 (setting notice requirements). Any attempt to impose different standards on car manufacturers through state tort law, whether founded in statute or common law, is preempted. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 861 (2000) (holding that "ordinary working of conflict pre-emption principles" applied to the federal Safety Act, and finding state common law claims preempted). "'[T]he comprehensive nature of the federal administrative scheme'" under the federal Safety Act "suggests that it was Congress's intent that only the Secretary of Transportation" may order a vehicle recall. *Lilly*, 2002

17

WL 84603, at *5. Thus, a court-ordered recall is preempted by federal law because it "would conflict directly with and frustrate the Safety Act." *Id.*

Plaintiff's allegations that GM conducted the recall "negligently" by providing "inadequate disclosures and 'recall' notices" (TAC ¶ 159), and by "implementing a remedy that falls short of timely and adequately repairing the Class Defect" (*id.* ¶ 183), directly conflict with the Safety Act's remedy and notice provisions and are therefore preempted. *See Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 298 (7th Cir. 1997) (finding preempted by Safety Act state law claims seeking to impose standards different from Act's standards and federal regulations); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 382 (7th Cir. 2000) (same); *Schiesser*, 2017 WL 1283499, at *5 (same). To the extent plaintiff's ICFA allegations challenge the recall (*see* TAC ¶ 159), these claims are likewise preempted.

The equitable relief plaintiff seeks, including notice of the alleged defect and a "refund" for putative class members (TAC at 53), mirrors remedies already provided by GM's recall. *See Schiesser*, 2017 WL 1283499, at *5 ("Although Schiesser does not characterize his requested relief in so many words, he clearly seeks a recall."). In *Schiesser*, plaintiff's claims were preempted because he sought to "'[r]equire Ford to develop a fix to address the Defect, [] create a fund to allow Class Members to get the repair free of charge and as part of the warranties provided when purchasing or leasing the Vehicles,'" declare Ford's alleged concealment of the defect "'unlawful, unfair, and/or deceptive and otherwise in violation of law, and enjoin such future conduct by Ford.'" *Id.* Plaintiff's requests for similar equitable relief are preempted because they conflict with and frustrate the Safety Act.[17] And given GM's initiation of a nationwide recall in 2019, plaintiff's

---

[17] The *Peckerar* court in California did not find an "actual conflict" with federal law from "Plaintiffs'

requests for injunctive relief are further preempted to the extent they seek to impose requirements on GM's recall that would conflict with federal standards and procedures for NHTSA-supervised recalls. *See Gracia*, 112 F.3d at 298.

## VII.   PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE.

Plaintiff's claims for equitable relief also should be dismissed under the doctrine of primary jurisdiction, which allows courts adjudicating controversies that involve issues "'within the special competence of an administrative body'" to refer such issues to that agency, while staying or dismissing the claims. *Ill. Bell Tel. Co.*, 551 F.3d 587 at 594; *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1351 (S.D. Fla. 2013) (noting that courts have dismissed claims on primary jurisdiction grounds when federal regulatory agency "'continues to be actively involved in'" regulation of industry in question).

Plaintiff's claims for equitable relief should be dismissed because they interfere with NHTSA's regulatory expertise and the ongoing agency-supervised recall. *See Silvas v. Gen. Motors, LLC*, No. 2:14-CV-89, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (dismissing claims under primary jurisdiction doctrine where requested relief "conflict[ed] with the existing notices issued in connection with the recall" by NHTSA). This Court should reject plaintiff's request for the Court to substitute its judgment for NHTSA's judgment, interfere with NHTSA's regulatory function, and alter the requirements in NHTSA's area of expertise. This conflict is the fundamental reason for primary jurisdiction.

## VIII.   PLAINTIFF'S "NEGLIGENT UNDERTAKING/RECALL" CLAIM FAILS.

---

request for a recall" because it was not apparent how the relief sought "would frustrate NHTSA's ongoing supervision of the existing Recall." Ex. D, at 8. Illinois law is clear that a request for what amounts to a court-ordered recall is preempted by federal law because "it was Congress's intent that only the Secretary of Transportation" may order a recall. *Lilly*, 2002 WL 84603, at *5.

Under Illinois law, "negligent undertaking" and "negligent recall" claims are analyzed under principles similar to those applied to common law negligence claims. *See Padilla v. Hunter Douglas Window Coverings, Inc.*, No. 09 CV 1222, 2012 WL 3265002, at *2 (N.D. Ill. Aug. 8, 2012). Under negligence analysis, plaintiff's claim fails for two reasons.

First, plaintiff fails to allege injury, a necessary element of her negligence claim. *Suarez v. Playtex Prod., Inc.*, Nos. 08 C 2703, 08 C 3352, 2009 WL 2212315, at *3 (N.D. Ill. July 24, 2009) ("It is well-settled that a plaintiff must allege actual injury to sustain a claim for negligence."). Plaintiff's speculative allegations that her vehicle has diminished in value do not establish injury. *See id.* (unsupported allegations of diminution in value insufficient to establish injury). And while plaintiff also alleges that she "remains concerned" about her vehicle, (TAC ¶ 44), a "mere threat of future harm, not yet realized" does not satisfy the injury requirement. *In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, 595 F. Supp. 2d 855, 865-66 (N.D. Ill. 2009).

Second, the economic loss doctrine bars plaintiff's negligent recall claim because she does not allege personal injury or damage to other property. *Progressive N. Ins. Co. of Ill. v. Ford Motor Co.*, 259 F. Supp. 3d 887, 891 (S.D. Ill. 2017) ("Under the economic loss doctrine, or the *Moorman* doctrine as it known in Illinois, recovery for solely economic losses in relation to a product may not be had upon the tort theories of negligence or strict liability."); *Kesse*, 2015 WL 920960, at *3 (tort claims seeking recovery of "excessive lease payments" barred by *Moorman* doctrine).

## **CONCLUSION**

For these reasons, GM respectfully requests that the Court dismiss plaintiff's claims in the TAC with prejudice.

Dated: August 31, 2020

Respectfully submitted,

**GENERAL MOTORS LLC**

By:  */s/ Kathleen Taylor Sooy*
CROWELL & MORING LLP
Kathleen Taylor Sooy (*Pro hac vice*)
Andrew Pruitt (*Pro hac vice*)
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2608
Fax: (202) 628-5116
ksooy@crowell.com
apruitt@crowell.com

and

DYKEMA GOSSETT, PLLC
Christina Brunty
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 627-2555
Fax: (866) 308-1845
cbrunty@dykema.com

*Attorneys for General Motors LLC*

21

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on August 31, 2020 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Kathleen Taylor Sooy*
Kathleen Taylor Sooy