**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **AMBER QUITNO, Individually, and on Behalf** | ) | |
| **of All Others Similarly Situated,** | ) | |
| | ) | **Case No. 1:18-cv-07598** |
| **Plaintiff,** | ) | |
| | ) | **Hon. Judge John Robert Blakey** |
| **v.** | ) | |
| | ) | **Magistrate Judge Lisa A. Jensen** |
| **GENERAL MOTORS LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO GENERAL MOTORS'**
**MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    STANDARD OF REVIEW ................................................................................. 2

II.   RELEVANT FACTUAL ALLEGATIONS .................................................... 3

III.  ARGUMENT ....................................................................................................... 6

   A.  Plaintiff Has Standing to Pursue Her Claims................................................. 6

      1.   The "Recall" Does Not Even Purport to Remedy the Brake Defect......................... 6

      2.   GM's Reliance on its "Special Coverage" Program is a Red Herring to Divert Attention from the Inadequacies of the Recall. ...................................................... 8

      3.   Plaintiff Has Not Been Compensated for the Damage to and Diminished Value of Her Vehicle. ....................................................................................... 9

   B.  GM Fails to Demonstrate that Any of Plaintiff's Requested Relief is Moot............... 10

   C.  The ICFA Claim Is Pleaded with Requisite Particularity............................................ 12

   D.  Plaintiff Adequately Alleges Presale Knowledge......................................................... 15

   E.  Plaintiff's Unjust Enrichment Claim is Well-Pleaded. ................................................ 17

   F.  Plaintiff's Claims and Requested Relief Are Not Pre-empted..................................... 17

   G.  The Primary Jurisdiction Doctrine Is Inapplicable. ..................................................... 19

   H.  Plaintiff Will Not Pursue a Claim for Common Law Negligence. ............................... 20

IV.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Indianapolis*,

    742 F.3d 720, 728 (7th Cir. 2014) ............................................................................. 3

*Avery v. State Farm Mut. Auto. Ins. Co.*,

    835 N.E.2d 801 (Ill. 2005) ..................................................................................... 13

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544, 570 (2007) ......................................................................................... 3

*Blissard v. FCA US LLC*,

    2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ........................................................... 16

*Chamberlan v. Ford Motor Co.*

    314 F. Supp. 2d 953 (N.D. Cal. 2004) ..................................................................... 19

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,

    24 F.Supp.3d 750 (N.D. Ill. 2014) .......................................................................... 10

*Disher v. Tamko Building Products, Inc.*,

    2015 WL 4609980 (S.D. Ill. July 31, 2015) ........................................................... 17

*Geier v. Am. Honda Motor Co.*,

    529 U.S. 861 (2000) ............................................................................................... 18

*Gracia v. Volvo Europa Truck, N.V.*,

    112 F.3d 298 ........................................................................................................... 18

*Hadley v. Chrysler Grp., LLC*,

    624 F. App'x 374 (6th Cir. 2015) ............................................................................. 8

*Hurley v. Motor Coach Indus., Inc.*,

    222 F.3d 377 (7th Cir. 2000) ................................................................................... 18

*In re Aqua Dots Products Liab. Litig.*,

    654 F.3d 748 (7th Cir. 2011) ................................................................................... 10

*In re Gen. Motors Corp. Pickup Fuel Tank Products Liab. Litig.*

    1993 WL 204116 (E.D. Pa. June 10, 1993) ............................................................ 20

*In re Toyota Motor Corp.*

    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................. 10

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices, & Products Liab. Litig.,*

    890 F. Supp. 2d 1210 (C.D. Cal. 2011) ................................................................. 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*

    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................. 18, 19

*In re Toyota Motor Corp.,*

    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................. 10

*In re: Gen. Motors LLC Ignition Switch Litig.*

    No. 14-MC-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ................................. 12

*IWOI, LLC v. Monaco Coach Corp.,*

    581 F.Supp.2d 994, 1003–04 (N.D. Ill. 2008) ....................................................... 15

*Jordan v. Sosa,*

    654 F.3d 1012 (10th Cir. 2011) ......................................................................... 2

*Keegan v. Am. Honda Motor Co., Inc.,*

    838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................. 16

*Kent v. DaimlerChrysler Corp.,*

    200 F.Supp.2d 1208 (N.D. Cal. 2002) ................................................................. 20

*Leon v. Cont'l AG*

    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................... 12

*Lilly v Ford Motor Co.,*

    No. 00 C 7372, 2002 WL 84603 ......................................................................... 18

*MacDonald v. Ford Motor Co.,*

    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................................. 16

*Marsikian v. Mercedes Benz USA, LLC,*

    No. CV 08-04876 AHM (JTLx), 2009 WL 8379784 (C.D. Cal. May 4, 2009) ....................... 20

*Martin v. Ford Motor Co.*

    765 F. Supp. 2d 673 (E.D. Pa. 2011) ................................................................. 12

*Mirza v. Ignite USA, LLC,*

    439 F.Supp.3d 1058 (N.D. Ill. 2020) ................................................................... 2

*Muehlbauer v. General Motors Corp.*,

    431 F.Supp.2d 847 (N.D. Ill. 2006) ................................................................. 14

*Muir v. Playtex Products, LLC*,

    983 F.Supp.2d 980 (N.D. Ill. 2013) ................................................................. 10

*Nat'l Meat Ass'n v. Brown*

    599 F.3d 1093 (9th Cir. 2010) ........................................................................ 19

*Peckerar v. General Motors, LLC*,

    Case No. 18-cv-2153-DMG-SP, 2019 WL 6825757 (C.D. Cal. July 24, 2019) ..................... 17

*Peckerar v. General Motors, LLC*,

    No. 5:18-cv-02153 (C.D. Cal. August 17, 2020) ............................................... 10

*Philips v. Ford Motor Co.*

    2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ...................................................... 11

*Phillips v. Prudential Ins. Co. of Am.*,

    714 F.3d 1017 (7th Cir. 2013) .......................................................................... 2

*Reniger v. Hyundai Motor Am.*,

    122 F. Supp. 3d 888 (N.D. Cal. 2015) ............................................................ 16

*Saltzman v. Pella Corp.*,

    No. 06 C 4481, 2007 WL 844883, at *2 (N.D. Ill. Mar. 20, 2007) ......................... 15

*Sanchez-Knutson v. Ford Motor Co.*

    52 F. Supp. 3d 1223 (S.D. Fla. 2014) ............................................................. 20

*Schiesser v. Ford Motor Co.*,

    2017 WL 1283499 (N.D. Ill. April 6, 2017) ..................................................... 18

*Schwebe v. AGC Flat Glass N. Am., Inc.*,

    No. 12 C 9873, 2013 WL 2151551 (N.D. Ill. May 16, 2013) ................................ 16

*Sloan v. Gen. Motors LLC*,

    2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ................................................... 16

*Spokeo, Inc. v. Robins*,

    —— U.S. ——, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016) .................................. 2

*Sprietsma v. Mercury Marine*,

    537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002) ........................................ 2

*Strama v. Toyota Motor Sales, U.S.A., Inc.,*

    No. 15 C 9927, 2016 WL 561936 (N.D. Ill. February 12, 2016) ............................................ 8

*Sugasawara v. Ford Motor Co.,*

    No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ................................... 8

*Torres v. Pallets 4 Less, Inc.,*

    No. 14 CV 4219, 2015 WL 920782 (N.D. Ill. March 2, 2015) ................................................. 3

*Tykla v. Gerber Prod. Co.,*

    No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) ..................................................... 14

*United States ex rel. Sheet Metal Workers International Association, Local Union 20 v. Horning*

    *Investments, LLC,*

    828 F.3d 587 (7th Cir. 2016) ........................................................................................................ 3

*United States v. Gen. Motors Corp.*

    518 F.2d 420 (D.D.C. 1975) ...................................................................................................... 20

*Verde v. Stoneridge, Inc.*

    137 F. Supp. 3d 963 (E.D. Tex. 2015) ...................................................................................... 11

*Weiss v. Gen. Motors LLC,*

    418 F. Supp. 3d 1173 (S.D. Fla. 2019) ..................................................................................... 16

*White v. DaimlerChrysler Corp.,*

    856 N.E.2d 542 (Ill. App. Ct. 2006) ......................................................................................... 16

*Wiegel v. Stork Craft Manufacturing,*

    891 F.Supp.2d 941 (N.D. Ill. 2012) ............................................................................................ 8

*Williams v. Ala. Dept. of Transp.*

    119 F. Supp. 2d 1249 (M.D. Ala. 2000) ................................................................................... 20

*Winzler v. Toyota Motor Sales U.S.A., Inc.*

    681 F.3d 1208 (10th Cir. 2012) ................................................................................................. 11

*Zahn v. N. Am. Power & Gas, LLC,*

    815 F.3d 1082 (7th Cir. 2016) ..................................................................................................... 2

*Zarinebaf v. Champion Petfoods USA Inc.,*

    18 C 6951, 2019 WL 3555383 (N.D. Ill. July 30, 2019) ......................................................... 14

**Statutes**

Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") ......................................... passim

In its latest bid to dismiss this action, GM continues to ignore and distort the allegations of Plaintiff's Third Amended Complaint ("TAC") and distort the nature of its 2019 Safety Recall that merely enhances a software failsafe—fixing a second and separate defect in the vehicles' brake system. As alleged in the TAC, GM's recall does nothing to rectify the mechanical design defect present in the braking system of every Class Vehicle sold (the "Brake Defect")[1] -- GM merely replaces defective parts with the same defective parts that are reasonably expected to fail in the future. GM cannot hide behind a voluntary recall that merely enhances a software failsafe to make Class Vehicles less dangerous after they manifest the irreparable Brake Defect alleged in this action. By adjusting the performance of a software failsafe and leaving the mechanical vacuum pump unaddressed, GM's voluntary recall effectively targets an entirely distinct design defect in Class Vehicles—a defect in their programming, not their hardware components.

GM's post-sale offer of an extended warranty to enhance "customer satisfaction" has no effect on Plaintiff's ICFA claim. Plaintiff seeks to recover the depressed market value caused by GM's nondisclosure of an irreparable mechanical defect in the braking system at the time of sale— not the cost of replacing one defectively designed pump with another. In addition, in light of this Court's February 18, 2020 Order dismissing Plaintiff's First Amended Complaint (ECF No. 90), Plaintiff has also provided additional allegations describing, in detail, GM's misrepresentations and the timeframe when she encountered them. GM has failed to meet its burden under FRCP 12(b)(6) and its Motion to Dismiss should be denied.

---

[1] The "Brake Defect" is defined as the "sudden and unexpected loss of vacuum in the brake booster, requiring replacement of the brake booster and/or the system's vacuum assist pump. …When Class Vehicles suddenly and unexpectedly lose pump output, the resulting brake system failure makes Class Vehicles difficult to stop: the brake pedal becomes hard, requiring multiple times force from the driver to slow the vehicle, and stopping distance is severely and suddenly compromised." (TAC    2-3).

## I. STANDARD OF REVIEW

To establish Article III standing, a plaintiff must allege that they suffered an injury-in-fact, that is fairly traceable to the challenged conduct of the defendant, and that such injury is likely redressable by a favorable judicial decision. *Mirza v. Ignite USA, LLC,* 439 F.Supp.3d 1058, 1064 (N.D. Ill. 2020) (citing *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)). In the context of a 12(b)(1) motion, as in resolving a Rule 12(b)(6) motion, a court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the nonmovant's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

Federal law preempts state law in three situations: (1) when the federal statute explicitly provides for preemption; (2) when Congress intended to occupy the field completely; and (3) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine,* 537 U.S. 51, 64–65, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002) (internal quotation marks and citations omitted).

"Prudential mootness...addresses not the *power* to grant relief, but the court's *discretion* in the exercise of that power." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal quotation marks and alteration omitted). "In general, the prudential mootness doctrine only applies where...a plaintiff seeks injunctive or declaratory relief." *Id.*

"Primary jurisdiction" is a permissive doctrine that applies when resolving a claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the

special competence of an administrative body." *United States ex rel. Sheet Metal Workers International Association, Local Union 20 v. Horning Investments, LLC,* 828 F.3d 587, 592 (7th Cir. 2016). In such cases, a federal court may stay the proceeding to allow the agency to take the first look at the case. *Id.*

To survive a Rule 12(b)(6) motion, a complaint must provide the defendant with fair notice of the claims and it "must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor." *Torres v. Pallets 4 Less, Inc.,* No. 14 CV 4219, 2015 WL 920782, at *2 (N.D. Ill. March 2, 2015).

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff brings this action because her vehicle, like all Class Vehicles, is plagued by the Brake Defect, a design defect that causes a dangerous safety hazard. TAC ¶2. Despite having actual knowledge of the Brake Defect and the dangers it posed since at least 2014, prior to the sale to Plaintiff, GM made numerous material omissions, omitting what it knew from all advertising, promotion and other contacts with Plaintiff and the Class Members. ¶¶4, 7, 13, 30-35. ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ GM was aware of accidents and near-accidents associated with the Brake Defect prior to the sale to Plaintiff, and opened a root cause investigation following a September 2014 Class Vehicle collision, which concluded that the Brake Defect results in total loss of vacuum pump supply to the brake booster, resulting in a hard brake

pedal, very little brake pedal travel and extended stopping distances. ¶¶47-49. GM's presale knowledge (and material omissions) include issuing service bulletins to its certified dealers (but not to customers, including Plaintiff) that specifically admitted the existence of the Brake Defect, including one in February of 2015 (before Plaintiff purchased her vehicle) that informed dealers about the existence of the Brake Defect, and informed those dealers about how to diagnose and repair the Brake Defect. ¶¶50-55.

GM's knowledge of the Brake Defect is shown by its receipt of numerous warranty returns, customer complaints and NHTSA VOQs that relate to the Brake Defect. ¶57; ¶¶86-111. A series of other similar incidents in 2017 and 2018 led NHTSA to open an investigation into the Brake Defect in late 2018, and by March 2019, in a letter to NHTSA about the Brake Defect, GM identified 20,333 warranty claims, 118 collisions, 19 confirmed injuries and 78 incidents of property damage associated with the Brake Defect. ¶¶64-71. GM's recall in September of 2019 failed to notify Class Members of the true nature and repair (*i.e.,* a new vacuum pump) and (2) failed to mitigate or eliminate the Brake Defect. ¶¶72-73. Plaintiff's vehicle has undergone repairs, yet remains defective, and GM's recall is inadequate, as scores of Class Members that have received the recall repair have complained to NHTSA that they continue to experience the Brake Defect. ¶¶74-83. GM knew about the Brake Defect and could have disclosed it at the point of sale or afterward, but chose not to, instead making a series of material omissions. ¶¶113-129. Plaintiff and the Class continue to be damaged by the ongoing devaluation of their vehicles and out-of-pocket expenses paid for repairs associated with the Brake Defect. ¶¶84, 121.

Safety and durability were among the most important factors in Plaintiff's decision to purchase a vehicle. *Id.* at ¶22. Plaintiff read several GM ads in the three-day timeframe immediately before she purchased her vehicle, including an ad that stated "The all-new Chevrolet

Tahoe and Suburban have been designed to be more functional and refined, while offering more safety features and a greater range of advanced technologies for today's connected customers. Both the Tahoe and Suburban offer first-class comfort, unmatched capability and innovative technologies with new standard content. See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/suburban/2015.detail.html/content/Pages/news/us/en/2014/mar/0224-2015-tahoe-specs1.html." *Id*. at ¶24. Another ad stated: "Designed to keep you and your family safe, the improved 2015 Chevrolet Tahoe has an array of advanced safety technology, features include a rearview backup camera, antilock disc brakes, traction and stability controls, full-length side curtain airbags, and OnStar service with automatic crash notification, remote door unlocking, turn-by-turn navigation, and 24/7 roadside assistance." *Id*. at ¶26. Although Defendant was aware of the Brake Defect at this time, none of these materials disclosed its existence. *Id*. at ¶30. Plaintiff relied on this information and she reasonably expected that Defendant would disclose the existence of any dangerous defect. *Id*. at ¶33. Plaintiff would not have purchased the Tahoe or would have paid less for it had she known about the Brake Defect. *Id*. at ¶35.

Plaintiff first experienced the Brake Defect during the summer of 2018 when the brakes in her vehicle became hard and wouldn't slow the vehicle down. *Id*. at ¶36. As a result of the Brake Defect, Plaintiff struck a 1990s red SUV that was parked on the side of the road behind her driveway, causing damage to her vehicle, including a broken taillight, as well as a bent side fender and bumper. *Id*. In September 2018 Plaintiff's experienced the Brake Defect again, when she was only able to stop the vehicle by applying all of her body weight to the brake pedal, nearly hitting another vehicle in the process. *Id*. at ¶39. The next day, Plaintiff attempted to take her vehicle to

the dealership for service, but as she was backing out of her driveway, she experienced the Brake Defect for a third time, having to put her full weight on the brake to stop the vehicle. *Id.* at ¶42.

## III. ARGUMENT

### A. Plaintiff Has Standing to Pursue Her Claims.

#### 1. The "Recall" Does Not Even Purport to Remedy the Brake Defect.

GM makes meritless assertions that Plaintiff "has no actual injury because GM's recall and Special Coverage offer complete relief" for the Brake Defect and that Plaintiff's allegations about the inadequate recall are "pure speculation." (ECF No. 118 at 7). Whether Plaintiff has sought the reprograming recall or not is irrelevant, because she specifically alleges that the recall is *not a remedy* to the Brake Defect, and the evidence that the reprogramming recall does not remedy the Brake Defect is strong and specific. *See* (TAC ¶10) ("[T]he Recall did nothing to cure the Brake Defect"); (TAC ¶13) ("[T]he only way to remedy the Brake Defect is by replacing the vacuum pump with an improved one," and yet "GM implemented a band-aid fix that fails to mitigate or eliminate the Brake Defect."); (Ex. C of the TAC) ███████████████████████████
████████████████████████████████████████████████████

GM's erroneous characterization of Plaintiff's allegations as "conclusory" and "unsupported by facts" once again ignores Plaintiff's allegations. *See* (TAC ¶72). ("GM's Recall (1) failed to notify Class Members of the true nature and repair (*i.e.,* a new vacuum pump) for the Brake Defect and (2) failed to mitigate or eliminate the Brake Defect. (*See* Exhibit B of the TAC).”); (TAC ¶¶74-75) ("Plaintiff's vehicle has undergone repair work, yet remains defective. As evidence of the Recall's inadequacy, scores of Class members who have received the Recall repair have complained to NHTSA that they still experience the Brake Defect, and others complain the "repair" made braking response worse."); (TAC ¶129(g)) "Had GM disclosed the Brake Defect, *Plaintiff and other Class members would not have purchased / leased their Class Vehicle,*

*or certainly would have paid less for it.*") (emphasis in original).

The TAC also alleges that the recall implemented for the software "failsafe" is itself ineffective, as the "Recall repair does not remedy the abnormally hard brake pedal or the increased stopping distances caused by the Brake Defect." (TAC ¶ 2, Ex. C of the TAC, GM000047379)

██████████████████████████████████████████████████████████████████████████

████████████████████████████████ The TAC also offers multiple reports from drivers who have participated in the faulty recall process and still experience the same, or even worse, braking issues. (TAC ¶¶75-83). These examples plausibly establish that GM, *based on its own documents*, is neither replacing nor paying for the replacement of failed defective parts. *See* (TAC ¶¶75, 78). Further, the TAC offers consumer complaints demonstrating that GM's recall simply does not work to abate the hazard caused by the Brake Defect. *See, e.g.,* (TAC ¶¶75, 77-78, 82-83).

The recall fails to remedy the underlying part failure alleged by Plaintiff, and the TAC contains ample allegations plausibly demonstrating so. GM does not represent that its software "band-aid" makes vehicles as safe, controllable, or functional as a vehicle with a working mechanical braking system. GM's "voluntary recall" is not a remedy for vacuum pump failures; it is an attempt to minimize GM's exposure to the consequences of a consumer fraud already perpetuated on Plaintiff and millions of other drivers, each of whom paid for a vehicle with an undisclosed design defect in its mechanical braking system.

GM therefore cannot rely on cases where a manufacturer's remedies unquestionably resolved the defect. *See Strama v. Toyota Motor Sales, U.S.A., Inc.,* No. 15 C 9927, 2016 WL 561936, at *2 (N.D. Ill. February 12, 2016) (Toyota contended that its warranty enhancement program repaired the defect and would "cover all of the past and future costs" to plaintiffs); *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal.

Aug. 21, 2019) ("the post-recall remedy Vehicles perform as they would without the Defect");

*Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) (no allegations demonstrating the recall was ineffective).[2]

## 2. GM's Reliance on its "Special Coverage" Program is a Red Herring to Divert Attention from the Inadequacies of the Recall.

To divert attention from the recall's inadequacies, GM reaches far outside Plaintiff's pleadings and points to its non-binding Special Coverage Adjustment instituted in October 2019.[3] Plaintiff did not plead any facts in the TAC regarding GM's voluntary special coverage because it likewise fails to provide Plaintiff with any meaningful or contractual relief. The special coverage operates as an unenforceable, gratuitous extended warranty that expands the terms of all Class Vehicle's original factory warranty for additional years and mileage. The special coverage merely replaces defective parts that have failed with the same—although new—defective parts, and only after the failure has manifested. GM's contention that Plaintiff's economic injury is "too speculative" because they have not sought all remedies available under the special coverage programs disregards Plaintiff's allegations that the recall is not a remedy to the Brake Defect. *See* (TAC ¶10) ("[T]he Recall did nothing to cure the Brake Defect"); (TAC ¶13) ("[T]he only way to remedy the Brake Defect is by replacing the vacuum pump with an improved one," and yet "GM

---

[2] GM's assertion of a lack of causation is equally meritless. This is not a case where Plaintiff alleged nothing about the inadequacy of a recall – to the contrary, Plaintiff has included detailed and specific allegations that demonstrate GM's recall does not remedy the Brake Defect present in her vehicle. *See, e.g.,* TAC, ¶¶12, 75-83. GM's case law is simply inapposite. *See Wiegel v. Stork Craft Manufacturing*, 891 F.Supp.2d 941, 943 (N.D. Ill. 2012) (allegations lacking regarding inadequacy of recall); *Sugasawara*, 2019 WL 3945105 at *5 ("Plaintiffs' allegation that Ford's proffered remedy is ineffectual is conclusory and speculative.").

[3] GM's request that this Court take judicial notice of the special coverage document should be rejected as Defendant's own unsworn hearsay is not a public document "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiff opposes the judicial notice of this document for the truth of its contents and representations made therein by GM are outside or contrary to Plaintiff's allegations.

implemented a band-aid fix that fails to mitigate or eliminate the Brake Defect."); (TAC, Ex. C of the TAC, GM000047379) ██████████████████████████████████████

██████████████████████████████████████

GM ignores Plaintiff's allegations when it argues that "Plaintiff does not allege that she sought the remedies that GM made available to her, so any allegation that these remedies are 'inadequate' is pure speculation." *See* (TAC ¶75)("[S]cores of Class Members who received the Recall repair have complained to NHTSA that they still experience the Brake Defect, and others complain the "repair" made braking response worse."); (TAC ¶12) ("The Recall repair does not remedy the abnormally hard brake pedal or the increased stopping distances caused by the Brake Defect. (*See* Exhibit C [of the TAC]). In fact, the Recall repair has exacerbated the problem for many who have received the repair."). The TAC demonstrates that each Class Vehicle suffers from a known and now admitted safety hazard, which has manifested in Plaintiff's vehicle on three separate occasions. (TAC ¶¶36-42). As evidenced by numerous reports from drivers who have participated in the faulty recall process, consumers continue to experience the same, or even worse, braking issues after the reprogramming. (TAC ¶¶75-83). Worse still, the recall fails to inform Plaintiff and Class Members about the danger that still lingers as a result of the Brake Defect. (TAC ¶¶13, 84). Plaintiff has sufficiently pled injury and causation to establish Article III standing.

### 3. Plaintiff Has Not Been Compensated for the Damage to and Diminished Value of Her Vehicle.

Plaintiff has suffered and continues to suffer concrete injuries as a result of the Brake Defect. As an initial matter, GM's effort to distinguish this case from the recent decision in *Peckerar v. General Motors, LLC*, No. 5:18-cv-02153 (C.D. Cal. August 17, 2020) -- where, looking at virtually identical facts, the District Court concluded that standing was satisfied – is unavailing, and its assertion that "plaintiff here does not allege any property damage" completely ignores Plaintiff's allegation in the TAC: "Her own car sustained damage of a broken taillight to

the rear, as well as a bent side fender and bumper." (TAC ¶37). Plaintiff also lost money as a result of GM's omission of a known design defect in the vehicles' braking system, alleging that, "Had Plaintiff or any other reasonable person known that the 2015 Chevrolet Tahoe (or any other Class Vehicle) suffered from the Brake Defect, they would not have purchased a Class Vehicle or would have paid less to do so." (TAC ¶35). *See In re Aqua Dots Products Liab. Litig.,* 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.") (citations omitted). This Court has applied this approach to comparable situations. *See, e.g., Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.,* 24 F.Supp.3d 750, 756–57 (N.D. Ill. 2014) (citing *Aqua Dots*); *Muir v. Playtex Products, LLC,* 983 F.Supp.2d 980, 986 (N.D. Ill. 2013) (holding that a claim that consumer would not have purchased product or not have paid a premium price for the product is sufficient injury to establish standing).[4]

The TAC explicitly pleads the damages caused by GM's omissions. *See* (TAC ¶¶163-64) ("As a direct and proximate result of the foregoing, Plaintiff Quitno and the Class have been damaged…including…diminution of value…"). It is far from speculative that vehicles *admittedly* doomed to experience repeated, unsafe, and expensive mechanical failures of their braking systems are worth less than vehicles with flawless braking systems—especially where consumers are still without a remedy for those mechanical part failures through GM's "recall." standing.

**B. GM Fails to Demonstrate that Any of Plaintiff's Requested Relief is Moot.**

GM's assertions concerning prudential mootness should be rejected, as it completely ignores Plaintiff's fundamental allegation about an appropriate remedy: "[T]he only way to remedy the Brake Defect is to replace the vacuum pump with an *improved* one…." (TAC ¶13)

---

[4] *See also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) (where plaintiffs "bargained for safe, defect-free vehicles, but instead received unsafe, defective vehicles…[t]he overpayment for the defective, unsafe vehicle constitutes the economic-loss injury that is sufficient to confer standing").

(emphasis added). Neither GM's Recall nor its Special Coverage[5] provide for that remedy, which would address the underlying, mechanical design defect alleged by Plaintiff, and therefore the recall and Special Coverage fail to provide the complete equitable relief Plaintiff seeks. *See Philips v. Ford Motor Co.*, 2016 WL 693283, *8 (N.D. Cal. Feb. 22, 2016) (rejecting an application of prudential mootness, the court found that plaintiffs "request relief—damages for losses in market value and reimbursement without regard to a specific deadline—that Ford's recall does not provide"); *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 972 (E.D. Tex. 2015) ("[t]he Recall Report does not provide for the exact relief requested by [Plaintiff]").

GM's voluntary recall falls far short of "providing plaintiff 'precisely the relief [they] seek[].'" *Cheng*, 2013 WL 3940815 at *2 (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012)). GM's "recall" does not purport to repay Plaintiff or any Class Member for their actual damages—the benefit of their bargain—caused by GM's omission of a known safety defect in Class Vehicles. Critically, the plaintiffs in *Winzler* and *Cheng* requested only declaratory and injunctive relief through a court-ordered recall and did not seek damages. This distinction is important as "most courts have held that prudential mootness applies only where 'a plaintiff seeks injunctive or declaratory relief.'" *Philips v. Ford Motor Co.*, 2016 WL 693283, *7 (N.D. Cal. Feb. 22, 2016) (citations omitted). Here, however, Plaintiff seeks injunctive relief, declaratory relief, and damages, and "[t]his request for damages thus conflicts with the general understanding that prudential mootness should apply only to situations where the parties request equitable relief." *Id.*[6]

---

[5] GM's attempt to distinguish the instant case from the *Peckerar* action -- where the Central District of California recently denied GM's motion to dismiss and rejected many of these same arguments -- fails in the context of prudential mootness. GM's claim that the *Peckerar* plaintiffs made allegations about GM's Special Coverage and that Plaintiff Quitno did not -- *see* GM's Memo. at p. 10, fn. 6 -- is simply mistaken. In fact, neither the *Peckerar* plaintiffs nor Plaintiff Quitno made any allegations about the Special Coverage, and the reason was simple: like its recall, GM's Special Coverage fails to remedy the Brake Defect. GM's request for judicial notice of the Special Coverage should be rejected.

[6] *See also Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1219 (S.D. Fla. 2017) (rejecting same "prudential mootness" argument offered by GM here and noting "'As the court observed in *Philips v. Ford Motor Company*, …*Winzler* and *Cheng* are unpersuasive where plaintiffs seek 'recovery for losses in market value.'").

Here, "Plaintiffs seek a form of monetary recovery that the recall simply does not provide." *Philips*, 2016 WL 693283 at *7. *See also In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, *40 (S.D.N.Y. July 15, 2016) ("Because the recalls, even those sufficient to remedy the defects, do not compensate Plaintiffs fully for the damages sought here, the Court declines to exercise its discretion to dismiss the remaining claims as prudentially moot."); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682 (E.D. Pa. 2011) ("A court-ordered recall may require Defendant to provide a more expansive remedy than the one proposed in the recall. Moreover, since a court proceeding may result in a remedy such as money damages, Plaintiff's claims are not moot."). When, as here, a recall does not render Plaintiff's damages claims moot, "Plaintiff[] may still be able to recover economic losses should their claims succeed." *Leon v. Cont'l AG,* 301 F. Supp. 3d at 1220.

## C. The ICFA Claim Is Pleaded with Requisite Particularity.

Cognizant of this Court's prior ruling on the motion to dismiss her First Amended Complaint (ECF No. 90), Plaintiff has alleged, with specificity, the materials she reviewed in advance of purchasing her Tahoe, as well as the timeframe that she reviewed those statements. *See, e.g.,* TAC ¶¶24-26. GM's assertions that these statements are not actionable is meritless. For example, with respect to its statements in TAC ¶24, GM admits that it described the Tahoe as having been "designed to be more functional, while offering more safety features and a greater range of advanced technologies" and that the Tahoe "offer[s] first-class comfort, unmatched capability and innovative technologies." TAC ¶24. Contrary to GM's assertions, these statements are not mere puffery, but are intended to describe the safety and technological features of the Tahoe, including the proper functioning of the Tahoe's braking system. Plaintiff's allegation is bolstered by the "Tahoe" link under "More Product Information" which is prominently featured just above the text on GM's page where Plaintiff learned more about what those representations meant, including that "[t]he 2015 Tahoe is engineered to deliver a quieter, more-controlled ride

and improved steering and braking feel," and that the Tahoe has "[a]dditional chassis and suspension features" such as "[n]ew four-wheel-disc brake system with Duralife™ brake rotors that offer up to double the service life" and "[r]evisions that improve pedal feel for more-confident braking performance." TAC ¶24. It is readily apparent that Plaintiff and any reasonable consumer would find these statements misleading -- in particular the reference to "designed to be more functional, while offering more safety features and a greater range of advanced technologies" -- in that they did not mention the Brake Defect. References to "more safety features" and "greater range of advanced technologies" are simply not "meaningless superlatives that no reasonable person would take seriously"[7] especially in the context of the safety of – and ability to stop -- a specific vehicle (the Chevrolet Tahoe) that typically weighs over two and half tons, and where GM has concealed a serious safety flaw in that vehicle's braking system. These statements are categorically different from those that courts have determined were not actionable under ICFA. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005) (court found that "quality replacement parts" and "very high performance criteria" were not actionable); *Zarinebaf v. Champion Petfoods USA Inc.*, 18 C 6951, 2019 WL 3555383, at *7 (N.D. Ill. July 30, 2019) (court found "nourish as nature intended" nonactionable puffery because it was "too vague to be disproven"); *Tykla v. Gerber Prod. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) (statement like "most nutritious" not actionable because Gerber's statements were referring to baby food as a whole and "[n]utrition is a nebulous concept").

Similarly, the Court should reject GM's effort to distance itself from the statements in TAC ¶26. GM's statement that the Tahoe "has an array of advanced safety

---

[7] *Speakers of Sport, Inc. v. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999).

technology…includ[ing]…antilock disc brakes" is similarly misleading – in light of the glaring omission of any mention of the Brake Defect -- to the statements in TAC ¶24, and GM's suggestion that this is merely the statement of an "independent dealership" invites the Court to inappropriately resolve an issue of fact on a 12(b)(6) motion, where Plaintiff has specifically alleged that these dealerships are agents of GM, with GM exercising control over the dealerships through its Dealer Agreements. TAC ¶¶21, 33, 119-20.

Finally, the allegations of the TAC, including those in ¶¶24 and 26, constitute a sufficient basis for concluding that Plaintiff has alleged actionable omissions under the ICFA, including that GM manufactured and sold Class Vehicles (including Plaintiff's Chevrolet Tahoe) with the Brake Defect, that GM had presale knowledge of the Brake Defect, the GM concealed the defect from Plaintiff, and that Plaintiff would not have purchased the Tahoe had she known of the Brake Defect. *See Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 867-68 (N.D. Ill. 2006) (Court denied motion to dismiss ICFA claim where plaintiff alleged GM's omission of defect in anti-lock braking system). As such, under both an omission and misrepresentation theory, Plaintiff has adequately alleged an ICFA violation consistent with FRCP 9(b) and GM's arguments to the contrary should be rejected. *Stavropoulos*, 2014 WL 7190809, at *2; *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *2 (N.D. Ill. Mar. 20, 2007); *IWOI, LLC v. Monaco Coach Corp.,* 581 F.Supp.2d 994, 1003–04 (N.D. Ill. 2008).[8]

---

[8] Plaintiff also believes these allegations sufficiently establish an ICFA claim under ICFA's "unfairness" prong, in that – taken as a whole – the allegations of the TAC demonstrate that GM's conduct was patently against public policy and unscrupulous.

**D. Plaintiff Adequately Alleges Presale Knowledge**

GM's assertion that Plaintiff fails to plausibly allege its pre-sale knowledge of the Brake Defect is meritless, as Plaintiff's allegations concerning GM's February 2015 Service Bulletin and the events that precipitated GM's service campaign plausibly demonstrate that GM had knowledge of the Brake Defect before Plaintiff purchased her vehicle in September of 2015. The February 2015 service bulletin expressly identifies the Brake Defect[9]: "Condition/Concern … a customer may comment on a hard brake pedal or that increased effort is needed to depress the brake pedal." (TAC ¶52, Ex. J of the TAC). The service bulletin applies uniformly to eight Class Vehicles, including Plaintiff's 2015 Chevrolet Tahoe, and recommends that if technicians find engine oil "in the brake booster and/or the booster vacuum line," the technician should replace the: (1) vacuum pump; (2) vacuum line between the booster and the pump; (3) brake booster; and (4) master cylinder. (*Id.*). Therefore, not only did GM acknowledge the existence of the Brake Defect in February 2015, it also surreptitiously advised its certified dealers—including the one from which Plaintiff purchased her Class Vehicle (TAC ¶¶21, 53, 55)—on how to diagnose and repair the Brake Defect.

The service campaign drafting process does not happen overnight, especially for a repair as extensive as GM's February 2015 service campaign. (TAC ¶54). It takes many months to identify the problem, devise a fix, test that fix, and then implement it in the field. (*Id.*). Thus, it should come as no surprise that courts rely on technical service bulletins (TSBs) like GM's February 2015 Service Bulletin to support allegations of a defendant's pre-sale knowledge. *See,*

---

[9] GM's claim that the service bulletin does not "address[] the specific brake defect that plaintiff alleges" defies a plain reading of the TAC. In fact, Plaintiff's allegations describing the multiple instances when her vehicle experienced the Brake Defect (TAC ¶3) use the same description GM provided in it 2015 Service Bulletin: her brakes became hard and she had to use her full body weight on the brake pedal to bring her Chevrolet Tahoe to a stop. (TAC ¶¶36-42).

*e.g.*, *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 900 (N.D. Cal. 2015) ("[A]t this stage, where the Court is bound to accept the pleadings as true, the pleadings [relying on TSBs] form a plausible basis for belief that Defendants knew . . . of a defect."); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1185 (S.D. Fla. 2019) (TSBs contributed to court's finding "that the Plaintiff has sufficiently alleged GM's knowledge of the defect"). In fact, in finding that a plaintiff plausibly alleged a defendant's knowledge, some courts have even relied on TSBs that "did not reference certain class vehicles" where a plaintiff alleges that "the defects [] noted [in a TSB] are found in all class vehicles." *See Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 934-35 (C.D. Cal. 2012); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093-94 (N.D. Cal. 2014).

Here, because the February 2015 Service Bulletin specifically identifies (almost verbatim) the Brake Defect extensively pleaded in the complaint (TAC ¶3), and because there is no dispute that the service campaign was released before Plaintiff's vehicle was sold in September 2015 (Ex. J of the TAC), Plaintiff has adequately pleaded GM's pre-sale knowledge.[10] Accordingly, under materially identical facts in the *Peckerar v. General Motors, LLC* companion case, Judge Gee found that "Plaintiffs have adequately pleaded that Defendant had knowledge of the defect before selling Plaintiffs their vehicle." Case No. 18-cv-2153-DMG-SP, 2019 WL 6825757, at *4 (C.D.

---

[10] For these reasons, GM's case law is inapposite. *See Sloan v. Gen. Motors LLC*, 2017 WL 3283998, *7 (N.D. Cal. Aug. 1, 2017) (complaints only put GM on notice of "excessive oil consumption and consequential engine damage," and "Plaintiffs concede[d] that none of the complaints explicitly states" a specific cause); *Blissard v. FCA US LLC*, 2018 WL 6177295, *13 (C.D. Cal. Nov. 9, 2018) ("Although safety bulletins can demonstrate knowledge, there is no statement in the cited STAR Case Reports that FCA was aware of the specific defect alleged in the Complaint."); *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *4 (N.D. Ill. May 16, 2013)(failure to plead facts showing defendant knew of defect when the plaintiff purchased windows at issue); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542 (Ill. App. Ct. 2006)(plaintiff failed to specify how defendant knew product at issue was defective).

Cal. July 24, 2019) (finding that GM's February 2015 Service Bulletin sufficiently supported plaintiffs' allegations of GM's pre-sale knowledge of the Brake Defect).[11]

### E.  Plaintiff's Unjust Enrichment Claim is Well-Pleaded.

Plaintiff's unjust enrichment claim is well-pleaded, in light of the allegations that support her ICFA claim.  *See* Section C, *supra*.  GM's alternative bases for dismissal are unavailing.  Where an unjust enrichment claim sounds in tort, as it does here, the claim survives even if there is a governing contract.  *See Disher v. Tamko Building Products, Inc.*, 2015 WL 4609980 at *4 (S.D. Ill. July 31, 2015).  In addition, unlike the *Demaria* action, where plaintiff "does not allege that [she] purchased her car from Nissan or from anyone acting on behalf of Nissan," Plaintiff here clearly alleges that she purchased her Chevrolet Tahoe from a certified Chevrolet dealer (and GM's agent). TAC ¶¶15, 20-21.

### F.  Plaintiff's Claims and Requested Relief Are Not Pre-empted.

GM's preemption argument, which was rejected by Judge Dolly Gee on virtually identical facts in *Peckerar*, should also be rejected here.  GM, without much analysis, seeks to dismiss

---

[11] While the February 2015 Service Bulletin conclusively establishes GM's pre-sale knowledge of the Brake Defect prior to the sale of Plaintiff's vehicle, it is not Plaintiff's only basis for establishing GM's notice and knowledge. For example, before instituting the 2015 service campaign (and over a year prior to the sale of the Chevrolet Tahoe to Plaintiff), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shortly thereafter, when GM was notified of yet another Class Vehicle collision that occurred in September 2014 due to the Brake Defect, it opened a root cause investigation into the collision, revealing to GM that the Brake Defect can result in a total loss of vacuum supply to the brake booster, causing a hard brake pedal, very little brake pedal travel, and extended stopping distances. TAC ¶48. GM continued to receive collision reports of brake failures in Class Vehicles (TAC ¶¶13, 55), finally prompting GM to issue the February 2015 Service Bulletin to all its certified dealerships, (TAC ¶51). This timeline plausibly establishes that GM was not only *aware* of the Brake Defect before September of 2015, but that GM had already extensively investigated the Brake Defect, understood its safety implications, and had released a TSB countermeasure that attempted—but failed—to remedy the Brake Defect. (TAC ¶¶46-53). Taken as a whole, Plaintiff's allegations conclusively establish that GM had knowledge of the Brake Defect before the sale of Plaintiff's vehicle in September of 2015.

Plaintiff's "recall-related claims" based on sweeping, conclusory assertions that this litigation conflicts with the objectives of the Safety Act and interferes with NHTSA's supervision of GM's recall to reprogram Class Vehicle's braking software. GM's argument should be rejected because GM has failed to show how any of Plaintiff's claims are preempted by the Safety Act or federal law. Nothing Plaintiff has requested by way of equitable remedy – and none of the paragraphs that GM points to in the TAC -- seeks to impose requirements that conflict with the Safety Act. Moreover, Plaintiff seeks to represent a class of Illinois consumers, and could not plausibly be said to be asking for a nationwide recall, under any fair reading of her allegations. The cases GM relies upon are distinguishable on their facts. *See Lilly v Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *4 (plaintiffs' claim explicitly sought nationwide recall); *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 298 (plaintiff sought to impose windshield retention standard where NHTSA had expressly declined to impose one); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377 (7th Cir. 2000) (plaintiff sought to impose seat belt/airbag standard that conflicted with NHTSA standard); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (plaintiff sought to impose airbag standard that conflicted with NHTSA standard); *Schiesser v. Ford Motor Co.*, 2017 WL 1283499 (N.D. Ill. April 6, 2017) (plaintiff's requested relief "clearly seeks a [nationwide] recall" that would conflict with the Safety Act).

Conflict preemption exists only where state law conflicts with federal law, either because it's impossible to comply with both laws or because state law stands as an obstacle to accomplishing the purposes of federal law. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) (citing *Nat'l Meat Ass'n v. Brown*, 599 F.3d 1093, 1097 (9th Cir. 2010)). There is a presumption against implied preemption of state law in areas traditionally regulated by the states. *Chamberlan v. Ford*

*Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D. Cal. 2004). When the presumption applies, it is the defendant who bears the burden of showing that it was Congress' "clear and manifest" intent to preempt state law. *Id.* Determining whether the presumption against preemption applies turns on whether the area of law is a field which the states have traditionally occupied or, alternatively, an area where there has been significant federal presence. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d at 1196.

Here, the relevant area of law is not that of recalls, but rather of motor vehicle safety and unfair business practices. Therefore, the presumption against preemption is triggered because each "is an area of traditional State police power." *Chamberlan*, 314 F. Supp. 2d at 958 ("The claim for which Plaintiffs seek relief arises in the fields of motor vehicle safety and fraudulent or unfair business practices. Motor vehicle safety is an area of traditional State police power."). Because GM has not met its burden of showing that it was Congress' "clear and manifest" intent to preempt State law (*Chamberlan*, 314 F. Supp. 2d at 692), GM's attempt to dismiss Plaintiff's claims on preemption grounds should be rejected.

### G. The Primary Jurisdiction Doctrine Is Inapplicable.

There is no basis to apply the "primary jurisdiction" doctrine in this case because Plaintiff seeks relief for an unremedied mechanical defect that was not disclosed as required by state law. The TAC does not seek to interfere with NHTSA's regulatory expertise. Nothing in the complaint seeks to challenge, reverse, or otherwise undermine GM's software recall—this lawsuit seeks additional remedies for unresolved issues as provided by state law. Accordingly, there is no basis for the Court to apply the primary jurisdiction doctrine.[12]

---

[12] The permissive primary jurisdiction doctrine "cannot be applied mechanically" because, as the Supreme Court indicated, "'no fixed formula exists for applying the doctrine[.]'" *In re Gen. Motors Corp. Pickup Fuel Tank Products Liab. Litig.*, 1993 WL 204116, at *3 (E.D. Pa. June 10, 1993) (quoting *Western Pac. R.R. Co.*, 352 U.S. at 64). "[T]here is a heavy presumption against invoking primary jurisdiction, as the

GM contends that Plaintiff's claims for equitable relief should be dismissed because they interfere with NHTSA's regulatory expertise. That is simply not the case as Plaintiff seeks the relief afforded by Illinois law, not a litigation of the government's oversight decisions. Plaintiff's consumer protection claims are well within the conventional experience of this Court, and do not require NHTSA or the Department of Transportation to intervene. This Court should align itself with the well-reasoned cases in district courts around the country that have declined the primary jurisdiction doctrine in cases alleging defects in vehicles that create liability under state law.[13]

**H. Plaintiff Will Not Pursue a Claim for Common Law Negligence.**

Plaintiff does not oppose the dismissal of Count III without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's TAC should be denied.[14]

Dated: September 30, 2020                 Respectfully submitted,

                                          **AMBER QUITNO, Individually and On
                                          Behalf of All Others Similarly Situated,**

                                          /s/Andrew C. Ficzko
                                          Ryan F. Stephan
                                          James B. Zouras

---

court has a 'virtually unflagging obligation' to exercise jurisdiction" over cases appropriately before it. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1238 (S.D. Fla. 2014) (quoting *Williams v. Ala. Dept. of Transp.*, 119 F. Supp. 2d 1249 (M.D. Ala. 2000)).

[13] *See, e.g., Sanchez-Knutson*, 2014 WL 5139306, at *14; *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices, & Products Liab. Litig.*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011); *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 WL 8379784 at *9 (C.D. Cal. May 4, 2009); *Kent v. DaimlerChrysler Corp.*, 200 F.Supp.2d 1208, 1218-19 (N.D. Cal. 2002); *In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*, 1993 WL 204116, at *3-7. Claims for damages cannot interfere with NHTSA or the Department of Transportation regulations because they were "designed as preventative measures 'supplementary of and in addition to'" common-law remedies. *See In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*, 1993 WL 204116, at *6 (quoting *United States v. Gen. Motors Corp.*, 518 F.2d 420, 434 (D.D.C. 1975)).

[14] To the extent the Court is inclined to dismiss any of Plaintiff's claims in the context of this motion, Plaintiff respectfully requests leave to amend those claims.

Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Michael J. Flannery
**CUNEO, GILBERT & LADUCA, LLP**
500 North Broadway
Suite 1450
St. Louis, MO 63102
Telephone: (314) 226-1015
Fax: (202) 789-1813
mflannery@cuneolaw.com

Adam W. Pittman
[admitted *Pro Hac Vice*]
apittman@CoryWatson.com
F. Jerome Tapley
[admitted *Pro Hac Vice*]
jtapley@CoryWatson.com
Ryan Lutz
[admitted *Pro Hac Vice*]
rlutz@CoryWatson.com
**CORY WATSON, P.C.**
2131 Magnolia Avenue South
Birmingham, Alabama 35205
Tel.:    (205) 328-2200
Fax:    (205) 324-7896

James C. Wyly
[admitted *Pro Hac Vice*]
jwyly@wylyrommel.com
Sean F. Rommel
[admitted *Pro Hac Vice*]
srommel@wylyrommel.com
**WYLY~ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, Texas 75503
Tel.: (903) 334-8646

Clay Barnett
[admitted *Pro Hac Vice*]
clay.barnett@beasleyallen.com
**BEASLEY ALLEN**
4200 Northside Pkwy NW
Building One, Suite 100
Atlanta, GA 30327
Tel.: (334) 269-2343
Fax: (855) 674-1818

Jeffrey A. Koncius
[admitted *Pro Hac Vice*]
koncius@kiesel.law
Melanie M. Palmer
[admitted *Pro Hac Vice*]
palmer@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.: (310) 854-4444
Fax: (310) 854-0812

***Attorneys for Plaintiff***

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on September 30, 2020, I filed the attached with the

Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

<u>  /s/ Andrew C. Ficzko          </u>